| | |
|---|---|
| 1 | MARK BRNOVICH<br>ATTORNEY GENERAL |
| 2 | |
| 3 | TIMOTHY WATSON (#018685)<br>CHRISTOPHER J. FEASEL (#033301) |
| 4 | Assistant Attorneys General<br>2005 North Central Avenue |
| 5 | Phoenix, Arizona 85004-1592<br>Telephone: (602) 542-7641 |
| 6 | Fax: (602) 542-3393<br>DefensePhx@azag.gov |
| 7 | defensephx@azag.gov<br>Christopher.Feasel@azag.gov |
| 8 | Timothy.Watson@azag.gov |
| 9 | *Attorney for State Defendants* |

### UNITED STATES DISTRICT COURT

### IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Ploof, and individual, | Case No: 21-cv-00853-JJT |
| Plaintiff, | |
| v. | **STATE DEFENDANTS' MOTION TO DISMISS** |
| State of Arizona, a government entity; Arizona Department of Child Safety, a governmental entity; Meagan Tafoya, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Tafoya, her spouse; Sarah Greenway, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Greenway, her spouse; Paige Szymkowski, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Szymkowski, her spouse; Claudia Hoff, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Hoff, her spouse; Nick Breeding, individually and as an employee with the State of Arizona Department of Child Safety and Jane Doe Breeding, his spouse; Gregory McKay, as former Director, Arizona Department of Child Safety; Michael Faust and James Thal, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Thal, his spouse; John and Jane Does 1-5; and Black Entities 1-5<br>Defendants | |

Defendants, State of Arizona, Arizona Department of Child Safety, Megan Tafoya, Sarah Greenway, Paige Szymkowski, Claudia Hoff, Nick Breeding, Gregory McKay and Michael Faust (hereinafter "State Defendants"), pursuant to Fed. R. Civ. P. 12(b)(6) now move to dismiss Plaintiff's Complaint. The Complaint is deficient because: (1) all of Plaintiff's claims are barred by the relevant statute of limitations; (2) claims brought under 42 U.S.C. § 1983 and claims brought under Arizona state law against the Arizona Department of Child Safety ("DCS") are not legally cognizable claims; and (3) claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act are barred by the doctrines of claim preclusion and Rooker-Feldman.

## I. LOCAL RULE 12.1 CERTIFICATION

Pursuant to LRCiv 12.1(c) State Defendants' undersigned counsel hereby certify that they have conducted several meet and confer discussions with Plaintiff's attorney regarding this motion. Counsel had a brief initial discussion, in person at Plaintiff counsel's office on May 17, 2021. Counsel for both parties conferred by phone on May 19, 2021 and did not come to any agreement regarding this motion to dismiss. State Defendants' counsel sent additional emails to Plaintiff's counsel on May 19 and May 20, 2021 stating specific reasons that State Defendants believed parts of the Complaint were defective. Plaintiff's counsel sent a reply email on May 20, 2021 indicating that there would be no amendment to the Complaint. Defendants counsel sent a final email on May 20, 2021 alerting Plaintiff's counsel to an additional issue not previously discussed. The parties were unable to agree that any alleged defect in the Complaint was curable.

## II. ALLEGATIONS IN PLAINTIFF'S COMPLAINT

This case arises out of an Arizona Department of Child Safety ("DCS") removal of custody of a minor child from her mother and an alleged failure by DCS to provide services pursuant to the American's with Disabilities Act ("ADA"). The primary allegations in Plaintiff's lengthy 57 page complaint are the following:

- Plaintiff Jessica Ploof ("Ploof") is the mother of minor child H.P. (Complaint ¶ 20).

- Since she was a child, Ploof "struggled with an intellectual disability" and was diagnosed as mentally disabled. (*Id.* ¶ 21-22).

- Ploof's mother has been "helping [Ploof] to raise H.P." (*Id.* ¶ 29).

- In December 2016 Ploof and H.P. "were living with [Ploof's mother]." (*Id.* ¶ 65).

- Ploof was involved in a relationship with a man who was at her residence when Ploof's mother observed him "pouring an unknown substance into a drink he was preparing for [Ploof]" and "became upset and demanded that he leave the house", and as a result the man got angry. (*Id.* ¶ 67-68).

- When Ploof ended the relationship the man threatened to "call DCS and make false allegations against her." (*Id.* ¶ 70).

