**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Ploof, | No. CV-21-00853-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, *et al.*, | |
| Defendants. | |

At issue is Defendants'[1] Motion to Dismiss (Doc. 8, Mot.) to which Plaintiff Jessica Ploof filed a Response (Doc. 9, Resp.) and Defendants filed a Reply (Doc. 17, Reply). The Court finds this matter appropriate for resolution without oral argument. LRCiv 7.2(f). For the reasons set forth below the Court grants Defendant's Motion in part and remands to state court for resolution of the remaining state law claims.

**I.    BACKGROUND**

This case comes before the Court upon Defendants' removal from the Superior Court of Arizona in and for Maricopa County. In her Complaint filed with that court, Plaintiff alleges as follows. Plaintiff is the mother of H.P., a minor child born April 29, 2014. (Doc. 1, Ex. A, Compl. ¶ 20.) Although Plaintiff graduated from high school, she has struggled with an intellectual disability since childhood and has been diagnosed as mentally disabled. (Compl. ¶¶ 21-22.) For the first years of H.P.'s life, Plaintiff raised him

---

[1] Defendants State of Arizona, Arizona Department of Child Safety, Megan Tafoya, Sarah Greenway, Paige Szymkowski, Claudia Hoff, Nick Breeding, Gregory McKay, and Michael Faust bring this Motion. Hereinafter, the Court refers to these parties in aggregate as "Defendants."

as a single mother with the support of her family, particularly her mother, with whom Plaintiff resided at the time of the events at issue in this case. (Compl. ¶¶ 24-27, 65.)

When H.P. was five months old, he was diagnosed with low muscle tone, and Plaintiff's mother worked with Plaintiff to help her obtain assistance from the Division of Developmental Disabilities ("DDD") to ensure H.P. received appropriate care. (Compl. ¶¶ 34-38.) Plaintiff, with the assistance of her mother, claims that she took H.P. to regular medical appointments, as well as physical therapy, Head Start preschool, and speech therapy in her home. (Compl. ¶¶ 40-46.) She maintains that none of the professionals who saw H.P. ever notified the Arizona Department of Child Safety ("DCS") of any concern about his health or well-being. (Compl. ¶¶ 44, 45, 47.)

At some time prior to December 2016, Plaintiff became involved in a relationship with a man who was at her mother's residence when her mother walked in on him pouring an unknown substance into Plaintiff's drink. (Compl. ¶¶ 66-67.) Subsequently, Plaintiff ended the relationship, whereupon the man threatened to "call DCS and make false allegations against her." (Compl. ¶¶ 69-70.) On December 20 and 21, 2016, DCS received two reports that Plaintiff was neglecting H.P. and her home was unsafe. (Compl. ¶¶ 73-74.)

On December 21, 2016, DCS personnel visited Plaintiff's home and reported that H.P. was "free from any visible injuries," was dressed appropriately, and "the home was free from any safety hazards." (Compl. ¶¶ 76, 91.) At this time Plaintiff also submitted a hair and urine sample, which tested positive for alcohol, marijuana, and methamphetamine. (Compl. ¶¶ 93-94.) In response to Plaintiff's drug test results, DCS personnel met on January 11, 2017, to discuss a safety plan for H.P. and determined that Plaintiff's mother should be appointed "safety monitor for an in-home dependency." (Compl. ¶¶ 95, 100.) Pursuant to her new role as a safety monitor, Plaintiff's mother was called in to take a substance abuse screening test on January 12, 2017, but she was called into work and did not complete the scheduled test. (Compl. ¶¶ 104-105.) That same day DCS social worker Defendant Megan Tafoya used a Temporary Custody Notice ("TCN") to seize H.P. from

Plaintiff's custody, stating that H.P. was at "imminent risk of harm" due to Plaintiff's substance abuse, and "immediate removal was required." (Compl. ¶¶ 107-108, 112.)

After H.P. was removed from Plaintiff's custody, a hearing took place, where Defendant Paige Szymkowski, the DCS case manager assigned to the matter, testified that removal was necessary because Plaintiff's mother did not comply with the drug testing requirement, and attempted to use a "device" when she did present for drug testing. (Compl. ¶¶ 125, 126.)

