1  Jeffrey S. Hunter, Esq.
   Arizona Bar No. 024426
2  WEINBERG, WHEELER, HUDGINS,
     GUNN & DIAL, LLC
3  1 North Central Avenue, Suite 900
   Phoenix, Arizona 85004
4  Telephone: (602) 256-3015
   Facsimile: (602) 307-5853
5  *Counsel for Defendant James Thal*

6  jhunter@wwhgd.com
   docketing-PHX@wwhgd.com
7

8               **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jessica Ploof, an individual, | Case No.: CV-21-00853-PHX-JJT |
| Plaintiff, | |
| v. | |
| State of Arizona, a government entity; Arizona Department of Child Safety, governmental entity; Meagan Tafoya, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Tafoya, her spouse; Sarah Greenway, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Greenway, her spouse; Paige Szymkowski, individually and as an employee with the State of Arizona Department of Child Safety, and John Doe Szymkowski, her spouse; Claudia Hoff, individually and as an employee with the State of Arizona Department of Child Safety, and John Doe Hoff, her spouse; Nick Breeding, individually and as an employee with the State of Arizona Department of Child Safety, and Jane Doe Breeding, his spouse; Gregory Mckay, as former Director, Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; James Thal, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Thal, his spouse, John and Jane Does 1-5; and Black Entities 1-5, | **DEFENDANT JAMES THAL'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Defendant James Thal ("Dr. Thal") hereby files this Motion for Summary Judgment pursuant to Rule 56(a), Fed. R. Civ. P. concerning Claim Five under 42 U.S.C. § 1983 against Paige Szymkowski [now known as Paige Wooldridge] ("Ms. Wooldridge"), Claudia Hoff ("Ms. Hoff"), and Dr. Thal for conspiring to violate Plaintiff's right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth. Specifically, Plaintiff alleges that Ms. Wooldridge, Ms. Hoff, and Dr. Thal conspired to deceive the Maricopa County Superior Court of Arizona by fabricating a report of Dr. Thal's evaluation of Plaintiff's mother, Brendi Ploof ("Brendi"), which Plaintiff alleges was based on false, biased, and/or misleading information and which did not contain a true and accurate report of Dr. Thal's evaluation of Brendi. Plaintiff does not allege that the aforementioned individuals conspired to deceive the court by fabricating a report of Dr. Thal's evaluation of Plaintiff in any way, shape, or form. (SOF 1).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND

Plaintiff has an intellectual disability. (SOF 2). *Jessica P. v. Dep't of Child Safety*, 251 Ariz. 34, 37, ¶ 3 (App. 2021).[1] (SOF 3). She was the biological parent of a boy, H.P. (SOF 4). In late December 2016, the State of Arizona Department of Child Safety ("DCS") received two calls reporting Plaintiff's neglect of H.P. alleging that Plaintiff used marijuana and methamphetamine around H.P., left him home alone on multiple occasions, had given him drinks of beer and hard liquor, and physically abused him. Plaintiff and H.P. resided in Brendi's, Plaintiff's mother, home at the time of the reported incidents. (SOF 5).

DCS removed H.P. from Plaintiff's custody on January 12, 2017 and H.P. was placed in foster care. (SOF 6). At the time of removal, DCS's goal was reunification of H.P. with

---

[1] A full background of Plaintiff's parental rights termination proceedings is recited in *Jessica P. v. Dep't of Child Safety*, 251 Ariz. 34 (App. 2021). In the interest of brevity, the Court can and Dr. Thal requests that the Court take judicial notice of the facts as stated in that opinion. Critical facts for this case are cited to that opinion while additional details relevant to Plaintiff's specific claim before this Court are added below.

Plaintiff. (SOF 7). Upon removal, the State of Arizona filed the appropriate Dependency Petition with the Maricopa County Juvenile Court. (SOF 8). At all times thereafter, the Dependency action proceeded under the jurisdiction of the Maricopa County Juvenile Court. (SOF 9). On August 14, 2018 DCS determined dependency was not a goal and filed a Petition for Severance of Plaintiff's parental rights. (SOF 10). The Juvenile Court, after trial, severed Plaintiff's parental rights to H.P.. (SOF 11).

