# EXHIBIT GF

```
                   UNITED STATES DISTRICT COURT

                       DISTRICT OF ARIZONA


    Jessica Ploof, an individual,  )
                                   )
                 Plaintiff,        )
                                   )
    vs.                            )Case No.
                                   )2:21-cv-00853-JJT-PHX
    State of Arizona, et al.,      )
                                   )
                 Defendants.       )
    _____)




                 DEPOSITION OF PAIGE WOOLDRIDGE




                        Phoenix, Arizona
                       September 12, 2025
                          10:25 a.m.




    REPORTED BY:                   CARRIE REPORTING, LLC
    Kristy A. Ceton, RPR, CRR      Certified Reporters
    AZ CR No. 50200                17505 N. 79th Avenue
                                   Suite 301-C
                                   Glendale, AZ 85308
     CERTIFIED COPY                 (480) 429-7573
```

```
 1              DEPOSITION OF PAIGE WOOLDRIDGE
 2   commenced at 10:25 a.m., on September 12, 2025, at
 3   Gillespie, Shields & Taylor, 7319 North 16th Street,
 4   Phoenix, Arizona, before Kristy A. Ceton, RPR, CRR,
 5   Arizona Certified Court Reporter No. 50200.
 6
 7                         * * *
 8
 9   APPEARANCES:
10       For the Plaintiff:
11           MILLS & WOODS LAW, PLLC
             By:  Thomas A. Connelly, Esq.
12           5055 North 12th Street
             Suite 101
13           Phoenix, Arizona 85014
14       For the Defendant Thal:
15           WEINBERG WHEELER HUDGINS GUNN & DIAL
             By:  Jeff Hunter, Esq.
16           One North Central Avenue
             Suite 900
17           Phoenix, Arizona 85004
             jhunter@wwhgd.com
18
         For the Defendant State of Arizona:
19
             OFFICE OF THE ARIZONA ATTORNEY GENERAL
20           By:  Julie Rhodes, Esq.
             P.O. Box 6123-040A
21           Phoenix, Arizona 85005
             julie.rhodes@azag.gov
22
         Also Present:
23
             Natalie Newell
24
25
```

5

```
 1                                    Phoenix, Arizona
                                      September 12, 2025
 2                                    10:25 a.m.
 3
 4                   PAIGE WOOLDRIDGE,
 5   called as a witness herein, having been first duly
 6   sworn, was examined and testified as follows:
 7
 8                      EXAMINATION
 9   BY MR. CONNELLY:
10        Q.   All right.  Please state and spell your
11   name for the record.
12        A.   My name is Paige, P-a-i-g-e.  Last name
13   Wooldridge, W-o-o-l-d-r-i-d-g-e.
14        Q.   And that's your married name, right?
15        A.   Correct.
16        Q.   What's your maiden name?
17        A.   It's Szymkowski.
18        Q.   Will you spell that, please?
19        A.   Yes.  It's S-z-y-m-k-o-w-s-k-i.
20        Q.   And you know why you're here today?
21        A.   Yes.
22        Q.   Case involving Jessica Ploof, right?
23        A.   Yes.
24        Q.   Do you remember Jessica at all?
25        A.   A little bit.
```

135

1  if I wanted to stop in and see how a visit was going
2  and, you know, see the child and the parent and talk
3  to them, get a feel for what's going on.  You know,
4  if there were any concerns brought up or -- you know,
5  just to meet with the parent, see how they're doing.
6         Q.   Okay.  When you reviewed the CSRA when
7  you first came onto the case, were you concerned
8  about the allegation that the home was dirty and that
9  there were -- was food, dirty clothes, tampons, and
10 spiders all over the floor?
11        A.   That is concerning, yes.
12        Q.   Okay.  And we talked earlier about the
13 duty of an ongoing case manager to investigate facts
14 about the case that are concerning.  And so although
15 you were concerned about that allegation, at no point
16 until you were considering moving to in-home
17 supervised visits did you go and visit the home to
18 see the condition of the home, right?
19             MS. RHODES:  Form.  Foundation.
20             THE WITNESS:  So Hunter was already
21 removed from the home by the time I received the
22 case, so it would have already been investigated by
23 the previous investigator.
24        Q.   BY MR. CONNELLY:  Right.
25             And when you reviewed the CSRA, and you

136

1  reviewed Meagan Tafoya's narrative about her visits
2  to the home, did you see any observations that she
3  made about the condition of the home?
4         A.    I do believe I recall seeing some
5  observations of her home.
6         Q.    Okay.
7         A.    Like, Meagan referencing.
8         Q.    Can you show me where in Exhibit 17
9  Meagan references the condition of the home?
10        A.    So on page 000396.
11        Q.    Okay.
12        A.    And the section 3, box A.
13        Q.    Okay.
14        A.    Second line, it starts towards the end,
15 it says, "The home was free from any safety hazards."
16        Q.    Right.
17              That's the only thing she says, right?
18        A.    In that section.
19        Q.    In everything you just read.  You read
20 more than just this section, didn't you?
21        A.    That's correct.
22        Q.    You read the -- you --  Correct me if I'm
23 wrong, but did you read in section 2 -- section 2B --
24              MS. RHODES:   What page are you on, Tom?
25              MR. CONNELLY:   394.

