Thomas A. Connelly (AZ Bar #019430
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
GILLESPIE, SHIELDS & TAYLOR
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jesscia Ploof, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>State of Arizona, *et al.*,<br><br>    Defendants. | Case No.: 2:21-cv-00853-JJT-PHX<br><br>**RESPONSE IN OPPOSITION TO DCS DEFENDANTS' MOTION TO EXCLUDE TIMOTHY TURNER** |

Plaintiff, by and through undersigned counsel, hereby files her Response in opposition to *DCS Defendants' Motion to Exclude Timothy Turner* (Doc. 109), filed on January 23, 2026.[1]  This Response is based on the following Memorandum of Points and Authorities, the Exhibits attached hereto, Plaintiff's Motion for Summary Judgment (Docs. 121, 122), and the entire record in this matter, all of which demonstrate why DCS Defendants' motion must be denied.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

---

[1] The DCS Defendants are Megan Tafoya, Paige Szymkowski, Claudia Hoff, and Nicholas Breeding.

This case arose because of DCS Defendants' staunch refusal to accept responsibility for their wrongful action in overstepping their limited role as DCS investigators and ongoing case workers who conspired and advocated for the severance of Jessica Ploof's parental rights to her son, H.P., as is more fully discussed in Plaintiff's Motion for Summary Judgment (Docs. 121, 122).

DCS Defendants ask the Court to exclude Plaintiff's child-welfare/standard-of-care expert Timothy Scott Turner in his entirety. The motion overreaches. Turner offers experience-based testimony to assist the jury on subjects outside ordinary juror knowledge: how DCS caseworkers and supervisors are trained, what DCS policy and accepted child-welfare practice require, what reasonable efforts look like in dependency practice, and how professional standards govern communications with contractors/evaluators and representations to court.

DCS Defendants' primary complaint is that Turner sometimes uses legal phrasing ("due process violations," "conspiracy"). That is, at most, a scope/wording issue—not a basis for wholesale exclusion. The proper remedy (if the Court wants guardrails) is a narrow limitation: Turner may testify about DCS training, policy, and standard practice and whether conduct was consistent with those standards, while avoiding ultimate legal conclusions (e.g., "constitutional violation," "conspiracy," "judicial deception" as legal terms). But the motion's request to strike Turner entirely should be denied.

## II.   **LEGAL STANDARD (FED. R. EVID. 702)**

Rule 702, Fed. R. Evid., requires: (1) helpful specialized knowledge, (2) sufficient facts or data, (3) reliable principles and methods, and (4) reliable application. *See* Fed. R. Evid. 702. The Court's gatekeeping role is meant to exclude unreliable speculation—not to resolve merits disputes or credibility contests that are properly addressed by cross-examination and contrary evidence.

The purpose of expert testimony at trial is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The Supreme Court in *Daubert* "held that the Federal Rules of Evidence 702 imposes a special obligation upon

2

a trial judge to 'ensure that any and all scientific testimony is not only relevant but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (Quoting *Daubert*, 509 U.S. at 589). "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II"). The Court's role is to ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 596). The Court has broad discretion to decide how to test an expert's reliability as well as relevance, based on the circumstance of the particular case. *Primiano*, 598 F.3d at 564; *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013)

The rejection of expert testimony *is the exception rather than the rule*. Fed. R. Evid. 702, Advisory Committee's Note (emphasis added). The standard is "satisfied where expert testimony advances the trier of fact's understanding to any degree." *Abarca v. Franklin Cnty. Water Dist.*, 761 F.Supp.2d 1007, 1029-30 (E.D. Cal. 2011) (citations omitted, emphasis added). "The threshold for qualification is low for purposes of admissibility; minimal foundation of knowledge, skill, and experience suffices." *PixArt Imaging, Inc. v. Avago Tech. Gen. IP (Singapore) Pte. Ltd.*, No. C 10-00544 JW, 2011 WL 5417090 at *4 (N.D. Cal. Oct. 27, 2011) (citing *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1015-16 (9th Cir. 2004)).

### III. ARGUMENT

#### A. Turner is Qualified by Experience, Training, and Specialized Knowledge

##### 1. Rule 702 does not require licensure as a "social worker"

DCS Defendants argue Turner is "unqualified" because he is not a licensed social worker, among other unserious or demonstrably incorrect arguments. Mot. at 3. Rule 702

3

contains no licensure requirement. Experience, training, and specialized knowledge are sufficient. Turner has:

- A B.S. in Criminology with a minor in Social Work and 200+ hours of specialized CPS training, *see* **Exhibit 1** at 26 (Turner CV);
- 20 years as a senior social worker and supervisor for at-risk families, *id*. at 26-29;
- Supervisory responsibility, including training and oversight of CPS investigators, *id*.; and,
- Nearly a decade of consulting/expert work on CPS/DCS standard-of-care issues, *id*.

