KRISTIN K. MAYES
Attorney General

Deborah Garner (026161)
Assistant Attorneys General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Phone: (602) 542-7612
Fax: (602) 542-3393
DefensePhx@azag.gov
Deborah.Garner@azag.gov
*Attorney for DCS Defendants*

**UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jessica Ploof,<br>Plaintiff,<br>v.<br>State of Arizona, et al.,<br>Defendants. | Case No: 2:21-cv-00853-JJT<br>**REPLY IN SUPPORT OF DCS DEFENDANTS' MOTION TO EXCLUDE TIMOTHY TURNER**<br>(Hon. John J. Tuchi) |

Department of Child Safety (DCS) Defendants Tafoya, Greenway, Szymkowski, Hoff, and Breeding (DCS Defendants) through counsel, reply in support of their Motion to Exclude Timothy Turner. Plaintiff's response confirms the core deficiencies identified in DCS Defendants' Motion: Turner is not qualified to offer the opinions he provides, his opinions are speculative and unsupported by the factual record, and his report is permeated with improper legal conclusions. Plaintiff's attempt to salvage Turner's testimony rests almost entirely on reframing his opinions after-the-fact and proposing limitations on his testimony. Because Turner lacks the qualifications, reliable methodology, and factual foundation required under Rule 702, and because his opinions invade the province of the jury, his testimony should be excluded.

//

//

//

//

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. LAW AND ARGUMENT.**

**A. Plaintiff Fails to Establish that Turner is Qualified Under Rule 702.**

Plaintiff's Response misstates Rule 702 by suggesting that admissibility requires only "a reliable basis in knowledge and experience." (Doc. 128 at 4:11-15.) That is incorrect. Rule 702 requires far more. The proponent of expert testimony must demonstrate to the Court—by a preponderance of the evidence—that the expert satisfies Rule 702's admissibility requirements, including that the expert is qualified to offer the opinions at issue. *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 n.10 (1993); Fed. R. Evid. 702; Fed. R. Evid. 104(a). Plaintiff attempts to dismiss Turner's lack of qualifications as an issue of weight rather than admissibility. This argument fails because it improperly skips the required step. Plaintiff must first establish that Turner is qualified before any challenges can be characterized as issues of weight. The Advisory Committee Notes to the 2023 amendment make this clear: only after the Court determines that it is more likely than not that Rule 702's requirements are satisfied do competing arguments go to weight rather than admissibility. Fed. R. Evid. 702 Advisory Committee Notes to 2023 amendment. Plaintiff has not met that burden here.

Plaintiff also mischaracterizes DCS Defendants' licensure argument. DCS Defendants do not contend that licensure is categorically required under Rule 702. Rather, Turner's lack of licensure is one of several factors demonstrating that he lacks the specialized qualifications necessary to offer reliable opinions in this case. Turner is not a licensed social worker in any jurisdiction, has not worked for Arizona DCS since 2007, and has not worked in the field since 2017. These deficiencies are particularly significant given that Turner purports to offer opinions regarding Arizona-specific DCS practices, including "what DCS caseworkers/supervisors reasonably should do in investigations, documentation, communications, case planning, service provisions, and court-facing representations". (Doc. 128 at 5:10.) Plaintiff's reliance on *PixArt Imaging, Inc. v. Avago*

*Tech. Gen. IP (Singapore) Pte. Ltd.*, to suggest otherwise is misplaced. (Doc. 128, p.3:18-22.) *PixArt* does not hold that minimal experience is sufficient to qualify an expert in all circumstances. Rather, the court found the expert qualified because his education, training, and professional experience were directly related to the subject matter of his opinions. 2011 WL 5417090 at *4. Rule 702 still requires that an expert possess sufficient qualifications specific to the opinions he offers. Here, Turner lacks the necessary subject-matter qualifications. Unlike the expert in *PixArt*, Turner's experience does not demonstrate current or specialized expertise sufficient to reliably opine on Arizona-specific DCS practices, professional standards, or constitutional obligations. Therefore, he does not satisfy Rule 702.

