KRISTIN K. MAYES
Attorney General

Deborah Garner (026161)
Assistant Attorney General
2005 North Central Avenue
Phoenix, Arizona 85004-1592
Phone: (602) 542-8050
Fax: (602) 542-3393
DefensePhx@azag.gov
Deborah.Garner@azag.gov

*Attorney for DCS Defendants*

**UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Jessica Ploof, | Case No: CV21-00853-PHX-JJT |
| Plaintiff, | **DEFENDANT DCS' CONTROVERTED STATEMENT OF FACTS IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Defendant Department of Child Safety ("DCS"), Defendants Tafoya, Greenway, Szymkowski, Hoff, and Breeding ("DCS Defendants") through counsel, provides DCS Defendants' Controverting Statement of Facts ("DCSOF") in support of their Response to Plaintiff's Motion for Summary Judgment (Doc. 121) and Plaintiff's Statement of Facts in Support of Plaintiff's Motion for Summary Judgment ("PSOF") (Doc. 122).

1. It is undisputed that Jessica Ploof is the mother of H.P., who was born in April 2014, that Jessica is intellectually disabled and that she lived with her mother, Brendi. The remaining assertions are disputed. Plaintiff's cited materials do not establish that Brendi co-parented H.P. or ensured that H.P.'s medical needs were appropriately met.

2. Disputed. The cited materials do not establish that Jessica arranged services for H.P. through the Arizona Department of Developmental Disabilities, including physical therapy and attendance at a head start preschool. Brendi testified that she, not Jessica, arranged those services. (Deposition of Brendi Ploof, attached as **Exhibit 1**, pp. 55:6-58:22.)

1         3.      Disputed. The cited materials do not establish that Jessica "dutifully cared for" H.P. or that doctors, teachers, and family members observed and found no concerns regarding H.P. or Jessica's care. The cited materials reflect only the absence of court or agency records.

        4.      Disputed. The cited DCS report does not establish that Jessica ended a relationship in December 2016 or that her former boyfriend threatened to contact DCS. The cited report reflects only Jessica's statements to DCS.

        5.      Undisputed that DCS received two anonymous reports regarding Jessica and H.P. on December 20 and December 21, 2016. Dispute the characterization that the reports were received "soon after" as the cited materials do not establish that timing.

        6.      Undisputed.

        7.      Undisputed.

        8.      Undisputed.

        9.      Undisputed.

        10.     Undisputed.

        11.     Undisputed.

        12.     Undisputed that the TDM Summary Report reflects that H.P. was healthy with stable housing, that Jessica had family support and loved H.P., that Brendi was identified as a safety monitor, that Jessica was required to participate in TERROS and parenting classes. The TDM summary does not state whether Brendi's submission to substance abuse screening was a condition for Jessica to keep H.P. Brendi testified that she understood at the TDM that she was required to submit to drug screening. (*See* **Ex. 1**, p. 83:11-14.)

        13.     Undisputed that on January 12, 2017, Brendi reported that she was called into work and was unable to complete the drug screening test that day. Dispute the remaining assertions. The cited materials do not establish Brendi's job role at the time or that she would complete drug screening at a rescheduled time.

14. Undisputed that H.P. remained in the home until removal on January 12, 2017, pursuant to a Temporary Custody Notice with supervisor approval and without a prior court order or warrant. Dispute the remaining assertions. The Temporary Custody Notice identifies risk factors at the time of removal; it does not address that H.P. remained in the home for 22 days or whether circumstances had changed from earlier home visits or safety planning.

15. Undisputed that following H.P.'s removal, on or about January 26, 2017, DCS assigned Paige Szymkowski as the ongoing caseworker. Dispute the remaining assertions to the extent they characterize the removal as a "seizure".

16. Undisputed. Clarify that the dependency petition and amended dependency petition were filed by the Arizona Attorney General's Office on behalf of DCS and were verified by Tafoya. Undisputed that neither the original nor amended dependency petition alleged that the home was unsafe, substandard, or dirty. Dispute the remaining assertions to the extent they rely on matters outside the petition or on inadmissible hearsay not supported by the cited materials.

