Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS & TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiffs*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Jesscia Ploof, an individual,<br><br>                    Plaintiff,<br><br>v.<br><br>State of Arizona, *et al.*,<br><br>                    Defendants. | Case No.: 2:21-cv-00853-JJT-PHX<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT JAMES THAL'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Hon. John J. Tuchi) |

Plaintiff, by and through undersigned counsel, hereby responds in opposition to *Defendant James Thal's Motion for Summary Judgment* (Doc. 113), for the above referenced matter.[1]  Plaintiff provides the following Memorandum of Points and Authority

---

[1] To the fullest extent possible, this response is comprised of Plaintiff's Controverting Statement of Facts in Support of her Response in Opposition to Defendant James Thal's Motion for Summary Judgment ("CSOF"), Plaintiff's Motion for Summary Judgment (Doc. 121) and Plaintiff's Statement of Facts in Support of her Motion for Summary Judgment ("PSOF") (Doc. 122) and the exhibits attached thereto.

1  and Controverting Statement of Facts in Support of her Response in Opposition to

2  Defendant James Thal's Motion for Summary Judgment ("CSOF").

### MEMORANDUM OF POINTS AND AUTHORITY

## I.    <u>OVERVIEW</u>

This is a simple and tragic case of undue influence by the Department of Child Safety's case workers who overstepped their roles by colluding with the Department's contract provider, Dr. James Thal, a willful participant with State Defendants. Those parties conspired, jointly acted, and shared a common objective to move the case from reunification to severance.

Plaintiff is not seeking to relitigate the claims or issues decided by the Juvenile Court, nor is she seeking to overturn the severance. Plaintiff Jessica Ploof brings her civil rights claims against Defendant Thal and various State Defendants[2] after her parental rights to her son were terminated because of the unconstitutional actions taken by certain State Defendants and Defendant Thal. Plaintiff's civil rights action is not an appeal of the severance; it is a damages action for independent misconduct that was not before the juvenile court because the "behind-the-scenes coordination" was concealed and surfaced through civil discovery here.

Defendants each played a pivotal role in moving to sever Plaintiff's right to her son H.P. by filing a Severance Motion for Termination of Parent-Child Relationship anchored on Dr. Thal's altered assessment of Plaintiff's mother, Brendi Ploof, which was heavily relied upon by another psychologist, Dr. S. Bryce Bennett, who performed a bonding/best interest assessment, circularly relying on Dr. Thal's altered report, integral to the severance proceedings.  State Defendants and Dr. Thal altered the evidentiary inputs presented to the court and later evaluators so that the State could move to sever Plaintiff's parental rights.

---

[2] Remaining "State Defendants" refers collectively to the following individuals: Paige Szymkowski (now known as Paige Woodridge), Megan Tafoya, Sarah Greenway, Claudia Hoff, and Nick Breeding.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Defendants moved to dismiss on statute of limitations grounds. This Court dismissed the claims arising under federal law (Claims One through Nine and Fourteen) and remanded the state law claims (Claims Ten through Thirteen). Plaintiff appealed the dismissal of her federal claims. On 13 April 2023, the 9th Circuit reversed the dismissal of Claims Four, Five, Six, Seven, Eight, and Nine and remanded back to this Court. The remaining claims before this Court are judicial deception (Claim Four); conspiracy (Claim Five); and reasonable efforts (Claim Six).[3] The only remaining claim alleged against Defendant Thal is conspiracy (Claim Five).

Defendant Thal moves for summary judgment on conspiracy (Claim Five) arguing that (1) no constitutional violation occurred, (2) no conspiracy exists, (3) causation is broken by the Juvenile Court's independent judgment, (4) preclusion and Rooker-Feldman bar the claim, (5) waiver applies, and (6) the claim is time-barred.

## II.    **BACKGROUND**

Jessica is the mother of H.P., born in 2014. Having struggled with an intellectual disability her entire life, she resided with her mother, Brendi Ploof, to help co-parent H.P. and ensure his special and medical needs were met. **CSOF ¶¶ 2-5**; **PSOF ¶¶ 1-3**. Because H.P. was a medically challenged child, Jessica and Brendi arranged services for H.P. through the Arizona Department of Developmental Disabilities (DDD), including physical therapy, speech therapy, and attendance at a Head Start preschool. **PSOF ¶ 2**. None of the DDD service providers and other professionals who regularly interacted with either or both H.P. and Jessica, including doctors and teachers, as well as family members, saw anything amiss the way Jessica cared for H.P. *Id*. None of these mandated reporters ever saw neglect or abuse that warranted a report to DCS or the police.

In December 2016, after Jessica ended a toxic relationship, her ex-boyfriend threatened to call the Department of Child Safety ("DCS") and make allegations against her. **PSOF ¶ 4**. Soon thereafter, DCS received two anonymous tips regarding Jessica and

---

[3] The Parties voluntarily dismissed Claims Seven (Medical Decisions), Eight (Medical Treatment, and Nine (Educational Decisions) (Docs. 103, 104).

