Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS &TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jesscia Ploof, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>State of Arizona, *et al.*,<br><br>    Defendants. | Case No.: 2:21-cv-00853-JJT-PHX<br><br>**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS IN SUPPORT OF HER RESPONSE IN OPPOSITION TO DCS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Hon. John J. Tuchi) |

    Pursuant to Ariz.R.Fed.P. 56(c) and LRCiv. 56.1(B), and through counsel undersigned, Plaintiff Jessica Ploof hereby responds to DCS Defendants' Statement of Facts in Support of Motion for Summary Judgment (Doc. 103). This response is comprised of Plaintiff's Controverting Statement of Facts in Support of her Response in Opposition to DCS Defendants' Motion for Summary Judgment ("PCSOF"), Plaintiff's Motion for Summary Judgment (Doc. 121) and Plaintiff's Statement of Facts in Support of Motion for

Summary Judgment ("PSOF")(Doc. 122)[1]. Items noted below as "[a]mitted" are undisputed solely for purposes of this response only.

1. Admitted that DCS received an anonymous tip. Disputed as to the allegations alleged by the anonymous caller as DCS has never disclosed the actual call to confirm what was actually reported and disputes implication that the report was substantiated. PSOF ¶ ---None of H.P.'s doctors, teachers, or family members saw anything amiss with H.P or the way Jessica cared for him. **PSOF ¶ 3, Ex. 4 at 2**.

2. Admitted that Plaintiff's resided with her mother Brendi Ploof and H.P. Plaintiff disputes any characterization that she was impaired to the degree suggested or that H.P. was unsafe. **PSOF ¶¶ 1-3, 5-9**. Jessica Ploof, intellectually disabled mother of H.P. born in April of 2014 so it is difficult for her to comprehend what was happening. **PSOF ¶ 1**.

3. Disputed as characterized. DCS received a second anonymous tip as alleged summary in the document; however, DCS has never disclosed the actual call to confirm or deny what was alleged. **PSOF ¶ 5, Ex. 4**. It was also alleged that the home was "dirty" and there is "food, dirty cloths, tampons [unused] and spiders all over the floor." **PSOF ¶ 5, Ex. 4 at 2**. However, the substandard condition of the home was unsubstantiated. **PSOF ¶¶ 5-9**. **Ex. A**, Tafoya Depo 81:13-83:25; 147:7-149:7.

4. Disputed. Brendi reported that H.P. was receiving DDD (Division of Developmental Disabilities) services including physical therapy, speech therapy, and attendance at a head start preschool. **PSOF ¶ 2, Ex. 3** at 46:19-48:8; 142:2-143:12. She never stated that they stopped services because he was doing well. **Ex. B**- Court Reporter's Record of Proceeding. Severance Trial, 24 May 2019, Brendi Ploof Testimony: 120:13-20,

---

[1] To the fullest extent possible, exhibit citations herein will be to exhibits already in the docket as part of Plaintiff's Motion for Summary Judgment (Doc. 121) and Plaintiff's Statement of Facts in Support of her Motion for Summary Judgment ("PSOF") (Doc. 122) and the exhibits attached thereto. If a citation to an exhibit that is not an exhibit to Doc. 122 or Doc. 114, if necessary that exhibit will be attached to this motion utilizing alphabet for numbering.

2

**Ex. C**-Transcript of the Proceedings, 3 June 2019, 40:24-41:9 **Ex. A**- Tafoya Depo at 104:17-105:10 (told about services but never followed up).  Mesa Police Department Mental Health Unit accompanied DCS due to Jessica's behaviors during her first interview and her statement of wanting to harm herself.   *See* **State Defendant's Ex. 1 at ST-PLOOF-001149**.

      5.     Admitted.

      6.     Admitted.

      7.     Disputed as characterized.  Defendant Tafoya allowed H.P. to remain in the home when she visited both times on 21 December 2016 and even with Jessica admitted that she had consumed alcohol that morning.  **PSOF ¶ 9, DSOF ¶ 2 and 5**. If the results were so concerning, why did Defendant Tafoya allowed HP to remain in the home for 22 days with Brendi as the safety monitor.  **PSOF ¶¶ 9, 12-14**.

      8.     Disputed as characterized.  This is the only test that Jessica was positive for methamphetamine and marijuana; she never tested positive for any substances, legal or illegal again.  **PSOF ¶19**, **Ex. 13**.

      9.     Disputed.  Misstates that she what she told Tafoya as denying she used methamphetamines.   **DSOF ¶ 9**, Ex. 1 at ST-PlOOF-001151.  Misstates Jessica's testimony.  **DSOF ¶ 9**, Ex. 3 at 58:4-64:19.