- On December 20-21, 2016 DCS received two reports from an anonymous caller alleging that Ploof was neglecting H.P. and that her home was unsafe. (*Id.* ¶ 73-74).

- Ploof told DCS social workers that when she sometimes "used 'weed,' H.P. was not in her care, but was with [her mother]" and that she would "test positive for marijuana" if tested. (*Id.* ¶ 86-87).

- DCS social workers documented that H.P. was "free from any visible injuries" and was dressed appropriately and "the home was free from any safety hazards.". (*Id.* ¶ 91).

- On December 21, 2017 Ploof submitted a hair and urine sample for substance abuse testing which was positive for alcohol, marijuana and methamphetamine. (*Id.* ¶ 93-94).

- DCS conducted a team decision making meeting with Ploof and required that Ploof take five steps to continue caring for H.P. "including [Ploof] participating in [screening] and parenting classes." (*Id.* ¶ 101-102).

- DCS required that Ploof's mother also take a substance abuse screening test and on January 12, 2017 Ploof's mother was called into work and could not complete the scheduled test but notified DCS that "she still intended to complete one at the first opportunity." (*Id.* ¶ 105).

- On January 12, 2017, DCS social workers "seized H.P. from the custody of Ploof." (*Id.* ¶ 107).

- Defendant social worker Tafoya "with the approval and participation of her supervisor, Sarah Greenway ("Greenway") seized H.P. using a Temporary Custody Notice" ["TCN"] (*Id.* ¶ 108).

- The TCN stated that H.P. was at "imminent risk of harm due to Jessica's substance abuse, and immediate removal was required" and H.P. was removed without "a warrant or any court authorization." (*Id.* ¶ 112, 114) (internal quotes omitted).

- At a hearing that occurred after the removal of custody, Defendant Szymkowski testified about circumstances necessitating removal, including allegations that Ploof's mother did not comply with a drug test and tried to use a device to escape the results of the test despite the fact that the attempt to use a device occurred after removal. (*Id.* ¶ 125-128).

- No agent of DCS "complied with federal law by offering Jessica services that were reasonably accommodated to her disability." (*Id.* ¶ 163).

## III.   PLAINTIFF'S CLAIMS ARE TIME BARRED.

All of Plaintiff's section 1983 claims that accrued before December 23, 2018, are barred by the two-year statute of limitations. See *Wilson v. Garcia*, 471 U.S. 261, 266, 274-76 (1985) (applicable statute of limitations in section 1983 actions is the forum state's statute of limitations for personal injury actions); A.R.S. § 12-542(1) (two-year period for filing personal-injury claims); *De Luna v. Farris*, 841 F.2d 312, 313 (9th Cir. 1988) (affirming dismissal of complaint because action was brought after Arizona's two-year statute of limitations had run).

State law determines the period of limitations and federal law determines when a cause of action actually accrues. *Cline v. Brusett*, 661 F.2d 108, 100, 110 (1981). A claim arises under federal law "when a plaintiff knows or has reason to know of the injury which is the basis for his action." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998). Thus, the statute of limitations begins to run "once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1108 (9th Cir. 1999), amended on denial of reh'g, 208 F.3d 831 (9th Cir.

2000) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)). It is then that the statute begins to run as the Ninth Circuit has rejected the continuing-violation theory. *Ngo v. Woodford*, 539 F.3d 1108, 1109-10 (9th Cir. 2008).

Plaintiff filed her complaint on December 23, 2020, alleging various section 1983 claims. However, all of the acts or omissions giving rise to Plaintiff's claims occurred more than two years before she filed this lawsuit. The latest actual date referenced in the Complaint is June 18, 2018 (Complaint ¶ 236). Accordingly, the statute of limitations for these claims expired on June 18, 2020. Plaintiff failed to file the Complaint until December 23, 2020, after the limitation period expired. Plaintiff clearly had "reason to know of the injury," *Cabrera*, 159 F.3d at 379, due to alleged wrongful DCS actions and termination of parental rights in state court, including proceedings at the Arizona Court of Appeals. All of her section 1983 claims accrued more than two years before Plaintiff filed the Complaint. The claims are now barred and should be dismissed under the applicable two-year state of limitations. Plaintiff's state law tort claims are also brought after the two year statute of limitations expired. An amendment to the Complaint would not cure this fatal defect and would thus be futile. Therefore, the Complaint should be dismissed.