In the months that followed, Plaintiff participated in TERROS substance abuse classes, parenting classes, and also submitted to a psychological evaluation. (Compl. ¶¶ 101, 168, 244.) However, the juvenile court terminated Plaintiff's parental rights under A.R.S. § 8-533(B)(8). (Compl. ¶ 251.) The Arizona Court of Appeals affirmed the lower court's decision. (Compl. ¶ 254; *see Jessica P. v. Dep't of Child Safety, H.P.*, 471 P.3d 672, 680 (Ariz. Ct. App. 2020).)

On December 23, 2020 Plaintiff filed the Complaint now before this Court in the Superior Court of Arizona in and for Maricopa County.[2] Plaintiff alleges that DCS failed to provide her with adequate services as required by the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 ("ADA") and the Rehabilitation Act, 29 U.S.C. § 794, that Defendants acted in violation of Plaintiff's Constitutional rights under 42 U.S.C. § 1983, and that Defendants acted with gross negligence under Arizona state laws. (*See generally* Compl. ¶¶ 256-412.)

On May 13, 2021, Defendants removed the matter to this Court under 28 U.S.C. §§ 1441(a) and 1446. (Doc. 1.) Defendants then brought a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 21, 2021, arguing that the Court should dismiss the action because (1) Plaintiff's section 1983 claims are time barred, (2) DCS is a non-jural entity and cannot be sued, and (3) Plaintiff's ADA and Rehabilitation Act claims are barred by both claim preclusion and the *Rooker-Feldman* doctrine. (Mot. at 4, 5, 7-8.) The Court now resolves each aspect of that Motion.

---

[2] *See Jessica Ploof v. State of Arizona, et al.*, Case No. CV2020-017046.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

When analyzing a complaint under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### B. Statute of Limitations

Because section 1983 does not specify a statute of limitations, courts apply the most appropriate state statute of limitations in construing the timeliness of a section 1983 claim. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004) (citation omitted). For section 1983 claims in Arizona, courts use the statute of limitations established for personal injury claims, which is two years from the date the incident giving rise to a cause of action occurred. A.R.S. § 12-542; *Cholla Ready Mix*, 382 F.3d at 974. The statute of limitations begins to run "once a plaintiff has knowledge of the 'critical facts' of his injury, which are 'that he has been hurt and who has inflicted the injury.'" *Bibeau v. Pac. Nw. Research Found.*, 188 F.3d 1105, 1108 (9th Cir. 1999), amended on denial of reh'g, 208 F.3d 831 (9th Cir. 2000) (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

### C. Jurisdiction Over Governmental Entity

Under Rule 17(b) of the Federal Rules of Civil Procedure, the law of the state where the court is located determines a party's capacity to be sued. In Arizona, a government entity may be sued only if the legislature has specifically identified it as a jural entity. *Payne v. Arpaio*, No. CV-09-1195-PHX-NVW, 2009 WL 3756679, at *4 (D. Ariz. Nov. 4, 2009) (citation omitted).

In *Monell*, the Supreme Court held that a municipality is not liable for § 1983 claims under a theory of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Instead, a plaintiff must show that the municipality has adopted an "official policy" or "custom" that caused the alleged constitutional violation, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to actions for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (quoting *Monell*, 436 U.S. at 694). A *Monell* claim for municipal liability can be based on (1) a municipality's official written policies, *id.* at 480, (2) a "widespread practice that, although not authorized by written law or express municipal policy is so permanent and well settled as to constitute a custom or usage with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal quotation marks and citations omitted), or (3) decisions by a person with "final policy-making authority," *id.* at 123.

### D. Preclusion Doctrines

The judicially created doctrine of claim preclusion, or *res judicata*, "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (internal quotations and citations omitted). Federal courts must look to state law to determine the preclusive effect of a state court judgment. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007). In

Arizona, *res judicata* will preclude a claim when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties was, or might have been, determined in the former action. *Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999). Arizona follows the "same evidence test" in which "the plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action." *Pettit v. Pettit*, 189 P.3d 1102, 1105 (Ariz. Ct. App. 2008) (internal citation omitted).