At the request of DCS, Dr. Thal performed two psychological evaluations of Plaintiff. The first evaluation was conducted on July 18, 2017 (SOF 12) and the second evaluation was conducted on October 10, 2018. (SOF 13). In this evaluation, Dr. Thal determined that Plaintiff's IQ is 65, placing her in the intellectually disabled range. (SOF 14). Given Plaintiff's intellectual disability, Dr. Thal opined that it is "exceedingly difficult for [her] to acquire, understand, retain, and implement basic parenting knowledge and skills." (SOF 15). He believed that even with services, Plaintiff would be unlikely to achieve a minimally adequate parenting level. (SOF 16). Dr. Thal further opined that H.P. could not be safely returned to Plaintiff's sole custody, then or in the foreseeable future, because he would be at risk in her care. (SOF 17). Dr. Thal concluded that Plaintiff's prognosis for demonstrating minimally adequate parenting skills in the foreseeable future was poor. (SOF 18). Nonetheless, Dr. Thal's report stated the goal of reunification of the family and identified the possibility that despite Plaintiff's challenges, she could serve in the capacity of a co-parent or assistant to a fully qualified caregiver. (SOF 19). Dr. Thal's opinions remained the same after his second evaluation. (SOF 20).

At the request of DCS, Dr. Bryce Bennett ("Dr. Bennett") conducted a bonding assessment of Plaintiff, Brendi, H.P., and his foster family on June 18, 2018 and November 9, 2019. (SOF 21) and (SOF 22). Dr. Bennett concluded Plaintiff did not have the ability to meet his special needs. (SOF 23). Dr. Lee Underwood ("Dr. Underwood"), a psychologist retained by Plaintiff, conducted a psychological evaluation of Plaintiff on April 19, 2019. (SOF 24). Dr. Underwood also did not recommend that H.P. be returned to Plaintiff's sole care. (SOF 25).

During the Juvenile Court Severance Trial, Plaintiff filed an Amended Motion for Appointment of a Permanent Guardian of Minor Child on January 11, 2019, wherein she admits that she is unable to parent H.P. alone, and requests that the Juvenile Court appoint Brendi as the guardian. (SOF 26). Her motion reads, in pertinent part: "The Department has made reasonable efforts to reunite Mother with the minor child. Reunification of the minor child and Mother is not in the minor child's best interest. Mother is unable to properly care for the minor child without the assistance of Maternal Grandmother." (SOF 27).

On July 30, 2019, the Maricopa County Juvenile Court held by a preponderance of the evidence that it would be in H.P.'s best interest to terminate Plaintiff's parental rights. (SOF 28). The Court reasoned that "every professional who examined [Plaintiff] concluded that she is not capable of parenting [H.P.] on her own." (SOF 29). The Court held that Plaintiff has been unable to rise to the level of minimally adequate parenting skills. (SOF 30). Plaintiff appealed and the Arizona Court of Appeals affirmed the Juvenile Court's order severing her parental rights. (SOF 31).

DCS requested that Dr. Thal perform psychological evaluations of Brendi. Dr. Thal's first evaluation, conducted on January 4, 2018 concluded that "[t]he prognosis that [Brendi] will be able to demonstrate minimally adequate caregiving skills to [H.P.] in the foreseeable future is seen as favorable." (SOF 32). This report was forwarded to Paige Szymkowski (now known as "Ms. Wooldridge"), a DCS caseworker. (SOF 33). Subsequently, on approximately January 30, 2018, there was a conference call between Dr. Thal, Ms. Wooldridge, and based upon deposition testimony, potentially Ms. Hoff, a DCS caseworker, to discuss his report and recommendations at which that time Ms. Wooldridge conveyed information she believed was important that Dr. Thal consider in his assessment of his evaluation of Brendi. (SOF 34). Ms. Wooldridge wanted to ensure that Dr. Thal had all the information about the case in order to make a fully informed recommendation. (SOF 35) She did not ask Dr. Thal to change his report. (SOF 36). Ms. Wooldridge testified that she only had one conversation with Dr. Thal, and at no time did she and Dr. Thal enter into an agreement to deprive Plaintiff of her parental rights. (SOF 37). She also testified that