137

1          MS. RHODES:  Thank you.
2          THE WITNESS:  Okay.
3     Q.   BY MR. CONNELLY:  You agree with me that
4 in section 2B on page 394 regarding her visit on
5 December 21st at 10:15 a.m., that all she says is,
6 "Hunter was observed without any injuries.  He was
7 dressed appropriately.  Hunter is nonverbal due to
8 his age, and was not interviewed"?
9     A.   I do see that.
10    Q.   She doesn't say anything about the home
11 being dirty or there being clothes and tampons and
12 spiders all over the place, right?
13    A.   I do see that.
14    Q.   And then do you see that in that same
15 box, she went back to the home at 3:20 p.m. and,
16 again, she makes no observations about the home being
17 dirty or unclean or unsanitary or anything like that,
18 right?
19    A.   That is correct.
20    Q.   And did you -- you spent the -- a little
21 bit of time reading so I assume you also read section
22 2, box F, starting at the bottom of 394 and carrying
23 over to 395, right?
24    A.   I did.
25    Q.   And there is no mention by Tafoya of any

                                                                    138

1    observations of the home being dirty or unclean or
2    unkept or unsanitary or having the defects or the
3    concern that was raised in the hotline call, right?
4           A.    Not that I saw.
5           Q.    And you -- you identified for us, section
6    3, number A.  And would it surprise you to know that
7    Meagan Tafoya testified that she did not observe the
8    home to be dirty, unkept, or in any unsanitary
9    condition?
10               MS. RHODES:  Foundation.  Form.
11               THE WITNESS:  Can you repeat the
12   question, please?
13          Q.    BY MR. CONNELLY:  Meagan Tafoya was
14   deposed in this case.  And at her deposition, she
15   testified that she didn't observe the unsanitary
16   conditions that were noted in the hotline call?
17               MS. RHODES:  Form.
18          Q.    BY MR. CONNELLY:  Were you aware of that?
19               MS. RHODES:  Form.  Foundation.
20               THE WITNESS:  I was not here, so I would
21   not be aware of what she testified to, but it is
22   indicated in the CSRA on --
23          Q.    BY MR. CONNELLY:  396.
24          A.    -- in box A that the home was free from
25   any safety hazards.

Deposition of: Paige Wooldridge                                     September 12, 2025

148

1  transitioned off or before --
2       A.   Before.
3       Q.   -- you transition off?
4       A.   Before.
5       Q.   And so in the normal course of events,
6  there is nothing for an ongoing caseworker to do in
7  relation to a case when she has transitioned off of
8  the case, right?
9            MS. RHODES:  Form.  Foundation.
10           THE WITNESS:  Sorry.  Can you repeat the
11 question?
12      Q.   BY MR. CONNELLY:  Yeah.
13           Is it true that when an ongoing case
14 manager is transitioned off a case, she no longer has
15 any ongoing responsibilities for the cases that she
16 had before she transitioned off, right?
17      A.   That would be accurate.
18      Q.   And so if there was a report from an
19 expert that was outstanding at the time that a
20 caseworker transitions off a case and a new
21 caseworker transitions onto the case, the receipt and
22 distribution responsibilities regarding that report
23 belong to the new caseworker, right?
24           MS. RHODES:  Foundation.
25           THE WITNESS:  So it typically would fall

230

1    Q.   BY MR. HUNTER:  And there were multiple
2　lawyers at the trial, multiple lawyers asked you
3　questions?
4          MR. CONNELLY:  Form and foundation.
5          THE WITNESS:  Yes.
6          MR. HUNTER:  Okay.  That's all the
7　questions I have for you.  Thanks.
8          MS. RHODES:  I have no questions.
9          MR. CONNELLY:  Okay.  I don't have any
10　redirect or recross, I guess.
11          MS. RHODES:  All right.
12          MR. CONNELLY:  You have the right to read
13　and sign.
14          MS. RHODES:  Yep.  We'll read and sign,
15　please.
16       (The proceedings concluded at 5:51 p.m.)

                     _____
                     PAIGE WOOLDRIDGE

231

```
STATE OF ARIZONA      )
                      ) ss.
COUNTY OF MARICOPA    )
```

BE IT KNOWN that the foregoing proceedings were taken by me, KRISTY A. CETON, a Certified Reporter, in and for the County of Maricopa, State of Arizona; that the witness before testifying was duly sworn to testify to the whole truth; that the questions propounded to the witness and the answers of the witness thereto were taken down by me in shorthand and thereafter reduced to typewriting under my direction; that the witness requested reading and signing said deposition; that the foregoing pages are a true and correct transcript of all proceedings had, all done to the best of my skill and ability.

I FURTHER CERTIFY that I am in no way related to any of the parties hereto, nor am I in any way interested in the outcome hereof.

I FURTHER CERTIFY that I have complied with the ethical obligations set forth in ACJA 7-206(J)(1)(g)(1) and (2).

Kristy A. Ceton                                50200_____
Certified Reporter                             CR Number

_Kristy A Ceton_                               09-25-2025
Certified Reporter Signature                   Date


I CERTIFY that this Registered Reporting Firm has complied with the ethical obligations set forth in ACJA 7-206(J)(1)(g)(1) and (2).

Carrie Reporting, LLC                          R1064
Registered Reporting Firm                      RRF No.

_Michele Durrer_                               09-25-2025
Registered Reporting Firm                      Date
Signature