DCS Defendants' self-imposed licensure argument is an improper attempt to inject a prerequisite not found in Rule 702. Their objection goes to weight, not admissibility. *Abarca*, 761 F.Supp.2d at 1028. Passing the threshold of admissibility merely requires that the expert's testimony have "a reliable basis in knowledge and experience of relevant discipline." *Messick*, 747 F.3d at 1194. Turner meets that threshold.

Notably, none of DCS Defendants Szymkowski[2], Hoff, nor Breeding, the ongoing case workers and supervisor assigned to this case, are licensed social workers. **Exhibit 2** at 20:12-14 (Szymkowski Dep. Tr.), **Exhibit 3** at 10:17-24 (Hoff Dep. Tr.), **Exhibit 4** at 9:2-9 (Breeding Dep. Tr.).

### 2. DCS Defendants mischaracterize Turner's Arizona experience and current relevance

DCS Defendants claim Turner's *only* Arizona experience was a "brief three-year stint" ending in 2007 and that he is "outdated." Mot. at 3-4. They also grouse that he has given expert testimony in only two lawsuits. *Id*. However, Turner's qualifications section and declaration show a long CPS/DCS career through 2017 and extensive expert consulting since then having been retained in 58 cases, including substantial Arizona case

---

[2] DCS Defendant Szymkowski is now married; her married name is Wooldridge. Ex. 2 at 5:10-17.

involvement, in at least 24 Arizona cases. *See* **Ex. 1** at 26-35. Any dispute about how closely Turner's experience tracks pertinent DCS policies and practices is fodder for cross-examination—not wholesale exclusion.

### 3. Turner is plainly qualified to testify on DCS training, supervision, reasonable efforts, and child protection practice standards

The surviving claims (judicial deception, conspiracy to commit judicial deception, and due process/reasonable efforts) all turn on what DCS caseworkers/supervisors reasonably should do in investigations, documentation, communications, case planning, service provision, and court-facing representations. Turner's background fits those topics directly. *See, generally*, **Ex. 1** at 26-29 (Turner's CV).

## B. Turner's Opinions are Reliable Experience-Based "Record-to-Standard" Testimony, not Speculation

Turner's method is a standard one for professional-practice experts: he reviewed disclosed records (including DCS policies/manual, the case file, petitions, case plans, etc.), then compared what occurred to accepted child-welfare practice and DCS training/supervision expectations. DCS Defendants criticize Turner for not conducting a "scientific" analysis, but child-welfare standard-of-care opinions are routinely grounded in professional experience plus record review. Rule 702 does not demand lab-style testing for experience-based testimony.

DCS Defendants' "unsupported assumptions" argument is largely a merits attack. The motion cherry-picks alleged factual mistakes and invites the Court to weigh competing narratives. That is not Rule 702's function. Minor factual disputes—especially in a file DCS Defendants acknowledge includes complex chronology and where Turner noted redactions—go to weight, not admissibility of his opinions.

## C. DCS Defendants' Category-By-Category Attacks Fail

DCS Defendants divide Turner's opinions into four buckets and argue each should be excluded. Mot. at 5-14. None warrants wholesale exclusion.

### 1. "Unlawful investigation and removal" opinions

5

### a. Relevance: narrowing is available, but background investigation practice remains relevant to remaining claims

DCS Defendants argue Turner's investigation/removal opinions are irrelevant because Count Two (unlawful seizure) was dismissed as time-barred. Even if certain "unlawful seizure" phrasing is no longer directly tied to a claim, the underlying facts and professional practices remain relevant to the surviving due-process/reasonable-efforts theory: how the case was initiated, what DCS documented, how risk was assessed, and whether reasonable alternatives and services were considered. This is especially true, when DCS Defendants repeat unsubstantiated evidence to sway a licensed psychologist to report on it, change his conclusions, and include these certain facts repeatedly in Court reports. *See* Doc. 122 (Plaintiff's Statement of Facts in Support of Motion for Summary Judgment ("PSOF")) ¶¶ 8, 22, 28, 29, 32, 39, 41, 42.

### b. If the Court has concerns, the proper remedy is a tailored limitation, not exclusion

Plaintiff can stipulate Turner will not present opinions framed as liability on the dismissed seizure claim (e.g., "the removal was an unconstitutional seizure"), while still allowing testimony on:

- investigation adequacy and documentation standards,
- supervision/quality control expectations,
- reasonable-efforts and service planning practices, and
- how early investigative choices affected the trajectory of reunification efforts.

That directly assists the jury on the remaining due process/reasonable efforts count and does not confuse the issues.