Plaintiff's additional reliance on the assertion that Turner has been "retained in 58 cases" does not establish qualification under Rule 702. Retention reflects only that counsel hired Turner—not that any court qualified him as an expert, admitted his testimony, or found his opinions reliable. Prior retention or testimony does not establish that an expert is qualified in a subsequent case. Rule 702 requires this Court to independently evaluate Turner's qualifications before admitting his testimony—not defer to counsel's hiring decisions.

Accordingly, because Plaintiff has failed to establish that Turner possesses the qualifications necessary to offer reliable expert opinions on Arizona DCS practices and constitutional issues, his testimony is inadmissible under Rule 702 and must be excluded.

### B. Turner's Opinions Are Not Reliable Because They Are Based on Unsupported Assumptions, Factual Inaccuracies, and Speculation.

Plaintiff characterizes Turner's opinions as reliable "record-to-standard" analysis based on his experience and review of case materials. DCS Defendants are not challenging the general admissibility of experience-based testimony. But rather argue that Turner's opinions are unreliable because they rely on unsupported assumptions, factual inaccuracies, and speculative conclusions.

Plaintiff, as the proponent of Turner's testimony, has the burden of establishing that his opinions are grounded in sufficient facts and reflect reliable analysis. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592 n.10. Plaintiff fails to do so. Instead, she attempts to minimize the factual deficiencies identified in DCS Defendants' motion by characterizing them as "minor factual disputes" and suggesting that resolving such issues is the jury's role. DCS Defendants are not asking the Court to resolve factual disputes or weigh competing evidence. The issue under Rule 702 is whether Plaintiff has established that Turner's opinions are grounded in sufficient and reliable facts. Plaintiff has not made that showing. Plaintiff does not dispute the underlying record cited by DCS Defendants, nor does Plaintiff identify evidence establishing that Turner's assumptions are accurate or reliably supported. Simply labeling unsupported assumptions as "disputes" does not render those opinions reliable or admissible. Similarly, Plaintiff's assertion that DCS Defendants' arguments go only to the weight misstates Rule 702. The Court must first determine whether Turner's opinions are grounded in sufficient facts and reliable analysis before they may be presented to the jury. Plaintiff has not demonstrated that they are. Because Plaintiff has failed to establish that Turner's opinions are grounded in sufficient facts or reflect a reliable application of identifiable standards, his testimony is inadmissible.

### C. Plaintiff's Attempt to Reframe Turner's Opinions Does Not Cure Their Inadmissibility.

Plaintiff's response appears to acknowledge the deficiencies identified in Turner's report. Rather than identifying governing standards or demonstrating that Turner's opinions are grounded in reliable principles and methods, Plaintiff attempts to preserve Turner's testimony by reframing his opinions and proposing that he may instead testify more generally. But such reframing does not cure the foundational defects identified in DCS Defendants' motion. The admissibility of expert testimony depends on whether the opinions disclosed in the expert's report satisfy Rule 702—not whether they can be recast after the fact in more generalized terms.

**1. Turner fails to identify any reliable or governing standards supporting his opinions.**

Plaintiff attempts to preserve Turner's testimony by reframing his opinions as addressing DCS practice standards, investigation adequacy, and similar generalized concepts. But this reframing does not cure the foundational defects identified in DCS Defendants' motion. Plaintiff still fails to identify any statute, administrative code, DCS policy, training material, or recognized professional authority establishing the standards Turner claims were violated. (Doc. 109 at 9–10.) Instead, Turner asserts generalized and subjective "standards" that are not tied to any identifiable governing authority, policy or professional requirement. Plaintiff's response likewise fails to identify any such governing standard or point the Court to any portion of Turner's report identifying a specific statue, policy, regulation, or accepted child-welfare practice that forms the basis for his opinions. Simply relying on undefined "practice standards" and "accepted child welfare practice standards and supervision standards" as Plaintiff repeatedly describes Turner's opinions (Doc. 128 at 7, 9-10), does not satisfy Rule 702. Without identifying any reliable governing standard, Turner's opinions lack the foundation required by Rule 702 and are inadmissible.