17. Undisputed that on January 18, 2017, Tafoya submitted a Report to Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing that identified the following recommendations: that Jessica demonstrate sobriety, participate in all recommended services, spend quality time with H.P. during visitation, complete a psychological evaluation to determine her ability to parent her child without assistance, develop and maintain social/community connections/support, and participate in random urinalysis. The report further recommended parent aide supervised visits and that Jessica work on gaining financial independence.

18. Undisputed that H.P. was placed in a licensed foster home; however, H.P. was initially placed with a relative following the removal. When that placement could not be maintained, the juvenile court ordered that H.P. be placed in a licensed foster home. (PSOF Exhibit 12, p. ST-PLOOF-000839 at ¶ B; *see also* State Defendants' Statement of Facts ("DSOF") (Doc. 107) ¶¶ 19, 21, 23-24, 27.)

19. Undisputed that Jessica participated in and completed the services recommended by DCS. DCS, however, continued to have concerns regarding Jessica's ability to "independently learn, retain and implement safe and effective parenting practices. (PSOF Exhibit 12, p. ST-PLOOF-000841 ¶ V.) Defendants dispute that "for the two years that the trial court process lasted, Jessica "never again tested positive for any substances, legal or illegal." Jessica submitted to substance testing between approximately February 14, 2017 and September 6, 2017 and did not have positive test results during that period. (*See* PSOF Exhibit 14.)

20. Undisputed that in May 2017, Szymkowski submitted a referral for psychological evaluation of Jessica listing Dr. Thal as her first preferred provider. The DCS Referral Unit processes the referral and assigns the provider. (*See* Deposition of Paige (Wooldridge) Szymkowski, attached at **Exhibit 2,** p. 144:2-12.)

21. Undisputed that Dr. Thal was a contracted provider with DCS at the relevant time. Undisputed that Dr. Thal testified that historically 90-95 percent of his referrals came from DCS. (*See* Deposition of Dr. Thal, attached at **Exhibit 3**, p. 33:1-4.) Dispute the remaining assertions. Dr. Thal testified that approximately 75 percent of his total income in 2018 was derived from DCS and that currently approximately 50 percent of his annual income is derived from DCS. (*Id.* at p. 34:7-21.)

22. Undisputed that the CSRA assessment and plan is dated October 2, 2017 and contains the language quoted by Plaintiff. Dispute the remaining allegations. The cited testimony reflects that the CSRA states "the home was free from any safety hazards" and that no additional observations regarding the home being dirty or unsanitary were noted. (*See also* **Ex. 2**, pp. 136:14-19; 137:9-19; 138:1-4.)

23. Undisputed that Szymkowski transitioned out of the ongoing case manager role at the end of 2017 when she was promoted to Program Manager and that Claudia Hoff assumed the ongoing case manager role on January 3, 2018. (*See* **Ex. 2**, p. 10-20.) Disputed to the extent Plaintiff characterizes that transition as a "removal" or asserts that Szymkowski was not permitted or required to have any involvement in the matter.

24. Undisputed that Dr. Thal conducted a psychological evaluation of Jessica on July 18, 2017, and that the report states that her best-case scenario would be to serve in a co-parent role or as an assistant caregiver requiring ongoing supervision. Undisputed that Dr. Thal testified that Brendi would be an acceptable co-parent. Dispute that the July 18, 2017, report specifically recommended that Brendi serve as the primary parent.

25. Undisputed that in the January 4, 2018, report, Dr. Thal opined that Brendi: (1) "would appear to be a particularly suitable long-term placement"; (2) demonstrated "minimally adequate caregiving skills to her grandson;" (3) "likely possesses the ability to meet the special needs of her grandson;" and (4) that "a child in the sole care and custody of this grandparent would not appear to be at risk in any identifiable way provided she sets clear boundaries and expectations with the mother, Jessica Ploof". Dispute that Dr. Thal recommended that Brendi file for permanent guardianship but rather opined that "it would be appropriate to seek a permanent guardianship of H.P." (PSOF, Exhibit 23, pp. 8-9.) Undisputed that the email reflects the report was sent to Szymkowski on January 18, 2018, but dispute that the exhibit establishes that the report was signed.