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

H.P. **CSOF ¶ 5**; **PSOF ¶ 5**. The first call was received on 20 December 2016, alleging that Jessica was neglecting H.P. and that her home was unsafe. **PSOF ¶ 5**. The second was received on 21 December 2016, alleging neglect, substance abuse, domestic violence, and that the home was "dirty" with "food, dirty clothes, tampons [unused] and spiders all over the floor." *Id*.

In response to these tips, DCS investigators Defendant Megan Tafoya and Ms. Baggen visited Jessica's home unannounced twice. **PSOF ¶ 6**. After investigating, they allowed H.P. to remain in the home with Jessica and Brendi as a safety monitor. **PSOF ¶¶ 6-9**. The substandard conditions reported in both hotline calls were not observed either time and were recorded by DCS as "unsubstantiated." **PSOF ¶ 7-8**.

At Tafoya's request, Jessica voluntarily submitted to drug testing, showing positive for alcohol, marijuana, and methamphetamine. **PSOF ¶ 10**. In response to the positive drug test, Tafoya scheduled a Team Decision Meeting (TDM), a meeting between DCS and the family to discuss the safety plan, on 11 January 2017. **PSOF ¶ 1**. It was reported during the TDM that H.P. was healthy with stable housing. **PSOF ¶ 12**. Tafoya appointed Brendi as a "safety monitor for an in-home dependency." *Id*. Jessica was required to participate in TERROS and parenting classes. *Id*. Brendi agreed that she would submit to drug testing, as well. *Id*. Brendi was unexpectedly called into work on 12 January 2017 and could not undergo the drug and alcohol screening. **PSOF ¶ 13**. Brendi offered to complete the screening on another day when she was not working. *Id*. That same day, despite there being no significant change in circumstances and no imminent danger to H.P., Tafoya removed H.P. from Jessica's care using a Temporary Custody Notice (TCN) without court authorization. **CSOF ¶ 6**; **PSOF ¶ 14**. On 17 January 2017, DCS caused a Dependency Petition and Petition for Paternity and/or Child Support to be filed. **CSOF ¶ 8**; **PSOF ¶ 16**. The Petition alleged that Jessica was unable to parent due to substance abuse, mental health issues, inability to make sound decisions, and a constant need of instruction from Brendi. *Id*. There were no allegations within the Petition that the home was in substandard condition or that it was dirty or otherwise in an unsafe condition. *Id*. Tafoya authored and

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

submitted a Report to the Juvenile Court for Preliminary Protective Hearing and/or Initial Dependency Hearing on 18 January 2017. **PSOF ¶ 17**. She recommended that Jessica demonstrate sobriety, participate in visitation, complete a psychological evaluation to determine her ability to parent, develop and maintain social/community connections and support, and participate in random urinalysis. *Id*. On 26 January 2017, Tafoya, the primary DCS investigator, transitioned the case to Paige Szymkowski as the DCS ongoing case manager. **PSOF ¶ 15**.

After Szymkowski took over the case, she submitted a referral for a psychological evaluation of Jessica with Dr. James Thal, a long-time contracted provider for DCS. **PSOF ¶¶ 20-21**. Significantly, ninety to ninety-five percent (90-95%) of Dr. Thal's practice are referrals from DCS. **PSOF ¶ 21**.

In Szymkowski's Assessment and Plan dated 2 October 2017, she falsely alleged that "[t]here are no known protective behaviors present with Jessica." **PSOF ¶ 22**. She simply echoed the anonymous tip, claiming "There is also a lack of ability to recognize safety threats, as the home was observed to be dirty, with food, dirty clothing, unused tampons as well as spiders all over the ground." *Id*. At the end of December 2017, Szymkowski was removed as the case manager. Defendant Claudia Hoff was assigned as the new DCS case manager on 3 January 2018. **PSOF ¶ 23**. Szymkowski's involvement should have ended, since she had relocated offices and was no longer actively working on this matter. *Id*.

On 18 July 2017, Dr. Thal conducted his first evaluation of Jessica. In his report, he opined that Jessica could be an effective co-parent and suggested that the maternal grandmother, Brendi, take the role as the primary parent. **CSOF ¶ 12-20**; **PSOF ¶ 24**.

Dr. Thal's first psychological evaluation of Brendi took place on 4 January 2018. **CSOF ¶ 32**; **PSOF ¶ 25**. Dr. Thal opined that Brendi was an appropriate caregiver for H.P, could meet his special needs, could provide at least minimally adequate care, and that H.P. would not be in danger if placed in her care. *Id*. He recommended that Brendi seek permanent guardianship of H.P. *Id*. That same day, Dr. Thal emailed Brendi's evaluation

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

5

to Szymkowski, who had rotated off the case by then. *Id.*; **PSOF ¶ 23**. On 24 January 2018, after reviewing Dr. Thal's favorable report, Szymkowski scheduled a call with Thal to discuss Brendi's report, as she, Hoff, and Breeding had agreed. **PSOF ¶ 26**.