      10.    Admitted.

      11.    Disputed.  Brendi notified Defendant Tafoya that she was unexpectedly called into work and unable to complete that drug testing that day.  **PSOF ¶¶13 and 14**. Despite there being no significant change in circumstances and H.P. not being in imminent danger, Tafoya removed H.P with a temporary custody notice (TCN) instead of a court order or warrant.  *Id.* Jessica agreed to participate in services and successfully completed services required of her.  **DSOF ¶¶10, PSOF ¶¶ 1-3, 9-14, 19, 35, 48, and 49** .

      12.    Admitted that is what the TCN cited.  Disputed as to what was cited existed. **PSOF ¶¶ 1-3, 8-17, 19 and 35**.

13. Disputed as incomplete and misleading. Plaintiff agreed to participate and did participate in services. **PSOF ¶¶ 1-3, 9-14, 19, 35, 48, and 49. DSOF ¶ 10.**

14. Admitted a Dependency Petition was filed on 17 January 2017. Disputed as to the allegations as alleged. **PSOF ¶¶ 1-3, 9-14, 19, 35, 48, and 49. DSOF ¶ 10.**

15. Disputed in part. Based solely on the Dependency Petition, H.P. was made a temporary ward of the Court. See **DSOF Ex. 12**.

16. Disputed as to the allegations alleged in the report and DCS policy for summary hotline reports. **PSOF ¶¶ 1-3, 6-9, 12, 14, 16, 19, 35, and 48**. Admitted that there were no prior reports with this family.

17. Disputed in part. Counsel for Jessica and a Guardian ad Litem for HP were both appointed on 17 January 2017. **DSOF Ex. 12**.

18. Disputed. Jessica denied the allegations in the petition but submitted the issue of dependency to the Court for determination. **DSOF Ex. 14 at ST-PLOOF 003720**. The Court found that Jessica knowingly, intelligently and voluntarily waived her right to have a contested dependency hearing adjudication. *Id*. The Court based its findings solely on the Dependency Petition. *Id*. Plaintiff disputes any implication that this waived constitutional violations in the removal process. *Id*.

19. Admitted.

20. Disputed as characterized. H.P. was in distress from being removed. See **DSOF Ex. 16, Rapid Response at 2**. Child is involved in DDD services; receiving services through FPC Church and DDD for speech therapy and low muscle tone. *Id* at 4. Disputed developmental concerns were adequately reported in the court report. Compare **DSOF Ex. 16, Rapid Response at 2-4** with **DSOF Ex. 2 at ST-PLOOF-000821-822**.

21. Disputed. The findings were based upon the DCS Petition and DCS Court Report dated 18 January 2017 with allegations and/or information provided by DCS Defendants only, are hearsay, were not subject to cross-examination by Plaintiff. **DSOF Ex. 17.** The allegations submitted by DCS defendants were false, misleading, and/or incomplete. *Id.* Plaintiff is not seeking to relitigate the claims or issues decided by the

Juvenile Court, nor is she seeking in this action as her remedy for relief from Juvenile Court Preliminary Protective Conference Order dated January 20, 2017.

22. Admitted.

23. Disputed. She reported in the Rapid Response that the child has not calmed and his crying and distress has escalated. **See DSOF Ex. 6 at 2**. She also reported that she has two small children of her own that require her attention and just started a new job so unable to take time off of work which interferes with meeting [H.P.]'s needs. *Id*. at 2.

24. Admitted that DCS filed a motion with Juvenile Court. Disputed that the Addendum Report to Juvenile Court attached to the Motion is accurate, misstates that Heather is unable to care for H.P. due to his developmental needs. **PCSOF ¶ 23** above, **DSOF Ex. 6 at 2**.

25. Admitted that Sherry Walford was ruled out because of a DUI that occurred in 2015 with a .08 level. However, father in placement's home had a history of methamphetamine and crack cocaine use but that was not an issue to place H.P. with placement. **Ex. D.** Reporter's transcript of Proceedings, Day 3, January 16, 2019, Hoff testimony at 58:3-6.

26. Admitted that the Docket indicates the filing date of 26 August 2015. Disputed as the Court docket attached does not state specifically when the DUI occurred or what she plead to. **DSOF Ex. 19.** No further documentation was provided. *Id*.

27. Admitted the Court changed the physical custody of H.P to foster placement based solely on DCS Motion and the inaccurate Addendum Report to the Juvenile Court. **PCSOF ¶ 23** and **DSOF Ex. 6 at 2**.