**IV. PLAINTIFF'S CLAIMS AGAINST DCS ARE BARRED**

A. <u>DCS is a non-jural entity that lacks the power to sue or be sued</u>

A court has no jurisdiction over a governmental entity unless the plaintiff can establish that it is legally capable of being sued. *Yamamoto v. Santa Cruz County Bd. of Sup'rs*, 124 Ariz. 538, 539 (App. 1979). Governmental agencies have only those powers granted by their enabling statutes, including the ability to sue or be sued. *Braillard v. Maricopa County*, 224 Ariz. 481, 487 (App. 2010.); *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 886 (D. Ariz. 2008) (Finding police department to be subpart of municipality and not separate entity for purposes of suit). The enabling legislation of DCS does not provide power to DCS to sue or be sued. A.R.S. § 36-2903 et seq. Therefore any claims against DCS should be dismissed.

B. <u>DCS is a department of the State and not a person within the meaning of section 1983</u>

Section 1983 "provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). Section 1983 "actions do not lie against a State." *Arizonans for Official English v. Arizona*, 502 U.S. 43, 69 (1997). A governmental agency that is an arm of the state is not a person for purposes of section 1983. See *Howlett v. Rose,* 496 U.S. 356, 365 (1990); *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir.); *Flint v. Dennison*, 488 F.3d 816, 824–25 (9th Cir. 2007); *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997); *Hale v. Arizona*, 993 F.2d 1387, 1398–99 (9th Cir. 1993) (en banc); cf. *Durning v. Citibank*, N.A., 950 F.2d 1419, 1423 (9th Cir. 1991) (explaining that agencies that are arms of the state are entitled to the same immunity from suit as the state because "'the state is the real, substantial party in interest'" (citation omitted)).

Further, any claim that DCS has subjected itself to the section 1983 claims in federal court by removing the matter to federal court misses the fact that DCS is still not a "person" capable of being sued in a 1983 analysis. When the complaint names the state, a state agency, or a state official in an official capacity, consideration must be given to the type of relief sought. Claims for retrospective monetary relief against states, state agencies, and state officials sued in their official capacities are barred by the *Will* "no person" rule and, in federal court, also by the Eleventh Amendment. A federal court faced with *Will* and Eleventh Amendment defenses must first resolve the *Will* defense. Although a state may waive the Eleventh Amendment, it cannot waive the *Will* "no person" defense. In this case, while DCS arguably waived the Eleventh Amendment defense by removing the matter to Federal Court, DCS has not waived the *Will* no person defense.

Plaintiff's *Monell* claim arguments are similarly groundless because DCS is not a "municipality" or "local governing body" under the *Monell* analysis. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, (1978). Even if it was a municipality, *Monell* itself says a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under section 1983 on a *respondeat superior* theory. *Id.* Even if Plaintiff was alleging a *Monell* claim against a municipality, which she is not, Plaintiff must allege facts upon which the Court may conclude that the municipality knowingly participated in the unconstitutional conduct either by policy and accepted practice or by tacit affirmation of unconstitutional conduct by the municipal employees. Plaintiff does not allege that DCS enacted or implemented an unconstitutional policy. There is no vicarious liability in section 1983 claims through which the State may be held liable for the conduct of its employees. *Id.* In addition, a constitutional right violation addressed in a section 1983 claim cannot arise out of mere negligence. *Daniels v. Williams*, 474 U.S. 327, 332 (1986). For all of these reasons, all claims against the DCS must be dismissed.

## V.   PLAINTIFF'S ADA AND REHABILITATION ACT CLAIMS ARE BARRED

Claim One of Plaintiff's Complaint alleges that DCS is vicariously liable for the acts of its employees which violate the ADA under 42 U.S.C. § 12101 et seq. and the Rehabilitation Act under 29 U.S.C. § 794 (Complaint ¶ 256-280). These claims are barred.

### A.   Federal Claim Preclusion

A federal court "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); citing, *Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("...Congress has specifically required all federal courts to give preclusive effect to state–court judgments whenever the courts of

the State from which the judgments emerged would do so."); See also, 28 U.S.C. § 1738.