The doctrine of collateral estoppel, or issue preclusion, "bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action." *State ex rel. Winkleman v. Ariz. Navigable Stream Adjudication Comm'n*, 229 P.3d 242, 256 (Ariz. Ct. App. 2010). "The elements necessary to invoke collateral estoppel are: the issue is actually litigated in the previous proceeding, there is a full and fair opportunity to litigate the issue, resolution of such issue is essential to the decision, there is a valid and final decision on the merits, and there is a common identity of the parties." *Id.* Unlike claim preclusion, issue preclusion is available to a party who was not involved in the prior suit, so long as it is asserted against a party that was. *Sees v. KTUC, Inc.*, 714 P.2d 859, 862 (Ariz. Ct. App. 1985).

### E. *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine derives from two Supreme Court decisions, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). First in *Rooker* and later in *Feldman*, the Supreme Court held that federal district courts cannot review state court decisions in an appellate capacity. The Ninth Circuit Court of Appeals has stated that *Rooker-Feldman* "prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing *de facto* appeals from state-court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "It is a forbidden *de facto* appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and

seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2004).

### III. ANALYSIS

#### A. Plaintiff's Section 1983 Claims are Time-Barred

In the Motion to Dismiss, Defendants first argue that the Court should dismiss Plaintiff's section 1983 claims because they are barred by Arizona's two-year statute of limitations. (Mot. at 4.) As articulated above, Arizona courts apply the statute of limitations established for personal injury claims to section 1983 actions, which is two years from the date the incident giving rise to a cause of action occurred. A.R.S. § 12-542. The two-year statute of limitations begins to run once a plaintiff knows both that she has been hurt and who has inflicted the injury. *Bibeau*, 188 F.3d at 1108.

Defendants argue that that two-year statute of limitations has run because the latest date referenced in Plaintiff's complaint is June 18, 2018, but her complaint was not filed until December 23, 2020, more than two years later. (Mot. at 5, citing Compl. ¶ 236.) Defendants claim that this defect not only bars Plaintiff from bringing her section 1983 claims, but also bars her state law tort claims.

Plaintiff, on the other hand, argues that due to her mental disability, she is of "unsound mind," and therefore the statute of limitations never started to run. Plaintiff is correct that under Arizona law, "[i]f a person entitled to bring an action other than those set forth in article 2 of this chapter is at the time the cause of action accrues either under eighteen years of age or of unsound mind, the period of such disability shall not be deemed a portion of the period limited for commencement of the action." A.R.S. § 12-502. However, Plaintiff does not provide the requisite "specific facts" that Arizona law requires to support the conclusion of unsound mind. *See Doe v. Roe*, 955 P.2d 951, 962 (Ariz. Ct. App. 1998).

Arizona courts recognize "two separate inquiries that may evince an unsound mind: (1) inability to manage daily affairs, and (2) inability to understand legal rights and

liabilities." *Id.* Defendants argue that based on the facts articulated in Plaintiff's Complaint, she is unable to show that she meets either of these criteria.

Regarding the first inquiry, there are ample allegations on the face of her Complaint that Plaintiff was able to manage her daily affairs. According to the Complaint, Plaintiff "was ensuring that all of H.P.'s physical, medical, and emotional needs were being met." (Compl. ¶ 64.) She also claims to have kept her house clean and that she was trusted by a friend to supervise the friend's grandchildren. (Compl. ¶¶ 57, 53.) Additionally, the Complaint alleges that at the time Plaintiff's parental rights were terminated, she "worked full-time caring for a teenager with special needs. She helped her with meals, provide[d] her with activities, and help[ed] her with basic daily needs." (Compl. ¶ 246.) Because Plaintiff herself contends that she participated in such activities, including those in which she was responsible for managing the daily affairs of others, the Court finds that Plaintiff was indeed able to manage her daily affairs.