she did not request that Dr. Thal come to any conclusion and she did not request that he change his report or opinions. (SOF 38). She further testified that they did not take any acts to prevent Brendi from obtaining guardianship. (SOF 39).

Ms. Hoff testified in her deposition that she believed since Dr. Thal did not have contact with Plaintiff and Brendi like case workers do, he would not know of any particular detail unless it was noted to him. (SOF 40) She also believed that Dr. Thal did not understand that when Plaintiff lived with Brendi, the child was not getting the services he needed, that he potentially had epilepsy, and that Brendi had somewhat of an anger problem. (SOF 41). She testified that she did not direct Dr. Thal to change his report and that her only expectation was that he consider the information and decide for himself what he does with it, if anything at all. (SOF 42). She also testified that the conversation did not involve severing Plaintiff's parental rights, as the plan was still reunification. (SOF 43).

Dr. Thal revised his report on February 7, 2018. (SOF 44). Dr. Thal's revised report still concluded that "the prognosis that [Brendi] will be able to demonstrate minimally adequate caregiving skills to [H.P.] in the foreseeable future is seen as favorable…" however, he added that precaution: "…provided that she can maintain a clean and hygienic home environment." (SOF 45). He recommended that a bonding/best interest evaluation be performed that includes Plaintiff, Brendi, H.P., and his foster parents. (SOF 46). To emphasize, in neither of Dr. Thal's reports of Brendi's first evaluation did he ever conclude that Brendi would not be an appropriate guardian. (SOF 47). He did not change his report at the request of Ms. Wooldridge or Ms. Hoff. Dr. Thal testified that he made the changes in his first report of Brendi's evaluation after the call because he began to look at early reports and findings again, not because there was anything persuasive that the case manager said. (SOF 48).

When Dr. Thal submitted this revised report on February 7, 2018, he asked Ms. Hoff by email to "shred" the first report, to which she agreed. (SOF 49). However, that first report, along with the revised report, was not shredded and was in fact disclosed to Plaintiff's attorney, the court appointed attorney for H.P., the attorney representing the State of Arizona, as well as the Maricopa County Juvenile Court which was overseeing the

Dependency Action. (SOF 50). In the Dependency Action in the Juvenile Court, the Court requested that Dr. Thal provide an explanation for the revision of his report regarding his evaluation of Brendi wherein he added a recommendation of a bonding evaluation. (SOF 51). In response to the Juvenile Court's request, Dr. Thal authored a letter dated March 14, 2018 which was provided to the Superior Court. (SOF 52). In this letter, Dr. Thal explained that Ms. Wooldridge did not ask him to change anything in his report but expressed her concerns regarding the substandard condition of Brendi's home, the child's poor overall health, and neglect that occurred at least part of the time under Brendi's care. (SOF 53). Dr. Thal further explained that Ms. Wooldridge expressed concern regarding the impact of removing H.P. from his foster placement after H.P. had bonded with his foster parents and made significant progress. (SOF 54). Dr. Thal explained that he asked his original report be shredded so as to avoid any confusion. (SOF 55). Dr. Thal further testified at a hearing and the Severance Trial in Maricopa County Juvenile Court regarding this issue, his evaluations, opinions and recommendations. (SOF 56).