### 2. "Unethical interactions with Dr. Thal" / contractor communications

### a. Turner does not need to be a psychologist to testify about DCS best practices and boundaries with third-party contractors

DCS Defendants attack Turner as unqualified to opine on "ethical" interactions with Dr. Thal or the conspiracy claim. But the relevant question for Rule 702 is whether Turner can educate the jury about child-welfare practice standards for DCS communications with contracted evaluators and how those communications should be documented and disclosed to avoid undue influence concerns.

That is within Turner's scope as a former CPS supervisor/investigator and standard-of-care expert. He is not being offered to interpret the psychologist licensing board's ethical code. He is being offered to explain what prudent child-welfare practice and agency supervision require when caseworkers communicate with purportedly disinterested third-party contracted professionals whose work will be presented to the juvenile court. He is also being offered to explain that it goes against CPS/DCS standards to provide biased opinions to sway a contract provider, or, in other words, to stack the deck against a parent or against reunification based on a case worker's personal opinions and biases.

### b. Narrow wording cures the motion's "ethics" objection

If the Court is concerned with the word "ethics," the remedy is to reframe Turner's testimony as:

- "professional boundaries,"
- "standard practice,"
- "agency policy/training expectations," and
- "risk of undue influence and need for documentation/disclosure."

That keeps the testimony helpful and avoids any improper suggestion that Turner is adjudicating a psychologist's professional ethics.

### c. Conspiracy / judicial deception: Turner may testify to underlying practices and facts without opining on the legal elements

DCS Defendants conflate "legal conclusion" with "factual and standard-of-care assistance." Turner can testify about:

7

- what competent casework requires when presenting or relying on evaluations,
- what should be disclosed to the juvenile court and opposing parties as part of professional practice, and
- how communications and documentation practices can mislead decisionmakers.

Those are proper topics that assist the jury. The Court can preclude Turner from stating "a conspiracy existed" as a legal conclusion while still allowing him to discuss the underlying conduct and its departure from practice standards.

### 3. "Procedural due process violations" opinions

#### a. Arizona law makes "due process" an operation DCS training duty—squarely within Turner's expertise

DCS Defendants argue Turner is unqualified because he "lacks the depth" to opine on constitutional principles and that his due process opinions invade the jury's role. But A.R.S. § 8-456 specifically requires DCS to train investigators on: "the duty to protect the legal and due process rights of children and families from the time of the initial contact through case closure," and instruction on the legal rights of parents. *See* A.R.S. § 8-456.

That statute establishes "due process" as an integral and necessary part of DCS employees' competency and professional practice, not merely courtroom constitutional theory. Consequently, Turner's testimony on "due process" is admissible when framed as:

- what DCS trains caseworkers/supervisors to do to protect parents' procedural rights throughout the case, and
- whether DCS Defendants' conduct conformed to those training expectations and accepted child-welfare practice.

8

### b. "Province of the jury" is solved by limiting ultimate legal conclusions—not excluding Turner

DCS Defendants quote portions of Turner's report that use legal phrases (i.e., "violated due process," "conspiracy to violate due process"). Those phrases can be excluded without excluding Turner's underlying testimony. Courts routinely allow experts to testify about standards of care and departures therefrom while preventing them from instructing the jury on the law. An expert witness "may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016-17 (9th Cir. 2004) (citations omitted). In Turner's declaration he made passing "references" to the law but never actually reached a legal conclusion.

Plaintiff therefore proposes a simple limitation:

- Turner will not testify that DCS Defendants "violated the Constitution," "committed judicial deception," or "conspired" as legal conclusions.
- Turner may testify about DCS training, policies, standards of care, professional practice, and whether conduct was consistent with those standards, including standards related to protecting parents' procedural rights throughout the case.

Such an approach preserves useful expert testimony and eliminates any risk of legal instruction.

### c. The state appellate court decision is not a Rule 702 basis to exclude a standard-of-care expert

DCS Defendants argue the Court of Appeals found no due process violation in the severance appeal and use that to attack Turner's competency. Mot. at 12. That is not a Rule 702 issue. The question here is whether Turner's testimony will help the jury understand DCS practice and reasonable-efforts standards. State appellate review of the

9

severance record does not determine what expert testimony is admissible in this federal civil action—especially where the federal claims concern DCS actors' conduct and representations and whether reasonable efforts were made consistent with professional standards.

At most, DCS Defendants may use the appellate decision for impeachment or argument; it is not a basis to bar standard-of-care testimony.

### 4. "Indifference to Plaintiff's ability to understand the proceedings"

#### a. This is a classic reasonable efforts / case planning standard-of-care topic

DCS Defendants argue Plaintiff testified she understood what was happening in the juvenile court and that courts previously found reasonable efforts. Mot. at 13-14. But the standard-of-care question is whether DCS caseworkers/supervisors used practices reasonably designed to ensure comprehension and meaningful participation given known limitations—i.e., how case plans were explained, reinforced, verified, and adapted.