**2. Turner's opinions on dismissed claims are irrelevant to any remaining issues and improperly recast as expert testimony.**

Despite the dismissal of Plaintiff's constitutional claim based on unlawful seizure, Plaintiff nevertheless argues that Turner may still testify regarding how the investigation was initiated, documented, and conducted. (Doc. 128 at 6:4-8). But Plaintiff cannot avoid exclusion by reframing opinions tied to the dismissed claim as opinions about general DCS practices. Rule 702 permits expert testimony only where it assists the trier of fact in understanding the evidence or determining a fact at issue. Fed. R. Evid. 702(a). Because those opinions relate only to a dismissed claim, they are no longer relevant and cannot assist the trier of fact. *Daubert,* 509 U.S. at 591 (stating that "expert testimony which does

not relate to any issue in the case is not relevant and, ergo, non-helpful".) They are therefore inadmissible under Rule 702.

Moreover, Plaintiff's attempt to preserve Turner's testimony here would allow him to recount and interpret the factual record rather than apply reliable expert methodology. Plaintiff asserts that, "even if certain unlawful seizure phrasing is no longer directly tied to a claim, the underlying facts and professional practices remain relevant to the surviving due process/reasonable efforts theory," including "how the case was initiated, what DCS documented, how risk was assessed, and whether reasonable alternatives and services were considered." (Doc. 128 at 6:4-8.) But these are factual matters derived directly from the record, not subjects requiring specialized expert analysis. Rule 702 permits expert testimony only where specialized knowledge assists the trier of fact—not where the expert, who has no personal knowledge of the events, simply rehashes the factual record or presents his interpretation of what occurred. *See U.S. v. Freeman*, 498 F.3d 893, 904–05 (2007). Because Count Two—Plaintiff's unlawful seizure claim—has been dismissed, Turner's opinions addressing the initiation, legality, or justification for DCS's investigation and removal of the child no longer relate to any claim before the jury and are inadmissible under Rule 702.

**3. Turner's opinions regarding communications with Dr. Thal remain unsupported and inadmissible.**

Apparently recognizing the deficiencies in Turner's opinions regarding DCS's communications with Dr. Thal, Plaintiff attempts to salvage those opinions by asserting that Turner may instead testify generally to "educate the jury about child welfare practice standards" governing DCS communications with contracted evaluators. (Doc. 128 at 7:1-5). First, Plaintiff has not established that Turner is qualified to testify regarding any such standards, particularly Arizona-specific standards as discussed above. More importantly, Rule 702 requires more than testimony that may be informative to the jury—it requires expert opinions grounded in reliable principles and methods and reliably applied to the facts of the case. Turner did not identify any statute, regulation, DCS policy, or recognized

professional authority establishing the standards he claims were violated, and Plaintiff's response likewise identifies none. Simply asserting that Turner can educate the jury about unspecified "practice standards" does not satisfy Rule 702. Without identifying any governing standard, Turner applies no reliable methodology, and his opinions reflect only his personal views of what DCS personnel should have done. These opinions are therefore inadmissible.

**4. Turner's opinions constitute impermissible legal conclusions and invade the province of the jury.**

Plaintiff argues that DCS Defendants improperly conflate legal conclusions with factual and standard-of-care assistance and contends Turner should be permitted to testify regarding DCS training, professional practices, and whether DCS Defendants' conduct complied with those expectations. (Doc. 128 at 7-9). But Turner's opinions do not merely describe neutral practices. Instead, he reaches legal conclusions, including that DCS Defendants violated Plaintiff's due process rights. Plaintiff argues that Turner may offer such opinions because Arizona law requires DCS to train investigators on protecting parents' legal and due process rights. *See* A.R.S. § 8-456. But a statutory training requirement does not authorize an expert to testify that constitutional violations occurred in a particular case. Whether DCS Defendants violated Plaintiff's constitutional rights is a legal determination reserved for the Court and the jury—not a subject for expert opinion. *See Nationwide Transport Finance v. Cass Information Systems, Inc.* 523 F.3d 1051, 1058 (9th Cir. 2008). Turner may not present constitutional conclusions under the guise of describing professional practices or training expectations.