26. Undisputed that on January 24, 2018, Szymkowski sent Dr. Thal an email asking if he had time to discuss the client. Dispute the remaining assertions. The cited testimony does not establish that Szymkowski, Hoff, and Breeding discussed the report and agreed that Szymkowski should call Dr. Thal.

27. Undisputed that the January 29, 2018, letter contains the quoted language.

28. Undisputed that Szymkowski was no longer the ongoing case manager at the end of 2017 and that she spoke with Dr. Thal on January 30, 2018, but it's disputed to the extent Plaintiff characterizes the communications as involving "unsolicited opinions" or that Szymkowski expressed concerns with his report, as the cited materials consist only of handwritten notes and do no support that she expressed concerns with Dr. Thal's report. It is undisputed that Szymkowski advised Dr. Thal that H.P. had established a relationship with his foster parents but it's disputed to the extent Plaintiff characterizes the communications as involving "lay opinions" or that the cited materials support that

1  Szymkowski told Dr. Thal to take that into consideration. It is undisputed that
2  Szymkowski expressed concerns with the condition of the home but dispute that the cited
3  materials support that she knew the issues did not exist or were unsubstantiated. The cited
4  materials do not support Plaintiff's statement that no new factual information was given
5  to Dr. Thal.

6      29.    Undisputed that Dr. Thal issued an updated report on February 7, 2018,
7  (PSOF, Ex.29) and that it included a bonding/best interest evaluation recommendation.
8  Disputed to the extent Plaintiff characterizes the communications as "ex parte" or that Dr.
9  Thal now opined that Brendi would not be able to provide minimally adequate parenting.
10 The updated report states: "[t]he prognosis that this grandmother will be able to
11 demonstrate minimally adequate caregiving skills….is seen as favorable provided that she
12 can maintain a clean and hygienic home environment." (PSOF Exhibit 28 at p. 8 ¶ 2.)

13     30.    Disputed to the extent Plaintiff characterizes the January 30, 2018, telephone
14 call as "ex parte" or mischaracterizes Dr. Thal's testimony. Dr. Thal testified that "there
15 were no new events in that sense. There was nothing new that had happened." (PSOF
16 Exhibit 19 at 283:4-8.). Nor did he testify that the call made him view the information
17 differently and that he changed his conclusions and recommendations as a result. Instead,
18 Dr. Thal testified that "I reviewed the information I have, I had at that time. And that, I
19 think, compelled me on further review and to look at those things closely to make changes
20 to that report." (*Id*. at 340:24-341:2; *see also Id*. at 330:24-331:22.)

21     31.    Undisputed.
22     32.    Undisputed.
23     33.    Undisputed.
24     34.    Undisputed that on February 7, 2018, Dr. Thal sent a revised report and
25 instructed Hoff to shred the earlier version. Undisputed that the original report had been
26 disclosed. Disputed to the extent Plaintiff characterizes the revisions as "radical" or
27 asserts that Szymkowski had disclosed the original report. The record does not establish
28 that Szymkowski disclosed it.

1  35. Undisputed that Jessica completed parent aide services on February 28, 2018, and that the discharge summary states she demonstrated an ability to meet H.P.'s basic needs. Disputed to the extent Plaintiff characterizes the report as recommending reunification. The discharge summary reflects that Jessica continued to require ongoing support services and recommends that participation in a Family Reunification Team would be appropriate as the family transitions to reunification.

36. Undisputed that a family reunification team was not assigned and that a bonding assessment was requested. Undisputed that Dr. Thal's February 7, 2018, revised report included a recommendation for a bonding/best interest evaluation. Disputed to the extent Plaintiff characterizes the recommendation as "procured," "altered," or requested in furtherance of Hoff's aim to sever Jessica's parental rights; the revised report transmitted on February 7, 2018, predates the February 28, 2018, parent aid discharge summary and the cited testimony does not establish that assertion, and when asked whether she sought a bonding assessment to move the case toward severance and adoption, Hoff responded "That's not how it went." (Deposition testimony of Claudia Hoff, attached as **Exhibit 4**, pp. 149:22-150:6.) Plaintiff's statement referencing Hoff's track record is disputed. Plaintiff's characterization of Hoff's testimony regarding her professional experience is argumentative and does not establish a material fact.