By January 2018, Jessica had successfully completed required services and was on track for H.P.'s return until Szymkowski and Dr. Thal had their fateful conversation. **PSOF ¶¶ 27, 50**. On 29 January 2018, Dr. Thal sent a letter to Hoff explaining that "[i]n discussing this case with your predecessor, Paige Szymkowski, I would recommend further assessment regarding what is the best placement for H.P….Therefore, I would recommend that you seek a bonding/best interest evaluation of the child and the parties involved." **PSOF ¶ 27**. Although Szymkowski was no longer the case manager and her involvement on the case concluded in December 2017, she had an *ex parte* telephone call with Dr. Thal on 30 January 2018. **CSOF ¶ 35**; **PSOF ¶ 28**. During this call she expressed her personal, lay opinion that Dr. Thal should consider H.P.'s bond with his foster parents. *Id.* Szymkowski also stressed the allegedly substandard condition of the home, knowing that these issues did not exist and were unsubstantiated. *Id.* After this phone call, Dr. Thal profoundly altered his previous findings and recommendations. **PSOF ¶ 29**. Dr. Thal now opined that Brendi would not be able to provide minimally adequate parenting and added per Szymkowski, a recommendation for a bonding assessment. *Id.* Dr. Thal's improper alterations changed the trajectory of the case and led to the permanent termination of the parent-child relationship. However, neither Szymkowski nor Hoff had provided any new or additional information; all Thal received were Szymkowski's personal, biased opinions, which were contradicted by documentation he had already reviewed. **PSOF ¶ 30**. Dr Thal claims his conversation with Szymkowski made him view the information differently and led him to profoundly change his conclusions and recommendations. *Id.*

On 1 February 2018, Hoff emailed Thal and "suggested in lieu of a follow-up letter, that [Thal] could simply make [his] changes to [Brendi's] evaluation report because [Hoff] had not yet disclosed the report." **PSOF ¶ 31**. The next day, 2 February 2018, Hoff emailed Dr. Thal and expressed her personal, biased, lay opinion on Jessica's ability to parent.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

6

**PSOF ¶ 32**. Hoff stated "[w]hile Jessica has completed most of the services, she is so low functioning, I don't know that she could parent a child with special needs. Her mother...something was off there. I couldn't exactly put my finger on it." *Id*. She further stated that the home was clean and safe. *Id*. She told Dr. Thal that she would shred his original report. *Id*. Dr. Thal responded, "I didn't realize that the report had not been distributed as yet. That being the case, I will re-work the recommendations to include the bonding assessment," which Szymkowski had requested. **PSOF ¶ 33**. On 7 February 2018, Dr. Thal's office, contrary to applicable professional standards, instructed Hoff to "shred the other report." **PSOF ¶¶ 34, 50**.

Jessica dutifully continued with recommended services and on 28 February 2018, also successfully completed parent-aide services. **PSOF ¶ 35**. The parent-aide provider working closely with her specifically found that Jessica "has demonstrated that she is able to meet his [H.P.'s] basic needs" and recommended that a family reunification team be provided to reunify H.P. with his mother. *Id*. Since a family reunification team was contrary to DCS's preferred plan of termination of parental rights, Hoff, Breeding, and others at DCS did not arrange for reunification services. Instead, they requested a bonding assessment using the substantively altered recommendations of Dr. Thal's revised report as justification. **PSOF ¶ 36**.

On 6 March 2018, Hoff called Dr. Thal's office to inform him that his original unaltered report on Brendi had in fact been disclosed to all parties. **PSOF ¶ 37**. Hoff explained that "Paige [Szymkowski] asked you [Thal] to consider additional information and that you revised your report." *Id*. She also expressed that the Court wanted to know why Dr. Thal recommended a bonding/best interest evaluation in the altered report. *Id*. In response to this surprising phone call, Dr. Thal sent a letter dated 14 March 2018, explaining that he issued an altered report for his 4 January 2018 evaluation of Brendi based on his 30 January 2018 phone call with Szymkowski. **PSOF ¶ 38**. Dr. Thal explained that, Szymkowski had "expressed her concerns" over the alleged "substandard condition of grandmother's residence," and about H.P.'s alleged "very poor overall condition when

he came into care." **CSOF ¶¶ 34-38**; **PSOF ¶ 39**. He further explained that Szymkowski also expressed her personal view that H.P. was "bonded" with his foster family and that this was a "critically important relationship." **PSOF ¶ 40**. Dr. Thal reported that Szymkowski was "clearly concerned about the traumatic impact of removing [H.P.] from foster care." *Id*. No mention was made of the inevitable trauma H.P. experienced being removed from the loving care of his mother and grandmother at age two and a half on January 12, 2017. Szymkowski's personal views had no factual basis and were contrary to the written reports of the initial DCS investigators. **PSOF ¶ 41**. Injecting her personal opinions into the case was a violation of the DCS Oath of Loyalty to remain unbiased. *Id*.