28. Disputed. Misstates the testimony. See **DSOF -Exhibit 7**, 116:3-15 and 18-21. No Motions were attached. *Id*.

29. Admitted that H.P. was not enrolled into Kindergarten until fall of 2019, after the severance trial. Disputed as to what DCS is trying to imply as H.P. was only two and half years old years old at the time of removal and not old enough for Kindergarten. **PSOF ¶¶1, 16- Ex. 9**. H.P was enrolled in Head Start Special Needs Preschool and services

through Department of Developmental Disabilities (DDD), including physical therapy and speech therapy. **See Ex. E, Brendi Ploof Depo** at 55:1-59:16, **Ex. F**- ADES Individualized Family Service Plan dated June 27, 2016. **PSOF ¶ 2, Ex. 3** at 46:19-48:8, 142:2-143:12.

30. Disputed. Defendant's Thal's initial evaluation of Brendi occurred on 4 January 2018, opining that Brendi was an appropriate caregiver for H.P., could meet his special needs, could provide at least minimally adequate care, H.P. would not be in danger in her care, and recommended that she file for permanent guardianship. **PSOF ¶ 25, Ex. 24**. DCS's plan was for reunification until the ex-parte call between Szymkowski and Thal that changed the trajectory of the case to severance. **PSOF ¶¶ 26-47**.

31. Admitted. However, Plaintiff disputes that the testimony of Szymkowski, Hoff was accurate as follows:

Szymkowski's testimony at the severance trial, Day 1, on 14 January 2019, **Ex. G**:

- She testified "[w]hen the investigator went out to observe the home, it was observed to be in a very unkempt condition, unsafe for a child as young as [H.P.]. There was food to be observed all over. There was clothes piles everywhere. There was spiders all over and even unused tampons that were all over. *Id*. at 25:21-26:2.

- "While I had the case, we referred the maternal grandmother for a psychological evaluation but I wanted to have a conversation with Dr. Thal. And he sent the evaluation to me since I was the one who submitted the referral." *Id*. at 46: 8:18.

- when asked if her intent was for him to write a new report she responded "[i]n the conversation that I had with him, *I know I had mentioned that*. . ." *Id*. at 88:7-11(emphasis added). She then catches herself and states "you know, he could probably just do an updated addendum." *Id*.

Hoff's testimony in the severance trial, attached as **Ex. D**:

- that she called Dr. Thal and "I said to him I think that the previous worker doesn't necessarily agree and can you look at your report again, have some

6

- more contact with Paige [Szymkowski] because she doesn't believe its accurate. **Ex. D** at 49:1-19.
- "H.P. was being medically neglected and his needs were not being met. . . . no one was taking him to his medical appointments." *Id*. at 39:1-41:9.
- She also admits that the department did not request DDD or AzEIP information. *Id*. at 59:3-12.
- When asked why the Department did not allow visitations with her mother as a safety monitor she testified. . . when we came into the case and we took custody of [H.P.], [Brendi] was living there. She didn't follow through with [H.P.]'s medical needs either. So I don't think the Department would ever be approving of a person who didn't follow through with the medical needs of placement. *Id*. at 62:5-13.

32.  Admitted in part. Jessica completed all services requested by DCS for reunification. PSOF ¶¶ 10, 19, 48,

33.  Admitted.

34.  Admitted.

35.  Admitted.

36.  Admitted.

37.  Disputed. These findings were based on the false, misleading and inaccurate information provided by DCS and Defendants, Tafoya, Szymkowski and Hoff. [add info here]

38.  Disputed. H.P. was in the care of DCS after his removal on 12 January 2017. Any medical appointments or any medical or educational decisions were being made by DCS and the failure to do so between January 12-31, 2017 after he came in to care falls on DCS. **PSOF ¶ 14, DCSOF ¶ 38.**

39.  Admitted.

40.  Disputed. Szymkowski did authored and submitted three court reports but she also provided the following false information:

7

Assessment and Plan completed by Szymkowski on 2 October 2017:

- Under Observable Family Condition: . . "The home was also observed to be very dirty with food, dirty clothing, unused tampons and spiders all over the floor. DSOF Ex. 1 at ST-PLOOF-001146.
- She also alleged "[t]here are no know protective behaviors with Jessica. There is also a lack of ability to recognize safety threats, as the home was observed to be dirty, with food, dirty clothing unused tampons as well as spider all over the ground. *Id.* at ST-PLOOF 001161. **PSOF ¶22**.
- Szymkowski knew that the allegations about the home were unsubstantiated. Id., **Ex. 21** at 135:25-138:4.