Here, a Maricopa County Superior Court entered a judgment terminating Ploof's parental rights. Ploof appealed. The Arizona Court of Appeals initially determined that Ploof failed to raise the issue of whether the State complied with the ADA in the trial court and thus refused to consider it on appeal.[1] The Arizona Supreme Court granted partial review and remanded the case to the Arizona Court of Appeals with specific instructions to review the ADA claims to determine whether the trial court committed fundamental error.[2] Upon remand, the Court of Appeals held in a published opinion that there was no fundamental error in the Juvenile Court proceedings and the record amply supported the Juvenile Court's finding that DCS fulfilled the ADA requirements to provide services:

> We conclude, ... that Mother has not sustained her burden to show that fundamental error occurred when the juvenile court found that **DCS provided her with appropriate reunification services** before severing her parental rights.
>
> * * *
>
> In our initial opinion, we reviewed at length the services DCS provided Mother and concluded **the record amply supported the juvenile court's finding that DCS had fulfilled its obligation to offer her appropriate reunification services** . . . While Mother contends that DCS should have provided her with 'enhanced,' 'supplemental,' and more frequent training (presumably parenting training), she identifies no specific ADA-required services that DCS failed to provide. **Nor does Mother offer anything beyond speculation for the proposition that, had DCS provided those additional services, the severance trial outcome would have been different.** For that reason, Mother has not met her burden under fundamental error review.

*Jessica P. v. Dep't of Child Safety*, 484 P.3d 148, 150-153 ¶ 2, 18 (App. 2021) (emphasis added) (internal quotes omitted).

---

[1] See, *Jessica P. v. Department of Child Safety* et al. 249 Ariz. 461, at ¶ 27 (2020).

[2] See, Order granting review and remanding, 2020 WL 8766053.

Based on this finding, Plaintiff is precluded from raising the issue again in an attempt to re-litigate a State Court Judgment. Likewise, because the Court of Appeals found that Plaintiff received ADA compliant services, plaintiff could not have suffered discrimination under the Rehabilitation Act, 29 U.S.C. § 794 due to a failure to provide services.

### B. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine deprives federal court of subject matter jurisdiction to review state court decisions and judgments:

> Under Rooker–Feldman, lower federal courts are without subject matter jurisdiction to review state court decisions, and state court litigants may therefore only obtain federal review by filing a petition for a writ of certiorari in the Supreme Court of the United States.

*Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005); see also, *Ismail v. County of Orange*, 693 Fed. Appx. 507, 510 (9th Cir. 2017) (claims against social workers barred by Rooker-Feldman doctrine, which "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment.").

Here, Ploof seeks to overturn a state court judgment because she does not like the result. The federal courts lack jurisdiction to grant Ploof the relief she seeks on the ADA claims. Likewise, the finding that DCS provided proper services to Plaintiff makes a claim under the Rehabilitation Act groundless. Therefore, the ADA and Rehabilitation Act claims should be dismissed.

## VI. CONCLUSION

Plaintiff's Complaint is time barred by the relevant statute of limitations for state and federal claims. At a minimum, DCS should be dismissed because it is a non-jural entity and Plaintiff's ADA and Rehabilitation Act claims should be dismissed because they are barred by the doctrines of federal claim preclusion and Rooker-Feldman.

//
//

Respectfully submitted this 21ˢᵗ day of May, 2021

Mark Brnovich
Attorney General

/s/ *Christopher J. Feasel*

Christopher J. Feasel
Timothy J. Watson
Assistant Attorneys General
*Attorneys for State Defendants*

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following, if CM/ECF registrants, and mailed a copy of same to any non-registrants, this 21ˢᵗ day of May, 2021:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
MILLS + WOODS LAW PLLC
5055 North 12ᵗʰ Street, Suite 101
Phoenix, Arizona 85014
*Attorneys for Plaintiff*

DeeAn Gillespie Strub
Kristina Reeves
GILLESPIE, SHIELDS, GOLDFARB & TAYLOR
7319 North 16ᵗʰ Street
Phoenix, Arizona 85020
*Attorneys for Plaintiff*

Charles S. Hover, III, Esq.
RENAUD COOK DRURY MESAROS, PA
One North Central Avenue, Suite 900
Phoenix AZ 85004
*Attorney for Defendant Thal*

/s/ Lisa Santa Cruz

LMS20-0389/G202020721-1/#9526002