Turning to the second inquiry, there are also ample allegations that Plaintiff was, in fact, able to understand her legal rights and liabilities. As Defendants point out, Plaintiff contested the termination of her parental rights and was represented by counsel throughout those proceedings. (Reply at 4.) By engaging in this defense by and through her counsel, Plaintiff must have known of her alleged injury and understood her legal rights under the circumstances. Therefore, the Court also finds that Plaintiff was able to understand her legal rights and liabilities.

In the absence of necessary specific facts to support a conclusion that Plaintiff was of unsound mind, the Court finds the limitations period for Plaintiff's section 1983 claims expired on June 18, 2020,[3] over six months prior to the filing of the present lawsuit. Plaintiff's section 1983 claims numbered 2, 3, 4, 5, 6, 7, 8, 9, and 14 are thus time barred and are dismissed. (*See* Compl. ¶¶ 281-363.) However, Defendants do not thoroughly explain in their briefing how the statute of limitations should apply to Plaintiff's state law

---

[3] Defendants proffer that June 18, 2020 is the day that the statute of limitations expired because it is the "latest actual date referenced in the complaint." (Mot. at 5.) Plaintiff does not suggest any alternate date. The Court finds this proposed date supportable and correct based on the facts available on the face of the complaint.

tort claims, offering only a brief mention that the limitations period should apply. (Mot. At 5.) The Court declines to perform this research on its own, and therefore remands the state law tort claims brought against Defendants to Maricopa County Superior Court.[4]

### B.  DCS is a Non-Jural Entity and Cannot be Sued

Because Plaintiff's third and fourteenth claims against DCS are time-barred and dismissed for the reasons outlined above, the Court only briefly addresses Defendant's argument that DCS is a non-jural entity. In Arizona, a government entity may be sued only if the legislature has specifically identified it as a jural entity. *Payne*, 2009 WL 3756679, at *4 (citation omitted). As Defendants correctly observe, there is no indication that the legislature has granted the DCS the capacity to be sued. (Mot. at 5, citing A.R.S. § 36-2903 et seq.)

Plaintiff also argues that DCS is subject to *Monell* liability under section 1983 (Resp. at 3-4.) A *Monell* claim can be brought against a municipality when a plaintiff's civil rights have been violated due to a municipality's policy, practice, or custom. *Monell*, 436 U.S. at 690-91. Defendants counterargue that DCS is not a municipality, but a department of a state, and therefore cannot be subject to *Monell* liability. (Mot. at 7; Reply at 4-5.).

While Plaintiff articulates the standards for *Monell* liability, she does not lay out any specific arguments to persuade the Court that *Monell* applies in the present circumstances. In sum, Plaintiff argues that Defendants are liable in an official capacity under section 1983 because they acted according to a policy, practice, or custom that resulted in the deprivation of Plaintiff's constitutional rights. (Compl. ¶ 407.) However, the policy, practice, or custom inquiry is relevant only where the plaintiff in a section 1983 lawsuit attempts to hold a municipality liable for the actions of one of its officials. *Compare Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978) (holding that a municipality cannot be held liable for the actions of its employees under § 1983 unless the municipality's policy

---

[4] As the Court explains later in this order, in the absence of a federal question, it declines to exercise supplemental jurisdiction over the remaining state law claims. Thus, the Court ultimately would not consider those claims, regardless of whether they were briefed. *See* 28 U.S.C. § 1367(a), (c).

or custom was the moving force behind the alleged constitutional harm), with *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (holding that a state official acting in an official capacity is not a "person" under § 1983). Plaintiff does not contend that any of the Defendants are municipal, rather than state, officials. Therefore, *Monell* is inapposite.

For the reasons above, in addition to those outlined in the previous section, the Court dismisses DCS as a Defendant.

### C. Plaintiff's ADA and Rehabilitation Act Claims are Barred

Finally, Defendants argue that Plaintiff's Claim One, alleging that the State of Arizona is vicariously liable for the acts of DCS and its employees that violate the ADA (42 U.S.C. § 12101 et seq.) and the Rehabilitation Act (29 U.S.C. § 794), is barred by federal claim preclusion and the *Rooker-Feldman* doctrine. (Mot. at 7-9.)