On January 4, 2019, Dr. Thal performed a second evaluation of Brendi. (SOF 57). In his report for this second evaluation, he did not recommend that H.P. be placed with Brendi. (SOF 58). Dr. Bennett based on his bonding assessments concluded that Brendi would not be an appropriate guardian to H.P. and that it would be in H.P.'s best interest to stay with his foster parents. (SOF 59). Notwithstanding Plaintiff's Amended Motion for Appointment of a Permanent Guardian of Minor Child filed in Juvenile Court on January 11, 2019 requesting that it appoint Brendi as guardian, the Juvenile Court denied the motion, holding that Brendi would not be an appropriate guardian and that it was not in the best interests of the child to be placed in her care. (SOF 60).

Dr. DiTomasso, expert psychologist retained by Defendant Thal, opined that Dr. Thal's opinions and recommendations regarding Plaintiff and Brendi Ploof were appropriate. (SOF 61).

## II.   SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(a), Fed. R. Civ. P., a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant

1  is entitled to judgment as a matter of law." Although the evidence is viewed "in the light
2  most favorable to the non-moving party," an issue of material fact is genuine only if there
3  is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.
4  *Tauscher v. Phx. Bd. of Realtors, Inc.*, 931 F.3d 959, 962 (9th Cir. 2019).  The non-moving
5  party must "go beyond the pleadings" and their own affidavits and "designate 'specific
6  facts showing that there is a genuine issue for trial.'"  *Celotex Corp. v. Catrett*, 477 U.S.
7  317, 324 (1986).

## III.    ARGUMENT

### A.    No Reasonable Jury Could Find And No Evidence Exists That Dr. Thal Deprived Plaintiff of Her Civil Rights And Conspired To Do So

To prevail on a 42 U.S.C. § 1983 claim, "a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage*." McCleland v. City of Tempe,* No. CV-24-00926-PHX-KML, 2025 LX 83323, at *12 (D. Ariz. Apr. 28, 2025). "A plaintiff must also allege that he suffered a specific injury because of the conduct of a particular defendant and allege an affirmative link between the injury and the conduct of that defendant." Id. § 1983 is not a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005). To allege a violation of the constitutional right under Due Process to be free from judicial deception and fabrication of evidence in the context of child custody cases, the plaintiff must plead "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Macias v. Kaplan-Seikmann,* No. CV-22-00280-PHX-SPL, 2022 LX 83967, at *12 (D. Ariz. Dec. 2, 2022).

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citing *Vieux v. East Bay Reg'l Park Dist.,* 906 F.2d 1330, 1343 (9th Cir. 1990)). A conspiracy allegation, even if established, does not give rise to liability under § 1983 unless

there is an actual deprivation of civil rights. *Woodrum v. Woodward Cty.,* 866 F.2d 1121, 1126 (9th Cir. 1989) (emphasis added). There is no evidence to establish a conspiracy.

Plaintiff alleges that Dr. Thal conspired to violate her right to be free from misrepresentation and falsehoods to the court. However, she fails to allege what in Dr. Thal's revised report was misrepresented or false, let alone any corroborative evidence of a misrepresentation or falsehood. See *Fidler v. Arizona,* No. CV-22-00300-PHX-DWL, 2022 U.S. Dist. LEXIS 200678, at *42 (D. Ariz. Nov. 2, 2022) ("[t]o state a plausible claim under § 1983 involving 'false information,' Plaintiffs must at least identify the 'false information' at issue."). In Plaintiff's Complaint, she cites Dr. Thal's revision to his first report, the revision addressing his evaluation of Brendi, alleging that portions of the revised report contained what she called allegations without support, Compl., p. 24, ¶ 216., but Plaintiff, who has already judicially admitted she is not fit to parent independently, never disputes or denies the truth of anything in the report. Importantly, at no time did he revise his reports of Plaintiff's evaluations. The only revision by Dr. Thal addressed only Plaintiff's mother, Brendi, who is not a party to this lawsuit. Plaintiff has also not established any misrepresentation to the court as Dr. Thal's original and revised first report, as well as his testimony concerning the reports, were both fully considered and evaluated in the juvenile proceeding.