Turner's testimony helps the jury evaluate whether DCS actions met accepted child-welfare practice and supervision standards when working with a parent with cognitive limitations. Disagreement with Turner's conclusion is a cross-examination issue, not a basis for wholesale exclusion of his testimony.

#### b. Again, narrow phrasing cures the "legal conclusion" concerns

If Turner used "due process" language here, the Court can limit him to practice testimony:

- adequacy of communication practices and reasonable accommodations in case planning,
- whether services and expectations were explained in a way designed to ensure meaningful understanding, and
- whether supervisors ensured compliance with these practices.

### D. DCS Defendants' "Factual Errors" Argument Goes to Weight, Not Admissibility

10

DCS Defendants list asserted factual mistakes (timing, placements, reasons for removal, drug testing issues) and urge exclusion. Mot at 4. That is not the Rule 702 standard. Experts are not excluded because a party disputes their reading of the record. The remedy is cross-examination and contrary evidence. Exclusion is appropriate only when an opinion is disconnected from the record or purely speculative. Turner's opinions are grounded in disclosed materials and professional standards and will assist the jury.

If DCS Defendants believe Turner's summary of certain facts is incorrect, they may challenge it at trial; it does not justify striking the expert entirely.

### E.   Proposed Limiting Order (Alternative Relief)

If the Court deems any portion of Turner's report or anticipated testimony to cross into impermissible legal conclusions, Plaintiff respectfully proposes narrow limitations rather than exclusion:

   1.   Turner may not testify that DCS Defendants "violated the Constitution," "committed judicial deception," or "conspired" as legal conclusions.

   2.   Turner may testify regarding DCS training, policies, standard child-welfare practices, supervision expectations, and whether conduct was consistent with those standards (including due-process-related training/practice duties under A.R.S. § 8-456).

   3.   Turner may not offer toxicology/lab-science opinions about drug test chemistry; he may testify about DCS practice regarding drug testing decision-making, documentation, and professional prudence.

These limitations cure DCS Defendants' stated concerns without depriving the jury of helpful specialized testimony.

## IV.   CONCLUSION

In conclusion, Turner's testimony helps the jury understand: (a) what competent DCS practice requires in court-facing accuracy and documentation (judicial deception

11

count); (b) what proper boundaries/disclosures are in third-party contractor communications (conspiracy/judicial deception context); and (c) what reasonable efforts and meaningful plan communication look like (due process count).

"Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness' testimony, not to admissibility." *Abarca*, *supra*, 761 F.Supp.2d at 1028. The trial court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F. 3d at 969 (emphasis added). Passing the threshold of admissibility merely requires that the expert's testimony have "a reliable basis in knowledge and experience of relevant discipline." *Messick v. Novarits Pharmaceuticals Corp.*, 747 F. 3d 1193, 1194 (9th Cir. 2014) (quotations omitted).

The Rule 702 task is not to "decid[e] whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car*, 738 F.3d 969-70. Impeachment alone is not a proper basis for exclusion. *Id.* at 969. An expert's opinion is always assailable through cross-examination. *Daubert*, 509 U.S. at 596. Ultimately, the purpose of the assessment is to exclude speculative or unreliable testimony to ensure accurate, unbiased decision-making by the trier of fact.

DCS Defendants have failed to demonstrate that wholesale exclusion of Turner's anticipated testimony is warranted under Rule 702.[3] None of DCS Defendants arguments require complete exclusion under the Rule. DCS Defendants' arguments go merely to the weight and credibility rather than admissibility.

For the foregoing reasons, DCS Defendants' Motion to Exclude Timothy Turner (Doc. 109) should be denied. In the alternative, the Court should impose narrowly tailored limitations on wording to prevent legal conclusions while permitting Turner's standard-of-care testimony concerning DCS training, policy, and accepted child-welfare practice,

---

[3] Notably, DCS Defendants' arguments are focused on Rule 702; they do not request a *Daubert* hearing and should not be allowed to do so in their Reply.

including DCS's statutory training duty to protect families' due process rights from initial contact through case closure under A.R.S. § 8-456.

**RESPECTFULLY SUBMITTED** this 5th day of February 2026.

**MILLS + WOODS LAW, PLLC**

By   /s/ Thomas A. Connelly
    Thomas A. Connelly
    Robert T. Mills
    Sean A. Woods
    5055 North 12th Street, Suite 101
    Phoenix, AZ 85014

**GILLESPIE, SHIELDS & TAYLOR**
DeeAn Gillespie Strub
7319 North 16th Street
Phoenix, AZ 85020

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 5, 2026, I electronically transmitted the foregoing document to be filed electronically with the Clerk of the Court using the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

  /s/ Thomas A. Connelly