Plaintiff asserts that Turner may testify regarding what competent casework requires when presenting or relying on evaluations, what should be disclosed to the juvenile court and opposing parties, and how communications or documentation practices could have "misled decision makers." (Doc. 128 at 8:1–6.) Even assuming Turner were qualified to testify regarding general child-welfare practices and could identify reliable, governing standards—which he has not—his proposed testimony goes further. Turner

was not involved in this case and has no personal knowledge of what any decision-maker relied upon or how they interpreted the evidence. He may not speculate—based solely on his retrospective review of the record—about whether decision-makers were misled or what conclusions they should have drawn. Those determinations are reserved for the jury. Allowing Turner to offer such opinions would improperly invade the province of the jury by substituting his judgment for the jury's independent evaluation of the facts.

Plaintiff also argues that Turner may testify regarding whether DCS caseworkers used practices "reasonably designed to ensure comprehension and meaningful participation" characterizing this as a standard-of-care question. (Doc. 128 at 10:13-14). But Plaintiff's proposed testimony does not remedy the defects identified in Defendant's motion. Turner still identifies no governing professional standard defining how such comprehension must be assessed and applies no reliable methodology to evaluate Plaintiff's understanding. Nor does Plaintiff identity facts in the record demonstrating that Plaintiff failed to understand the information provided. Turner simply interprets the record and speculates about whether Plaintiff meaningfully comprehended what was explained to her, something Turner has no personal knowledge of and no reliable basis to determine. Plaintiff's attempt to "narrow phrasing to cure legal conclusion concerns" (Doc. 128 at 10:19-27) does not resolve these fundamental defects. Without identifying and reliably applying any recognized standard of care, Turner's opinions amount to speculation and do not satisfy Rule 702.

Finally, Plaintiff attempts to avoid exclusion by proposing that Turner simply refrain from using terms such as "violated the Constitution" or engaged in a "conspiracy." But changing the terminology does not change the substance. Turner would still be offering his interpretation of the evidence and presenting conclusions about whether DCS Defendants acted unlawfully or improperly. Rule 702 does not permit an expert to tell the jury what the evidence shows or how to evaluate DCS Defendants' conduct. Because Turner's opinions rest on legal conclusions and factual interpretations reserved for the jury, they are inadmissible under Rule 702.

## II. CONCLUSION

Plaintiff's response does not remedy the defects identified in DCS Defendants' motion. Plaintiff has failed to establish that Turner is qualified to offer the opinions at issue or that his opinions are grounded in any identifiable professional standard or reliable methodology. Instead, Turner's opinions are unsupported by the factual record, consist of speculation, and improperly offer legal conclusions regarding constitutional due process and the adequacy of DCS Defendants' conduct. Plaintiff's attempt to reframe or limit Turner's testimony does not cure these fundamental Rule 702 deficiencies. Because Turner's opinions lack a reliable foundation and consist of speculation and impermissible legal conclusions, these defects cannot be cured through limiting instructions or cross-examination and require exclusion under Rule 702. For these reasons, DCS Defendants respectfully request that the Court grant their Motion to Exclude Timothy Turner.

RESPECTFULLY SUBMITTED this 20th day of February, 2026.

Kristin K. Mayes
Attorney General

*/s/ Deborah Garner*
Deborah Garner
Assistant Attorney General
*Attorney for DCS Defendants*

**CERTIFICATE OF SERVICE**

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, this 20th day of February, 2026:

Thomas A. Connelly, Esq.
Robert T. Mills, Esq.
Sean A. Woods, Esq.
MILLS + WOODS LAW, PLLC
tconnelly@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Ploof*

DeeAn Gillespie Strub, Esq.
Jenny D. Jansch, Esq.
GILLESPIE, SHIELDS & TAYLOR
dgillespie@gillaw.com
jjansch@gillaw.com
*Attorneys for Ploof*

Jeffrey S. Hunter, Esq.
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
jhunter@wwhgd.com
*Attorneys for Defendant Thal*

*/s/ Sarah Wolfe*
LMS20-0389