37. Undisputed that the March 6, 2018, communication attached as Exhibit 33 reflects the statements in this paragraph. Disputed to the extent Plaintiff characterizes the report as "altered." The record reflects that Dr. That issued a revised report.

38. Undisputed that Dr. Thal authored a March 14, 2018, letter regarding his revised report of Brendi's evaluation. Disputed to the extent Plaintiff asserts that the letter was written in response to a court inquiry, characterizes the report as "altered" or asserts that revisions were made because of the January 30, 2018, telephone call. Dr. Thal testified that he did not know whether the court inquiry prompted the letter (**Ex. 3**, p. 349:7-19) and further testified that he "reviewed the information I have, I had at that time.

1  And that, I think, compelled me on further review and to look at those things closely to
2  make some changes to that report." (*Id*. at 340:24-341:2; *see also Id*. at 330:24-331:22.)

3     39.    Undisputed that the letter contains the quoted statements.

4     40.    Undisputed that the March 14, 2018, letter states that Szymkowski raised concerns regarding H.P.'s relationship with his foster parents and that she was concerned about the potential traumatic impact of removal. It is undisputed that the letter does not reference trauma associated with H.P.'s January 12, 2017, removal.

8     41.    Disputed. This paragraph consists of argumentative characterizations rather than statements of material fact.

10    42.    Disputed. This paragraph consists of argumentative characterizations and unsupported legal conclusions.

12    43.    Undisputed that the records reviewed section appears the same in both versions of Brendi's report and Jessica's report lists the Comprehensive Child Safety and Risk Assessment among the materials reviewed. Disputed to the extent Plaintiff asserts that this establishes Dr. Thal knew no new information was provided, that any allegations were unsubstantiated or that the information discussed during the January 30, 2018 call was false, as those are argumentative inferences not material facts and are not established by the cited materials.

19    44.    Undisputed that on March 7, 2018, Hoff referred H.P., his foster parents, Jessica and Brendi to Dr. Bennett for a bonding/best interest assessment, that Hoff provided Dr. Bennett with Dr. Thal's revised report as collateral information and that Dr. Bennett issued a report opining that it was not in H.P.'s best interest to return to Jessica and Brendi's care. Disputed to the extent Plaintiff characterizes Dr. Thal's report as "altered" or "profoundly altered" or asserts that Dr. Bennett's conclusions were partially based on or improperly influenced by Dr. Thal's report, as those are argumentative characterizations and causation inferences not established by the cited materials.

27    45.    Undisputed that on June 12, 2018, Hoff emailed Dr. Bennett and that email included the phrase "they are barely minimal…." Disputed to the extent Plaintiff

8

1 characterizes the communication as "ex parte" or as offering improper "lay opinions."
2 Undisputed that in a June 21, 2018, email, Hoff thanked Dr. Bennett for his detailed report
3 and stated he may be called to testify as she believed DCS may attempt to terminate
4 parental rights. Undisputed that on September 20, 2018, Hoff sent Dr. Bennett an email
5 containing the statement "Questions for best interest tomorrow for Ploof". Undisputed
6 that in the September 20, 2018, email, Hoff indicated that the evaluation was needed
7 quickly because Dr. Thal preferred to review it before conducting another evaluation of
8 Brendi. Undisputed that in the email Hoff indicated that she could provide more case aid
9 notes and stated, "we are terminating on mother." Dispute Plaintiff's assertion that Hoff
10 "improperly orchestrated" a change in case plan or violated due process. These are legal
11 conclusions and argumentative characterizations, not material facts supported by the
12 evidence.