As a result of this improper conduct, Dr. Thal altered his "CONCLUSIONS" and "RECOMMENDATIONS" for Brendi drastically in her disfavor, based solely on the unsolicited, misleading, false information provided by Szymkowski. **PSOF ¶ 42.** Dr. Thal made the following changes:

| Original, Unaltered Report | Altered Report |
|---|---|
| Dr. Thal recommended that H.P. be placed with this family, with Jessica and Brendi acting as co-parents | Dr. Thal had "alarming" concerns with H.P. being in Brendi's care |
| No health concerns noted for H.P. | Noted that H.P. was in "poor condition" and "grossly underdeveloped" when he came into care. |
| H.P.'s living conditions while in the home of Brendi are described in positive terms. | H.P.'s living conditions while in the home of Brendi are described as "deplorable living conditions." |
| No diagnosis for Brendi. | Brendi diagnosed with "[n]eglect by history." |
| No concern about Brendi's response to H.P.'s challenges expressed. | Expressed that Dr. Thal was "alarm[ed]" about Brendi's alleged lack of response to H.P.'s challenges. |
| Reached the expert conclusion that there "would not appear to be any risk" to H.P. under Brendi's care. | Reached the expert conclusion that "H.P. would be at risk for neglect and regression in his development if Brendi is not adequately attentive to her grandson's health and well-being." |

**PSOF ¶¶ 25, 27, 28, 29.**

Mills + Woods Law PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Importantly, the records reviewed by Dr. Thal are identical in both reports; he did not receive any new, objective information to justify the changes he made. **PSOF ¶¶ 43, 50.** Notably, the Comprehensive Child and Safety Risk Assessment (CSRA) was among the list of records Thal reviewed, which documented that the home was free of safety risks and H.P. was safe in his Mother's home. *Id*. Dr. Thal also changed the "Referral Agent" from Szymkowski to Hoff, which was not technically correct. *Id*.

Per Dr. Thal's recommendation, on 7 March 2018, Hoff referred H.P. and his foster parents to S. Bryce Bennett, PsyD. for the bonding/best interest assessment. CSOF ¶¶ 22-23; **PSOF ¶ 44.** Hoff made sure Thal's altered report was included in the collateral information provided. *Id*. Dr. Bennett's 18 June 2018 bonding assessment did not recommend returning H.P. to Brendi and Jessica's care. *Id*. Dr. Thal's altered report improperly influenced Dr. Bennett into believing that Brendi was not a viable co-parent. *Id*. This was a 180-degree shift from Dr. Thal's original report which supported H.P. being in the care of his mother with grandmother's assistance, as had been the case for the first two and half years of his life.

Hoff communicated, *ex parte*, with Dr. Bennett through email on 12 June 2018, 21 June 2018, and 20 September 2018. **PSOF ¶ 45.** During these communications, she opined that Jessica and Brendi were barely minimal parents, and that Bennett may be called to testify as she forecasted her intent to terminate Jessica's parental rights, and needed his evaluation soon as Dr. Thal did not want to see Brendi for a second psychological evaluation before reviewing Dr. Bennett's evaluation. *Id*.

Based on Dr. Thal's altered report, on 14 August 2018, Hoff facilitated DCS' Motion for Termination of Parent-Child Relationship on time-in-care grounds coupled with the claim that Jessica was unable to cure her intellectual disability and was thus unable to parent, despite the contrary recommendation of the parent-aide provider. **CSOF ¶ 10**; **PSOF ¶¶ 35, 46.** DCS anchored its claim on Dr. Thal's improperly altered report, "as Dr. Thal stated in his report, the mother is unable 'to be relied upon to independently learn, retain, and implement safe and effective parenting practices.'" *Id*. DCS also alleged that

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

foster care is the least-restrictive placement, falsely claiming "[t]he child is not placed with a grandparent…*because DCS is unaware of any such person who is willing, able and appropriate to care for the child*." (emphases added). ***Id***.

Hoff ensured that Dr. Thal conducted a second psychological evaluation of Jessica on 18 October 2018 using the compounded error of Dr. Bennet's assessment, which was itself improperly influenced by Dr. Thal's altered report on Brendi. **CSOF ¶¶ 12-22**; **PSOF ¶ 47**. In this second report on Jessica, Dr. Thal now opined, "[p]lacing [H.P.] in Ms. Ploof's sole and independent care would likely place the child at risk for inadvertent neglect, impaired decision-making, and significant under-stimulation of the child's already reportedly compromised learning abilities." *Id*. Dr. Thal further stated that the prognosis was poor that Jessica could demonstrate minimally adequate parenting in future. *Id*.  Dr. Thal also changed his recommendation from reunification to adoption by the foster parents. *Id*.