Referral Packet Submitted to Thal, **PSOF ¶ 20, Ex. 17**.

- Szymkowski states that Jessica refused services,
- grandmother refused services,
- severe domestic violence within the home,
- H.P. severely speech delayed and having DDD services,
- H.P.s not having his needs met prior to placement.

Szymkowski's Testimony in the Severance Trial:

- She testified "[w]hen the investigator went out to observe the home, it was observed to be in a very unkempt condition, unsafe for a child as young as [H.P.]. There was food to be observed all over. There was clothes piles everywhere. There was spiders all over and even unused tampons that were all over. **Ex. G** at 25:21-26:2
- The maternal grandmother had indicated that [H.P.] was receiving DDD services but they had discontinued that because he was doing well. *Id*. at 33:13-17.
- She has firsthand knowledge of Brendi using a device while completing drug testing. *Id*. at 49:17-8; 51:10-21.

- DDD records she believes she requested them but was never provided them. *Id*. at 55:4-56:1, 56:24-57:19, 58:2-60:2.
- She is claiming that H.P. was severely neglected when he came into care. *Id*. at 60:11-13.
- Did not request Banner Records from H.P.'s pediatrician. *Id*. at 61:1-13.
- After her call with Dr. Thal, he did issue a different report. *Id*. at 62:6-8.
- Did not provide Dr. Thal with the DDD records. *Id*. at 72:3-14.
  - when she asked about data prior to be in placement if she provided it to Dr. Thal, Szymkowski testified "[s]o when I had that phone conversation with him [Thal], I wasn't overseeing the case anymore. So I didn't have the file. So wouldn't have been able to send those files to him anymore if they were in there." *Id*. at 72:3-22.
- When asked if her intent was for him to write a new report she responded "[i]n the conversation that I had with him, ***I know I had mentioned that. . .***" *Id*. at 88:7-11(emphasis added). She then catches herself and states "you know, he could probably just do an updated addendum." *Id*.

41. Admitted as to the documents attached. Disputed as she did report to the Court during her testimony that DDS services were discontinued due to him doing well. **PCSOF ¶ 40**, above, **Ex. F** at 33:13-17.

42. Admitted as to the documents attached as exhibits. Disputed as she testified in the severance hearing as to having firsthand knowledge of the devise Brendi allegedly used. **PCSOF ¶ 40**, above, **Ex. G** at 49:17-8; 51:10-21.

43. Admitted.

**44.** Disputed. See testimony to sever Plaintiff's rights as listed above in **PSCOF ¶ 40.**

45. Admitted.

46. Disputed. Szymowski was instrumental in changing the case plan from family reunification to severance when she had an ex-parte telephone call with Dr. Thal

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

9

providing her unsolicited opinions, alleged concerns with his report and false information regarding the substandard conditions of the home. **PSOF ¶¶ 26-30**. **PSCOF ¶ 40**, above. Dr. Thal's altered report was then provided to Dr. Bennett whose opinions relied heavily on cause the case to move to severance. **PSOF ¶¶ 44-45**

47. Disputed in part. Szymkowski was no longer the case manager when she had an ex parte telephone call with Dr. Thal. **PSOF ¶¶23, 26-30**.

48. Disputed. [add additional testimony]

49. Disputed. Szymkowski was no longer the case manager when she had an ex parte telephone call with Dr. Thal that changed the trajectory of the case and caused him to alter his report. **PSOF ¶¶23, 26-30**.

50. Admitted as what stated in the Court reports attached.

51. Disputed. Szymkowski was no longer the case manager when she had an ex parte telephone call with Dr. Thal that changed the trajectory of the case. **PSOF ¶¶23, 26-30**.

52. Admitted.

53. Disputed. Hoff reviewed selective DDD records and testified that the Department did not request the records. She also admits that the department did not request DDD or AzEIP information. **Ex. D** at 59:3-12.

54. Admitted.

55. Admitted.

**DATED** this 13th day of March 2026.

**GILLESPIE, SHIELDS & TAYLOR**

By <u>/s/ DeeAn Gillespie Strub</u>
DeeAn Gillespie Strub
Jenny D. Jansch
7319 North 16th Street
Phoenix, AZ 85020

**MILLS + WOODS LAW PLLC**

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
5055 North 12th Street, Suite 101
Phoenix, AZ 85014

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record

<u>    /s/ DeeAn Gillespie Strub    </u>

11