#### 1. Claim Preclusion

As the Court explained in its discussion of the legal standards for the preclusion doctrines above, *claim* preclusion and *issue* preclusion are different doctrines. However, both Plaintiff and Defendants fail to identify the applicable law. (Resp. at 6.) Plaintiff spends six pages of her Response explaining why issue preclusion is inapplicable here but does not address claim preclusion. (Resp. at 5-12.) Likewise, while Defendants' Motion to Dismiss refers to claim preclusion, neither their Motion nor their Reply articulates the proper standard for claim preclusion in Arizona. (Mot. at 7-9; Reply at 5-6.)

To determine the preclusive, or *res judicata*, effect of the state juvenile court litigation, this Court must look to the law of the State of Arizona. *Sunkist Growers, Inc. v. Fisher*, 104 F.3d 280, 283 (9th Cir.1997). In order for claim preclusion to attach under Arizona law, there must be (1) a final judgment on the merits, (2) common identity of the parties and the capacity in which they appeared, (3) common identity of the subject matter and (4) common identity of the cause of action. *Hall*, 952 P.2d at 750. Here, all elements of claim preclusion are satisfied.

As to the first element, although Plaintiff analyzed the factors for issue preclusion rather than claim preclusion, even she concedes that the state appellate court judgment is a

final judgment on the merits. (Resp. at 10.) The Court agrees and finds the first prong satisfied.

The Arizona Supreme Court has explained that common identity, or privity, requires a "substantial identity of interests" and a "working or functional relationship . . . in which the interests of the non-party are presented and protected by the party in the litigation." *Hall*, 977 P.2d at 779 (internal citations and quotation marks omitted). DCS is a government agency of the State of Arizona. Both Plaintiff and Defendant DCS were parties to the previous proceedings. In the present suit, the State of Arizona, DCS, and DCS's employees are all represented by the Arizona Attorney General's Office, which also represented DCS in the state juvenile court litigation. Thus, it is reasonable for the Court to conclude that the State of Arizona's interests were represented and protected in the state litigation. The Court finds the second element is satisfied.

Because the two lawsuits both concern the actions of DCS and its employees vis-à-vis Plaintiff, the third element is satisfied. *See, e.g. Beseder, Inc. v. Osten Art, Inc.*, No. CV 05-00031-PHX-NVW, 2006 WL 2730769 (D. Ariz. Sept. 25, 2006) (finding the third element of claim preclusion satisfied where the same conduct was the subject matter of both state court counterclaims and a cause of action before the district court).

The fourth element requires further consideration. To test whether the two lawsuits present the same cause of action, Arizona follows the "same evidence test" in which "the plaintiff is precluded from subsequently maintaining a second action based upon the same transaction, if the evidence needed to sustain the second action would have sustained the first action." *Pettit*, 189 P.3d at 1105 (internal citation omitted). The same evidence test is to be interpreted liberally. *See Phoenix Newspapers, Inc. v. Dep't of Corr.*, 934 P.2d 801, 805 (Ariz. Ct. App. 1985) (holding that a plaintiff may avoid preclusion "merely by posturing the same claim as new legal theory"). However, the doctrine of *res judicata* bars any claims that could have been determined in a prior action. *See Hall*, 977 P.2d at 779.

From the face of the Complaint, it is apparent that the evidence needed to sustain Plaintiff's arguments is the same here as it was in the state court action. Here, Plaintiff

alleges that she was discriminated against because of her disability and that DCS's employees failed to offer her services that reasonably accommodated her disability in violation of the ADA and Rehabilitation Act. (Compl. ¶¶ 261-62, 280.) In state court, Plaintiff argued "that the juvenile court erred by not considering whether DCS's reunification efforts complied with ADA, 42 U.S.C. §§ 12101-12213, and that DCS failed to prove it provided her with services that reasonably accommodated her mental disability." *Jessica P. v. Dep't of Child Safety et al.*, 471 P.3d 672, 680 (Ariz. Ct. App. 2020). Although the Complaint before the Court includes a Rehabilitation Act argument in addition to the ADA argument, this is not sufficient for Plaintiff to avoid claim preclusion.[5] The Ninth Circuit has found that there is "no significant difference in the analysis of rights and obligations created by the two acts." *Vinson v. Thomas*, 288 F.3d 1145, 1152 n.7 (9th Cir. 2002) (citing *Zukle v. Regents of University of California*, 166 F.3d 1041, 1045 (9th Cir. 1999) where the court articulated the same standard for making out a *prima facie* case under either the ADA or Rehabilitation Act). Although a plaintiff may posture the same claim as a new legal theory to overcome the low bar set by the same evidence test, that new claim must also require new evidence. Here, it does not.