Even if any of Plaintiff's claims or evidence showed misrepresentation, omission or falsehood, which they do not, Plaintiff similarly provides no evidence of deliberate or reckless disregard for any alleged misrepresentation, omission or falsehood. Dr. Thal's original and revised first report, the subsequent letter explaining his revisions, and live testimony as to the same were all given to the Maricopa County Superior Court at the termination hearing. Nothing in the record suggests that, directly or circumstantially, Dr. Thal intended to or recklessly acted in misrepresenting or making false statements, in print or in testimony at the hearing.

Plaintiff provides no evidence that any alleged misrepresentation or false statement by Dr. Thal, or any evidence of deliberate or reckless intent, caused the deprivation of any

Page 8 of 17

of Plaintiff's rights or was material to the judicial decision terminating her parental rights. In fact, the record shows the opposite. Dr. Thal's stated goal of family reunification with Plaintiff and Brendi co-parenting did not change. It was unaffected by the revisions to the first report, the revision only recommending an additional bonding evaluation to further support the stated goal of reunification.

In contrast, the reports by Dr. Bennett and by Dr. Underwood did not recommend reunification but instead recommended that H.P. stay with his foster family with no goal of reunification or co-parenting by Plaintiff and Brendi. Finally, and most importantly, the Maricopa County Superior Court, with the Arizona Court of Appeals affirming, ruled against reunification as envisioned by Dr. Thal in his first report, original and amended, terminating Plaintiff's parental rights and denying Plaintiff's motion for Brendi to be appointed Guardian of H.P. Any alleged chain of causation was thereby clearly and decisively broken. See *Galen v. Cty. of L.A.,* 477 F.3d 652, 663 (9th Cir. 2007) (holding that a judicial officer's exercise of independent judgment is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision) (citing *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998) [holding that a sheriff could not be liable under § 1983 for violating right to be free from excessive bail, even if he recommended the bail amount, because "setting the bail bond is entirely at the discretion of the presiding judge."]).

An insufficiency of allegations to support a § 1983 violation precludes a conspiracy claim predicated upon the same allegations. *Macias v. Kaplan-Seikmann*, at *14; *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Conspiracy is not an independent 1983 claim. *Fidler v. Arizona*, 2022 WL 16649520 (D. Ariz. 2022) (citing *Lacey v. Maricopa Cnty.*, 693 F. 3rd 896, 935 (9th Cir. 2012)   As a result, a § 1983 conspiracy claim is derivative — it does not stand on its own. It depends on an underlying constitutional violation, for which Plaintiff has provided no evidence and failed to meet her burden of proof.

1   As further proof of the lack of any conspiracy for a violation of due process, which
2   there was not, Plaintiff's allegation of a conspiracy between Dr. Thal and DCS employees
3   is inconsistent with Plaintiff's own allegations in her Complaint where she illustrated more
4   than once how Dr. Thal made it "clear" that Plaintiff would have difficulties with regular
5   services, and DCS still did not make any alterations to accommodate her disability. Compl.,
6   p. 20, ¶ 173. In one of these instances, Plaintiff alleges that "Dr. Thal's evaluation [of
7   Plaintiff] clearly signaled DCS that the services it was providing [Plaintiff] were not
8   appropriate and reasonable due to [Plaintiff's] intellectual disability. Yet, even after
9   receiving Dr. Thal's October 2018 report, DCS made no effort to offer [Plaintiff] services
10  that would accommodate her disability." Compl., p. 21-22, ¶ 184. "As he had concluded
11  before, Dr. Thal's conclusion again was: 'As was the case during her previous evaluation,
12  [Plaintiff] appears to be best suited to assist a fully capable and competent caregiver.'"
13  Compl., p. 22, ¶ 185. These statements in Plaintiff's Complaint directly contradict her
14  allegation that Dr. Thal conspired or colluded with DCS case workers to violate Plaintiff's
15  rights.  Plaintiff's Complaint makes multiple judicial admissions that DCS was pursuing a
16  course contrary to the recommendations of Dr. Thal – which is inconsistent with any theory
17  of conspiracy or concerted action. See *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th
18  Cir. 2010) (holding that a plaintiff must prove an agreement or a meeting of the minds to
19  violate constitutional rights, and each participant must at least share the common objective
20  of the conspiracy); *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989) ("[t]o state a
21  claim for a conspiracy to violate one's constitutional rights under section 1983, the plaintiff
22  must state specific facts to support the existence of the claimed conspiracy.") (emphasis
23  added).