13    46.   Undisputed that on August 14, 2018, a motion to terminate the parent-child
14 relationship was filed. Disputed to the extent Plaintiff asserts that Hoff "facilitated filing"
15 the motion, as the motion was filed by the Arizona Attorney General's Office on behalf of
16 DCS. (PSOF Exhibit 40.) Disputed that DCS anchored its position for termination on Dr.
17 Thal's assessment of Brendi. The motion relies on Dr. Thal's evaluation of Jessica, not
18 Brendi. (*Id*. at 3:1-22.) Disputed that the termination states that "foster care was the least
19 restrictive placement." Rather, the motion alleges that the "child is in adoptive placement,
20 which is meeting all of his special needs" (*Id*. at 5:19-20) and "[t]he child's current
21 placement is the least restrictive placement available consistent with his best interests."
22 (*Id.* at 5:27-6:1.). Undisputed that the motion states that the "child is not placed with a
23 grandparent…which is in his best interest, because DCS is unaware of any such person
24 who is willing, able and appropriate to care for the child." (*Id*. at 5:24-28.) Disputed to
25 the extent Plaintiff characterizes that statement as "false" as that is argumentative and not
26 supported by the cited materials.

27    47.   Undisputed that Dr. Thal conducted a subsequent psychological evaluation
28 of Jessica dated October 18, 2018, and that the report includes the quoted language.

1  Undisputed that Dr. Thal opined that the prognosis was poor, that Jessica could
2  demonstrate minimally adequate parenting skills in the future. Disputed to the extent
3  Plaintiff asserts that Dr. Thal "relied partly" on Dr. Bennett's report in reaching his
4  conclusions or that his recommendations "changed" from unification to adoption. The
5  October 18, 2018, report lists Dr. Bennett's evaluation among documents reviewed but
6  does not state the extent to which it was relied upon. (PSOF Exhibit 41 at 2.) And the
7  prior evaluation did not recommend reunification. The initial report expressly stated that
8  placement in Jessica's sole and independent care was not recommended and that
9  alternative long-term placement was necessary. (PSOF Exhibit 22 at 11.)

10        48.    Disputed. The cited materials establish that Jessica obtained her own
11  apartment but do not establish that she worked as a caregiver for a disabled child or that
12  she lived independently for many months before the severance trial.

13        49.    Undisputed that Lee Underwood, Psy.D., conducted a psychological
14  evaluation of Jessica dated April 19, 2019, and that his report includes the
15  recommendations summarized by Plaintiff, including reinitiating a plan for Jessica to
16  serve as physical guardian under a co-parenting model, individual behavioral health
17  counseling for H.P., revision of the safety plan, and individual counseling for Jessica. The
18  report also includes additional therapeutic recommendations, including joint counseling
19  between Jessica and her mother and consultation with a psychiatric provider, as reflected
20  in the report. (PSOF Ex. 43 at 28-29.)

21        50.    Undisputed that Plaintiff retained expert, Dr. Andrew Clark, and that he
22  expressed the opinions summarized by Plaintiff. Disputed to the extent those opinions are
23  presented as material facts, as they constitute contested expert opinions and legal
24  conclusions.

25  / / /
26  / / /
27  / / /
28  / / /

51. Disputed to the extent Dr. Clark's opinion is presented as a material fact as it constitutes contested expert opinion and legal conclusion.

DATED this 13th day of March, 2026.

Kristin K. Mayes
Attorney General

s/Deborah Garner
Deborah Garner
Assistant Attorney General
*Attorney for DCS Defendants*

## CERTIFICATE OF SERVICE

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, this 13th day of March, 2026:

Thomas A. Connelly, Esq.
Robert T. Mills, Esq.
Sean A. Woods, Esq.
MILLS + WOODS LAW, PLLC
tconnelly@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com
*Attorneys for Ploof*

DeeAn Gillespie Strub, Esq.
Jenny D. Jansch, Esq.
GILLESPIE, SHIELDS & TAYLOR
dgillespie@gillaw.com
jjansch@gillaw.com
*Attorneys for Ploof*

Jeffrey S. Hunter, Esq.
WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
jhunter@wwhgd.com
*Attorneys for Defendant Thal*

By: s/Jill Lafornara