Because of DCS's reliance on Thal's faulty reports, Dr. Underwood was retained by Jessica to conduct a psychological evaluation of Jessica. **CSOF ¶¶ 24-25**; **PSOF ¶ 48.** Dr. Underwood opined that DCS should reinitiate the plan for Jessica to be the physical guardian of her son with a co-parenting model; H.P. should continue to receive individual behavioral health counseling to deal with the issues of being displaced by DCS removal; DCS should revive the Safety Plan; individual counseling should be provided for Jessica to help her work through the emotions related to displacement of her son; behavioral health counseling to assist with concerns around substance use; family interventions, vocation training; and random alcohol and drug screening to ensure compliance in this area. *Id*.

Szymkowski testified on 14 January 2019, Day 1 of the severance trial. When asked about data prior to being in placement if she provided it to Dr. Thal, she testified "[s]o when I had the phone conversation with him [Thal], I wasn't overseeing the case anymore. So I didn't have the file, so wouldn't have been able to send him those files to him anymore if they were in there." **CSOF ¶ 35**. She was also asked if her intent was for him to write a new report. She responded "[i]n the conversation that I had with him, *I know I had*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*mentioned that. . .*" **CSOF ¶ 36** (emphasis added)**.**  Realizing she just admitted to the collusion to write a new report, she caught herself, adding, "you know, he could probably just do an updated addendum." *Id.* She also testified under oath reiterating the false claims of substandard conditions of the home. **CSOF ¶62**. Hoff testified in the severance trial on Day 3, 16 January 2019, that she called Dr. Thal and, "I said to him I think that the previous worker doesn't necessarily agree and can you look at your report again, have some more contact with Paige [Szymkowski] because she doesn't believe it is accurate." **CSOF ¶ 62**. Hoff also stated, "H.P. was being medically neglected and his needs were not being met…no one was taking him to his medical appointments." *Id.*  No one at DCS requested H.P.'s medical records. *Id.* Hoff was asked why DCS did not allow Jessica visits with Brendi as a safety monitor, and testified, "when we came into the case we took custody of [H.P.], [Brendi] was living there. She didn't follow through with [H.P.'s] medical needs either. So I don't think the Department would ever be approving of a person who didn't follow through with the medical needs of placement." *Id.* She clearly indicated her intent to sever the parental rights early on. The Juvenile Court severed Plaintiff's parental rights on July 30, 2019, which was appealed. *Jessica P. v. Dep't of Child Safety, H.P.*, 249 Ariz. 461, 467–68, ¶¶ 17-22 (App. 2020), opinion vacated in part *Jessica P. v. DCS/H.P.*, CV-20-0241-PR, 2020 WL 8766053 (Ariz. Dec. 15, 2020). **CSOF ¶ 28**.

## III.    <u>STANDARD FOR REVIEW</u>

Rule 56 provides that a moving party is entitled to summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor." *Puentes v. City of San Mateo*, No. C 11-02511 SI, 2011 WL 4005383, at *2 (N.D. Cal. Sept 8, 2011), aff'd, 481 F. App'x 348 (9th Cir. 2012) (internal citations omitted). "Summary judgment will not lie if the dispute about a fact is 'genuine,' *i.e.*, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court must

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

11

inquire if "the evidence…is so one-sided that one party must prevail as a matter of law" and "should not act other than with caution in granting summary judgment." *Id.* at 242-43, 106 S.Ct. at 2507, 91 L.Ed. 2d 202.

In addition, the "[p]arty seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrette*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); Fed. R. Civ. P. 56(a). Furthermore, the Ninth Circuit has held that "[i]n order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court there is no genuine issue of material fact.  If a moving party fails to carry its ultimate burden of persuasion on the motion, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.32d 1099, 1102-03 (9th Cir. 2000) (internal citations omitted).

## IV.   **ARGUMENT**

The record supports that the alleged misconduct was not a one-time event but a mechanism that continued to operate in the court-facing evidentiary record: Szymkowski arranged and participated in an ex parte call after she was removed from the case, pressed "substandard home" and "bonded foster family" themes despite knowing the home allegations were unsubstantiated, and provided no new factual information. After the call, Dr. Thal altered his written conclusions and recommendations, and DCS then used the altered report to justify a bonding assessment rather than reunification steps. Hoff affirmatively proposed shredding the original report; Thal responded he would "re-work" recommendations; and Thal's office instructed "shred to other report." The altered evaluation and its downstream reliance (bonding assessment, later filings, and later

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

evaluations) are the continuing injury-producing effects that make summary judgment inappropriate.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

A.    **A Reasonable Jury Could Find that Dr. Thal Deprived Plaintiff of Her Civil Rights and Conspired to Do So**.

Defendant Thal alleges that there is no judicial deception claim so the conspiracy claim against him will fail and that there is no causation.

1. **Judicial Deception**

A fundamental right to familial relationship, this Court has recognized "a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021). "[D]eliberately fabricating evidence in civil child abuse proceedings violates the Due Process clause of the Fourteenth Amendment when a liberty or property interest is at stake...." *Costanich v. Dep't of Soc. and Health Servs.*, 627 F.3d 1101, 1108 (9th Cir. 2010). To successfully allege a violation of the constitutional right to be free from judicial deception, the plaintiff must allege, (1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision. *Benavidez*, 993 F.3d at 1147. Plaintiffs have adequately alleged all three elements.