Further, Plaintiff's ADA claim could have been determined in the state action. Plaintiff, under the standard for issue preclusion, and Defendants, under a standard they appear to have derived from two United States Supreme Court cases dating to the 1980s, disagree as to whether the fact that DCS provided appropriate services under the ADA was litigated. (Mot. at 8-9; Resp. at 7-10; Reply at 5-6.) For claim preclusion purposes, this is irrelevant. It is only relevant that the state courts could have determined the issue. In fact, the Arizona Court of Appeals stated that Plaintiff "was represented by counsel throughout the case and could have timely raised the [ADA] issue." *Jessica P*, 471 P.3d at 680.

Finding the elements of the Arizona test for claim preclusion satisfied, the Court dismisses Claim One.

---

[5] The Court also notes that Rehabilitation Act claims brought in Arizona are governed by the two-year statute of limitations used for personal injury actions, which the Court discussed above in the context of section 1983. *Madden-Tyler v. Maricopa Cnty*, 943 P.2d 822, 829 (Ariz. Ct. App. 1997).

### *2.  Rooker-Feldman*

Defendant also argues that the *Rooker-Feldman* doctrine deprives the Court of jurisdiction over this case. Although *Rooker-Feldman* likely offers an alternative basis for dismissal, the Court does not reach the *Rooker-Feldman* arguments because it dismisses Claim One on claim preclusion grounds.

### D.  The Court Will Not Exercise Jurisdiction Over Plaintiff's State Law Claims

Defendants removed this action from state court under 28 U.S.C. § 1441(a), noting that 28 U.S.C. §1331 provided the Court with original jurisdiction over Plaintiff's section 1983 claims, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367(a). (Doc. 1 ¶¶ 7-8.)

Federal courts may exercise removal jurisdiction over a case only if subject matter jurisdiction exists. 28 U.S.C. § 1441(a); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Unlike state courts, federal courts only have jurisdiction over a limited number of cases, and those cases typically involve either a controversy between citizens of different states ("diversity jurisdiction") or a question of federal law ("federal question jurisdiction"). *See* 28 U.S.C. §§ 1331, 1332.

District courts generally have supplemental jurisdiction over state law claims forming "part of the same case or controversy" as federal claims, however there are circumstances in which "[t]he district court may decline to exercise [this] jurisdiction," including when all federal claims have been dismissed. *See* 28 U.S.C. § 1367(a), (c); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1309 (9th Cir. 1992) (providing that once all federal claims are dismissed, the exercise of jurisdiction over state law claims "is within the discretion of the federal district court"), overruled on other grounds by *Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc).

Federal courts must consider "economy, convenience, fairness, and comity" in determining whether to exercise supplemental jurisdiction after all federal claims have been dismissed. *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*,

24 F.3d 1545, 1557 (9th Cir. 1994) (internal quotations omitted), overruled on other grounds by *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Absent Plaintiff's claims presenting questions of federal law, which the Court dismisses for the reasons outlined above, and considering the factors articulated by the Ninth Circuit, the Court declines to exercise supplemental jurisdiction here. Thus, the Court remands Plaintiff's state law claims to the Superior Court of Arizona in and for Maricopa County.

**IT IS THEREFORE ORDERED** granting Defendants' Motion to Dismiss (Doc. 8) with regard to Plaintiff's claims numbered 1 through 9 and 14.

**IT IS FURTHER ORDERED** directing the Clerk of Court to remand Plaintiff's claims numbered 10 through 13 to the Superior Court of Arizona in and for Maricopa County as soon as is practicable and close this matter.

Dated this 9th day of December, 2021.

Honorable John J. Tuchi
United States District Judge