24  Additionally, Ms. Wooldridge and Ms. Hoff's deposition testimony were consistent
25  in that they both testified that they did not direct Dr. Thal to revise his report, and it was
26  not even their expectation that he did. (SOF 62). At this point, their goal was still
27  reunification of Plaintiff with the child, not severance of her parental rights. (SOF 63). Dr.

Thal's letter also corroborates the testimony that he was never asked to change his report by Ms. Wooldridge or Ms. Hoff.

As a result, the record is completely devoid of evidence, circumstantial or otherwise, that may suggest that Dr. Thal and DCS employees conspired in any way to violate Plaintiff's rights. The evidence, in fact, proves the opposite. Plaintiff has failed to establish either that her civil rights were violated, or that Dr. Thal engaged in a conspiracy.

Plaintiff received a full and fair hearing, free from misrepresentation and/or omissions to the court, and free from deliberate falsehoods which demonstrated a reckless disregard for the truth. The juvenile court exercised its own independent judgment based on a complete record. Plaintiff cannot establish any deprivation as a matter of law, and as previously mentioned, an insufficiency of allegations to support a § 1983 violation precludes a conspiracy claim predicated upon the same allegations. *Macias v. Kaplan-Seikmann*, at \*14; *Woodrum v. Woodward Cty.*, 866 F.2d 1121, 1126 (9th Cir. 1989). Plaintiff's allegations in Claim Five of her Complaint lack sufficient evidence if not being outright disproven by the evidence and the court record in the pertinent prior litigation and hearings. Dr. Thal is entitled to summary judgment in his favor.

### B. Plaintiff's Claim Is Barred By Issue Preclusion

Over and above the lack of evidence to support a claim against Dr. Thal on the merits, issue preclusion bars consideration of the merits in the first place. Issue preclusion bars party from relitigating an issue already litigated and determined in prior litigation between the same parties. *Pike v. Hester*, 891 F.3d 1131. 1138 (9th Cir. 2018). When Federal courts consider issue preclusion, they "must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered". Id., quoting *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cr. 2001). Under Arizona law, issue preclusion applies when a fact was actually litigated in a previous suit, final judgment was entered, there was full opportunity to litigate the fact, it was litigated in the previous suit, and the fact was essential to the prior

judgment." *Crosby-Garbotz v. Fell*, 434 P.3d 143, 146; see also Restatement (Second) of Judgments 27 (Am. Law. Inst. 1982).

Addressing the state law claims which were remanded by this Court to the Maricopa County Superior Court, summary judgment was entered in favor of Dr. Thal on Plaintiff's negligence claim, based on a finding no legal duty. (SOF 64). While Claim Five in this case is not versed as a negligence claim, the underlying issues considered by the Maricopa County Superior Court and the Arizona Court of Appeals to reach their rulings dismissing/affirming dismissal on summary judgment are the same as are being addressed here.

The Arizona Court of Appeals, in upholding summary judgment in favor of Dr. Thal, stated that while the alleged state claim against Dr. Thal was negligence, Plaintiff did not allege negligence against her but instead alleged negligently altering his first evaluation of Brendi's parental fitness. Dr. Thal's revision to his first report was unchanged from the original as to Plaintiff and only addressed Brendi. Noting that Brendi was not a plaintiff in this action, the Court of Appeals ruled that Dr. Thal's revisions and his opinions as to Brendi did not give rise to an action by Plaintiff. *Ploof v. Thal,* 2023 WL 731915, Para. 23-24. The issue of Dr. Thal's revision of his first report regarding the evaluation of Brendi was thus essential to the finding of summary judgment on the state law negligence claim.