State Defendants' misrepresentations and omissions are set forth above, including allegations that H.P.'s medical needs were not being met, the home was in a substandard condition, that H.P. was not receiving services, *ex parte* communications between State Defendants and Thal, the agreement to shred Thal's original report on Brendi, Thal's altered report contained false information supplied by Szymkowkis, then his altered report was relied upon by another forensic expert, the collusion/subterfuge, and even his testimony before the juvenile court was based upon the ex parte call.

Of course, "deliberateness" and "reckless disregard" are states of mind that can rarely be shown by direct evidence and may be shown by circumstantial evidence. *See,*

13

*e.g.*, *Shoen v. Shoen*, 48 F.3d 412, 417 (9th Cir. 1995) (under defamation law, noting that "actual malice may be shown by circumstantial evidence"); *Sifredo Salguero v. Sullivan*, No. CV 19-07414-CJC (AS), 2020 WL 3087401, at *15 (C.D. Cal. May 5, 2020) (*quoting People v. Bloom*, 48 Cal. 3d 1194, 1208 (1989) ("Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction"), report adopted, 2020 WL 3086232 (C.D. Cal. June 10, 2020)).

"The term 'deliberate fabrication' encompasses both statements that the official knew were false and those the official would have known were false had he not recklessly disregarded the truth." *Schindler v. Contra Costa County*., No. 21-CV-02984-JSW, 2023 WL 2414864, at *2 (N.D. Cal. Mar. 8, 2023) (citing *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018)). Regardless of the origination of the claims, Szymkowski and Hoff may be liable for repeating statements with "reckless disregard for the truth." *Keates*, 883 F.3d at 1240. Materiality exits if the judicial decision would have been affected by the absence of the false information. Benavidez, 993 F.3d at 1147. Without the false information provided to Thal, the ex parte phone call, Thal's altered report, the agreement to shred the original report, reliance on altered report by other expert the findings of the court would have been different.

## 2.  Genuine issues of material fact that joint action/conspiracy existed

Liability for conspiracy in a § 1983 action exists when there is an agreement to achieve the goal of violating a plaintiff's constitutional rights. *Crowe v. Cty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). "[S]substantial cooperation" between the private actor and the State must be shown. *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996). Thal becomes a state actor "by conspiring with a state officer or by engaging in a joint activity with state officials" and "by becoming so closely related to the State that the person's actions can be said to be those of the State itself." *Price v. State of Hawaii*, 939 F.2d 702, 708-09 (9th Cir. 1991), cert denied, 503 U.S. 938 (1992). Thal's activity must be

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

"inextricably intertwined" with those of the state. *Burnette v. Humane Soc'ty of Ventura Cnty*, 294 F.3d 1205, 1211 (9th Cir. 2020).

"Direct evidence of improper motive or an agreement by the parties to violate a plaintiff's constitutional rights will only be rarely available. Instead, it will almost always be necessary to infer such agreement from circumstantial evidence or the existence of joint action." *Mendocino Envtl. Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1302 (9th Cir. 1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989). To establish that the conspiracy was the cause of the plaintiff's injuries, "the requisite causal chain can occur through the 'setting in motion [of] a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir.1997) (*citing Johnson v. Duffy*, 588 F.2d 740 (9th Cir.1978)).

Evidence of an agreement to conspire here can be inferred by Thal's and State Defendants' actions when their acts would have been unlikely to occur without the agreement. *Id.*; *Kunik v. Racine County*, 946 F.2dd 1574, 1580-81 (7th Cir. 1991). Thus, not only can a conspiracy rest on circumstantial evidence, but the agreement need be spoken or tacit, it can be inferred from conduct. The law provides that circumstantial evidence, such as the actions of Thal and State Defendants here, can be used to show the requisite meeting of the minds for conspiracy in a §1983 matter. *Crowe*, 608 F.3d at 440. Furthermore, under *Kunik*, evidence of the agreement can be inferred from Thal's and State Defendants' actions when their conduct would have been unlikely to occur without the agreement or understanding. *Kunik*, 946 F.2d at 1580-81.

Further, "[w]hether defendants were involved in ***an unlawful conspiracy is generally a factual issue and should be resolved by the jury***, so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding to achieve the conspiracy's

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

objectives." *Mendocino Env't Ctr.*, 192 F.3d at 1301–02 (emphasis added). Finally, "[i]f sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy, with the requisite purpose and intent and under color of state law, then all defendants are liable for the acts of the particular defendant under the general principle of agency on which conspiracy is based." *Hoffman v. Halden*, 268 F.2d 280, 295–96 (9th Cir. 1959), overruled on other grounds by *Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962). "In other words, a conspiracy under section 1983 permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out." *Sanchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020).