In the guise of her claim that her civil rights were violated by Dr. Thal's revision to his first report regarding his first evaluation of Brendi, Claim Five is based on the identical complained-of act. Arizona's Court of Appeals has already ruled that the revision was not addressed to Plaintiff at all, who judicially admitted she was unfit to parent independently, but only to her mother, who was not a Plaintiff in the state action, nor is she here. Plaintiff is precluded from relitigating the existence of a protected interest by alleging that the same conduct as a federal constitutional violation.

Likewise, Plaintiff cannot re-litigate the Juvenile Court's Order of Severance nor Dr. Thal's conduct in the dependency or severance proceeding as both were fully litigated before the Juvenile Court. Issue preclusion, or collateral estoppel, in federal court prevents

the re-litigation of specific factual or legal issues that were already decided in a final, valid judgment. It applies when the same issue was actually litigated, essential to the prior judgment, and the party against whom it is asserted had a full and fair opportunity to litigate. *Janjua v. Neufeld*, 933 F.3d 1061 (9th Circ. 2019).

### C. Plaintiff's Claim is Barred by the Rooker-Feldman Doctrine

The Rooker-Feldman doctrine precludes federal district courts from asserting subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Miroth v. Cty. of Trinity*, 136 F.4th 1141, 1144 (9th Cir. 2025). This is what Plaintiff attempts to do here.

As discussed above, Claim Five depends on the resolution of underlying issues which were already addressed and subject to judgment in Dr. Thal's favor at the State court level. She now invites this Court to review and reject those State court rulings forming the basis of the State court judgments. Plaintiff's § 1983 claim can succeed only if this Court effectively overturns or disregards them. Rooker-Feldman does not allow this. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 463, 103 S. Ct. 1303, 1305 (1983) (holding that if the constitutional claims presented to a district court are "inextricably intertwined" with a state court's decision, the district court is being asked to review the state-court decision, which it may not do).

As previously mentioned, Plaintiff's actual argument is that her rights were violated by Dr. Thal's revision to his initial report regarding the evaluation of Brendi, the same argument ruled upon in state court.

Plaintiff's claim is barred by Rooker-Feldman because both the Juvenile Court and the Appellate Court already held that Brendi would not be an adequate guardian. As a result, Plaintiff's claim is barred against Dr. Thal.

### D. Plaintiff Never Argued Lack Of Or Denial Of Due Process In the Termination Hearing, And Thereby Waived This Claim

Plaintiff fully litigated the issues of termination of her parental rights and her motion to have her mother appointed as H.P.'s guardian in the parental termination hearings. Plaintiff fully litigated her allegations concerning the claimed impropriety of Dr. Thal revising his initial report including his examination in Juvenile Court. She never argued that she was denied a constitutional right by Dr. Thal in those hearings, as a result of the revision of his report, or in any other way. The rulings and judgment issued in the severance trial were fully adjudicated by the Juvenile Court and the appellate process, in which Plaintiff never raised deprivation of due process. Under Arizona law, which would be determinative for the state law termination action, an argument not raised below to allow the trial court an opportunity to consider it, is waived for appeal. *Cont'l Lighting & Contr., Inc. v. Premier Grading & Utils., LLC,* 227 Ariz. 382, 386 (2011).

Plaintiff had the full and fair opportunity to contest at the severance trial that she was denied constitutional due process rights and that DCS and Dr. Thal conspired to deny her due process. The Juvenile Court could have considered such an argument and issued rulings based on the evidence presented, in its discretion. If it deemed just, the Juvenile Court could have decided not to consider Dr. Thal's first report, original or revised, or even his second report. The Juvenile Court could have chosen not to consider the objectionable testimony of DCS employees who called Dr. Thal. But Plaintiff never raised the argument and waived further consideration of such an argument on appeal.