Here, there are clear questions of fact as to whether the actions of Dr. Thal, as well as DCS Defendants Szymkowski and Hoff, show a conspiracy—a tacit agreement—to violate Jessica's rights (manipulation, concealment, ex parte influence). Questions of fact exist about whether (i) Dr. Thal's dramatic revisions were not based on new objective evidence; (ii) the revisions were triggered by improper ex parte influence; and (iii) the revisions materially altered the evidentiary posture of the dependency action. Coordination conduct—revision + shredding + strategic deployment—permits a reasonable inference of agreement—an issue for the jury. Conspiracy need not be formal. A tacit understanding suffices. Genuine issues of material facts exist as to whether Thal was conspiring or a joint actor with State Defendants in the deprivation of Plaintiff's constitutional rights.

### 3. Causation

Causation is a jury question because evidence of fabrication / manipulation rebuts any presumption of "independent judgment." Thal contends the juvenile court's severance ruling is a superseding cause that breaks causation. This is not the rule where the plaintiff offers evidence that the decisionmaker acted on a compromised evidentiary record. In *Caldwell v. City of Cnty of San Franscisco*, 889 F.3d 1105 (9th Cir. 2018), the Ninth Circuit held that potentially fabricated evidence in the decisionmaker's file can rebut the

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

presumption of independence and create a triable issue on causation—because a decision cannot be "independent" where the decisionmaker considers evidence without knowing it may be fundamentally compromised and misleading.

That principle applies with even more force here. Plaintiff's evidence is that the evaluation record itself was deliberately altered and that DCS personnel and Thal discussed suppressing the original report ("shred the other report"). Plaintiff further offers evidence that no new factual information was provided to Thal during the ex parte call that precipitated the alterations—only unsolicited opinions were offered, including "substandard home" themes that were known to be unsubstantiated. A reasonable jury could find that this extra-record influence caused Thal to alter his recommendations and that the altered report was then used to justify the bonding assessment and termination of parental rights trajectory. Even outside the Ninth Circuit, courts addressing causation in § 1983 fabrication contexts recognize the same rule: subsequent judicial decisions do not break causation where misconduct was instrumental, and it was reasonably foreseeable the tainted evidence would be used. See *Black v. West Virginia State Police*, 696 F.Supp.3d 236, 247-249 (S.D.W.V. 2023) (holding that genuine issue of material fact as to whether officers fabricated evidence against suspect precluded summary judgment in favor of officers on issue of whether officers violated suspect's Fourteenth Amendment rights under § 1983).

On this record, causation is not resolvable as a matter of law. Whether Thal's altered report—and the effort to suppress the original—foreseeably influenced the evidentiary stream relied upon by later evaluators and the juvenile court is a classic jury question. A severance order does not immunize extra-record manipulation of the evidentiary stream that led to the order; it makes the integrity of that stream more, not less, central.

### B.      Issue Preclusion Does Not Apply to this Case

Dr. Thal erroneously argues that Plaintiff is precluded from bringing her § 1983 claim as this issue of conspiracy was already adjudicated by the juvenile court and at the state court level when this Court remanded the state court claims to the superior court.

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Maricopa County Superior Court granted Thal's Motion for Summary Judgment on statute of limitations grounds for the negligence claim and no duty for her tort claim.[4] The final judgment of the juvenile court was severance of Plaintiff's parental rights. The final judgment in Maricopa County Superior Court was Thal did not owe a duty to Jessica to meet the standard of care in his profession. Plaintiff is not seeking to have this Court provide relief from the juvenile court or the superior court judgments. Rather, this lawsuit deals with the conduct of Thal and the DCS workers that led to violating Plaintiff's constitutional rights along the way to severance of her parental rights.

Issue Preclusion does not apply to issues presented in this lawsuit. For issue preclusion to apply, four conditions must be met: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F. 3d 1061, 1065 (9th Cir. 2019).

Thal cannot satisfy those elements. The dependency / severance proceedings decided statutory grounds, best interests, and services based on the record presented. They did not adjudicate, and could not have adjudicated, whether a DCS contractor and DCS personnel engaged in extra-record coordination to alter and suppress an evaluation report and then deploy the altered recommendations as an evidentiary lever. Those issues are not identical, were not litigated, and were not necessary to the state judgments.

## C.    *Rooker-Feldman* **Doctrine is not applicable**

The *Rooker-Feldman* doctrine does not apply. The Ninth Circuit adheres to the following general formulation of the doctrine: If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction. *Noel v.*

---

[4] The only state law claim that was remanded to Maricopa Superior Court was negligence-standard of care (Claim Ten).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

*Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). "Rooker-Feldman thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (emphasis in original); *see also Wright v. S. Ariz. Children's Advocacy Ctr.*, No. CV-21-00257-TUC-JGZ, *8 (D. Ariz. Sep. 30, 2022) (holding that *Rooker-Feldman* does not bar district court jurisdiction over claims that DCS violated the plaintiffs' constitutional rights in a dependency proceeding). "In assessing whether the Rooker-Feldman doctrine applies, the fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Normandeau v. City of Phoenix*, 516 F.Supp.2d 1054, 1063 (D. Ariz. 2005) (quoting *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). Rather than show how this action is a forbidden de facto appeal of a juvenile court and state court judgment, Thal incorrectly bypasses the initial required inquiry (i.e., whether the plaintiff is attacking a state court judgment), and jumps directly to the "inextricably intertwined" analysis.[5]