This case arises out of the same facts and issues raised in the severance trial and the judgment of the Maricopa County Superior Court, and subsequent affirmation by the Arizona Court of Appeals. This Court applies the same standard as Arizona; facts and issues not raised in trial are waived. *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988, 992, (9th Cr. 2010). As discussed above, federal courts give the same effect to state court judgments as the federal courts would give their own. Plaintiff had her full day in court, full appellate remedies, and only later decided to try and re-litigate her objections to the revision to Dr. Thal's report with an argument which she had the full opportunity to raise in state court, but chose not to. The final judgment of

Arizona's state court system should not be disturbed by Plaintiff's belated additional argument, and this Court should consider her claim in this court to be waived.

### E. The Claim Against Dr. Thal was Filed After the Statute of Limitations Had Run

42 U.S.C. § 1983 claims do not contain their own statutes of limitations, so courts borrow the most appropriate statute of limitations, which are personal injury statute of limitations. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004). In Arizona, the applicable statute of limitations is two years. Id.

Generally, a cause of action accrues and the statute of limitations commences when one party is able to sue another. *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979); *Norton v. Steinfeld*, 36 Ariz. 536, 544, 288 P. 3, 5 (1930). Traditionally, the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim. *Stockmen's State Bank v. Merchants' & Stockgrowers' Bank*, 22 Ariz. 354, 36364, 197 P. 888, 892 (1921). "The traditional construction of that rule [statute of limitations] has been that the period of limitations begins to run when the act upon which legal action is based took place, even though the plaintiff may be unaware of the facts underlying his or her claim." *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 182 Ariz. 586, 588, 898 P.2d 964, 966 (1985) (emphasis added).

It is well-established that the statute of limitations accrues when "the plaintiff knows or with reasonable diligence should know the facts underlying the cause." *CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C.*, 198 Ariz. 173 7 P.3d 979, 981 (App. 2000), quoting *Doe v. Roe*, 191 Ariz. 313, 322, 955 P.2d 951, 960 (1998). In this case, the Superior Court for the State of Arizona in ruling on Dr. Thal's Motion for Summary Judgment held the statute of limitations expired June 18, 2020. Plaintiff filed her complaint in this matter on December 23, 2020. Said holding was not disturbed on appeal. Plaintiff is now estopped from arguing otherwise.

The 9th Circuit reversed prior dismissal on this issue because 1) A motion to dismiss must assume all complaint allegations as true and the last date expressly pled in the complaint was not the last act alleged, and other allegations were undated; 2) there was no prejudice to defendants in the case going forward, and 3) Plaintiff was not allowed the opportunity to amend her Complaint. The first basis set out by the 9th Circuit no longer applies, nor does the second, and Plaintiff has not attempted to amend her Complaint. The Superior Court's holding clearly established the two-year statute of limitations bars this action.

## IV. CONCLUSION

For the several reasons discussed above, Dr. Thal respectfully requests that this Court enter summary judgment in his favor on the only remaining claim against him, Claim Five of Plaintiff's Complaint.

Respectfully submitted this 23rd day of January, 2026.

> WEINBERG, WHEELER, HUDGINS,
> GUNN & DIAL, LLC
>
> By *s/Jeffrey S. Hunter*
> Jeffrey S. Hunter, Esq.
> 1 North Central Avenue, Suite 900
> Phoenix, Arizona 85004
> *Counsel for Defendant James Thal*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of January, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following CM/ECF participants:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street, Ste. 101
Phoenix, AZ 85014
tconnelly@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com

DeeAn Gillespie Strub
Mark Shields
Gillespie, Shields, & Taylor
7319 N. 16th Street
Phoenix, AZ 85020
dgillespie@gillaw.com
kreeves@gillaw.com

*Attorneys for Plaintiff*

Deborah Garner
Assistant Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
julie.rhodes@azag.gov
deborah.garner@azag.gov
*Attorneys for State Defendants*

By *s/Connie Traslavina*