"[T]he 'inextricably intertwined' language 'is not a test to determine whether a claim is a de facto appeal, but is rather a second and distinct step in the Rooker-Feldman analysis. Should the action not contain a forbidden de facto appeal, the Rooker-Feldman inquiry ends." *Id.*; *see also Nat'l Ass'n for the Advancement of Multijurisdiction Practice v. Berch*, 973 F.Supp.2d 1082, 1095 (D. Ariz. 2013) ("The Ninth Circuit has explained that 'inextricably intertwined' simply means a plaintiff cannot assert legal error of a state court judgment in a district court.") (citing *Kougasian*, 359 F.3d at 1142-43). Plaintiff is not

---

[5] The *Rooker-Feldman* inquiry can be conducted in two steps: (1) does the federal action contain a forbidden de facto appeal of a state court decision, if so, (2) does the federal action contain issues that are "inextricably intertwined" with the state court judicial decision from which the forbidden de facto appeal is brought. *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (citing *Noel*, 341 F.3d at 1158); *Bianchi v. Rylaarsadm*, 334 F.3d 895, 898 (9th Cir. 2003). Even if a plaintiff seeks relief from a state court judgment, a suit constitutes a "forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court." *Id.* (emphasis in original); *see also Kougasian*, 359 F.3d at 1140.

asking the Court to overturn the severance judgment or state court judgments. Plaintiff asserts as the legal wrong the allegedly illegal acts of an adverse party—manipulation and concealment of evidence—and seeks damages for those acts. That is precisely the circumstances where *Rooker-Feldman* does not bar jurisdiction.

### D.    There is No Waiver

Thal argues Plaintiff waived her constitutional claims by not raising them in the juvenile court termination proceedings. Thal's waiver theory assumes Plaintiff knew of the misconduct and could litigate it in juvenile court. The record now includes coordination evidence uncovered through civil discovery here—emails and testimony regarding coordination, including the "shred" communications—that Plaintiff did not have in the severance proceeding. Plaintiff is not seeking to reverse severance; Plaintiff is seeking damages for Thal's constitutional misconduct, i.e. manipulation, concealment, ex parte influence, that gives rise to damages.

At a minimum, concealment defeats waiver as a matter of law and creates fact questions that preclude summary judgment.

### E.    Statute of Limitations

Thal's limitations argument collapses Plaintiff's claim into a single January-February 2018 event and ignores that federal law governs accrual.[6] A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury and its cause, *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008) (quotation omitted)—not when a defendant performs the first concealed step in the course of conduct that is used repeatedly as the case progresses. Here the actionable injury is not "a phone call" in isolation; it is the alleged extra-record manipulation and attempted suppression of an

---

[6] Thal relies on prior the state court statute of limitations ruling. He fails to acknowledge that the Ninth Circuit already reversed the dismissal of federal claims on limitations grounds and remanded for further proceedings. He also fails to inform the Court that the statute of limitations can be tolled under Arizona law due to disability.

MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

evaluator report, followed by its strategic deployment as an evidentiary input to justify further assessments and support termination of parental rights.

The record supports that key facts underlying Plaintiff's claims were not transparently disclosed in the dependency proceedings—facts that were not uncovered until discovery in this case. Hoff proposed shredding Thal's original report. Thal responded he would "re-work" his recommendations, and Thal's office then instructed Hoff to "shred the other report." Those facts bear directly on when Plaintiff reasonably could have discovered the alleged conspiracy and the mechanism by which it operated.

At minimum, accrual and timeliness present fact questions inappropriate for resolution on summary judgment. And to the extent Arizona tolling applies due to Plaintiff's intellectual disability, Plaintiff has identified disability-based tolling authority in Arizona. *See* A.R.S. § 12-502.

## V.    **CONCLUSION**

Summary judgment can be granted only if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Viewing the evidence most favorable to Plaintiff, a reasonable jury could conclude that Thal knowingly participated in coordinated conduct that materially altered a forensic evaluation and affected the evidentiary posture of the juvenile court proceedings. Because genuine disputes of material fact exist as to deception, agreement, intent, and causation, Thal's Motion for Summary Judgment should be denied.

**RESPECTFULLY SUBMITTED** this 13th day of March 2026.

**GILLESPIE, SHIELDS & TAYLOR**

By */s/ DeeAn Gillespie Strub*
    DeeAn Gillespie Strub
    Jenny D. Jansch
    7319 North 16th Street
    Phoenix, AZ 85020

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**MILLS + WOODS LAW PLLC**

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record

*/s/ DeeAn Gillespie Strub*