# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


Jessica Ploof, an individual,   )Case No.
                                )2:21-cv-00853-JJT-PHX
     Plaintiff,          )
                                )
    vs.                  )
                                )
State of Arizona, et al.,    )
                                )
     Defendants.         )
_____  )




DEPOSITION OF MEAGAN TAFOYA

May 30, 2025
10:12 a.m.
Phoenix, Arizona








Prepared by:            CARRIE REPORTING, LLC
JENNIFER HONN, RPR      Certified Reporters
Arizona CR No. 50885     2415 East Camelback Road
Carrie@carriereporting.com  Phoenix, Arizona 85016
                      (408) 429-7573

(CERTIFIED COPY)

Deposition of: Meagan Tafoya                                    May 30, 2025

2

1                        I N D E X

2    WITNESS                                           PAGE

3    MEAGAN TAFOYA

4          By Mr. Connelly                               4
           By Mr. Hunter                               151
5          By Ms. Rhodes                               152
           By Mr. Connelly                             162
6

7

8

9

10

11                   INDEX TO EXHIBITS

12   Description                                       PAGE

13   Exhibit 44  ADOA: Student Transcript - MEAGAN      13
                 TAFOYA (151428)
14               ST-PLOOF-005494-513

15   Exhibit 45  Personnel file                         37
                 ST-PLOOF-006717-6849
16

     Exhibit 46  TASC Toxicology                        156
17               12/21/16
                 ST-PLOOF-002607
18
19

20

21

22

23

24

25

3

1                    DEPOSITION OF MEAGAN TAFOYA

2

3            The deposition of MEAGAN TAFOYA, was taken on

4    May 30, 2025, commencing at 10:12 a.m., at the law

5    offices of GILLESPIE, SHIELDS, GOLDFARB, & TAYLOR, 7319

6    North 16th Street, Phoenix, Arizona, before JENNIFER

7    HONN, a Certified Reporter, Certificate No. 50885, for

8    the State of Arizona.

9                        *  *  *  *  *

10   APPEARANCES:

11   For Plaintiff:

12        MILLS + WOODS LAW PLLC
          Thomas A. Connelly, Esq.
13        5055 North 12th Street
          Suite 101
14        Phoenix, Arizona  85014
          Tconnelly@millsandwoods.com
15
     For the Defendant Thal:
16
          WEINBERG, WHEELER, HUDGINS, GUNN & DIAL, LLC
17        Jeffrey S. Hunter, Esq.
          One North Central Avenue
18        Suite 900
          Phoenix, Arizona  85004
19        Jhunter@wwhgd.com

20   For the Defendant State of Arizona:

21        OFFICE OF THE ARIZONA ATTORNEY GENERAL
          Julie Rhodes, Esq.
22        Deborah Garner, Esq.
          P.O. Box 6123-040A
23        Phoenix, Arizona  85005
          Julie.rhodes@azag.gov
24
     Also present:  Taylor Ross, Natalie Newell
25

4

```
1                    MEAGAN TAFOYA,

2   called as a witness herein, having been first duly sworn

3   by the Certified Reporter to speak the whole truth and

4   nothing but the truth, was examined and testified as

5   follows:

6

7                      EXAMINATION

8   BY MR. CONNELLY:

9       Q.   I know the court reporter already knows your

10  name, but it's sort of a convention we lawyers always

11  start with.

12           Will you please state your name and spell it for

13  the record.

14      A.   Meagan, M-e-a-g-a-n, Tafoya, T-a-f as in Frank,

15  -o-y-a.

16      Q.   Thank you.

17           And you're here today for a deposition in the

18  matter of Jessica Ploof.

19           You're familiar with that case --

20      A.   Yes.

21      Q.   -- you investigated a few years ago, that's

22  what -- mainly what we'll be talking about.

23           I don't intend to keep you here very long today.

24  Hopefully we can get through what little bit we -- what

25  little bit I want to get through with you today.  So I
```

Deposition of: Meagan Tafoya                                    May 30, 2025

81

```
 1    went back the second time?
 2         A.    I don't recall.
 3         Q.    You agree that in this second entry you don't
 4    make any observations about ███████ as far as the way he
 5    was dressed or the way he appeared other than he was
 6    observed without any injuries except for a scratch on his
 7    cheek; right?
 8         A.    Correct.
 9         Q.    So then we get down to Section F where you
10    interviewed both Jessica and Brendi during the course of
11    your two visits to the home; is that correct?
12         A.    Correct.
13         Q.    And when you're observing ███████ in the home and
14    when you're interviewing Jessica and Brendi in the home,
15    both times that you're out there, you're also observing
16    the condition of the home; is that fair?
17         A.    Yes.
18         Q.    And if you had noted anything about the
19    condition of the home that you felt was unsafe or
20    unsanitary, you would have noted it in your report;
21    right?
22         A.    Correct.
23         Q.    And if you had observed that the home was dirty,
24    you would have noted that in your report; right?
25         A.    Correct.
```

Deposition of: Meagan Tafoya                                    May 30, 2025

82

1     Q.   If you observed that there was food all over the

2   floor, you would have noted that in this section of the

3   CSRA; right?

4     A.   Correct.

5     Q.   If you noted that there were dirty clothes all

6   over the floor, you would have noted that in this section

7   of the report; right?

8     A.   Correct.

9     Q.   If you observed that there were tampons all over

10   the floor, you would have noted that in this section of

11   the report; right?

12     A.   Correct.

13     Q.   If you noted that there were spiders or any

14   other kind of insects all over the floor or just in the

15   home, you would have noted that in your report; right?

16     A.   Correct.

17     Q.   And so since none of that appears in your

18   description in your entries in Section B or Section F of

19   the CSRA, we can conclude that the condition -- the

20   allegations made by the caller on February 20 about the

21   conditions of the home were not confirmed when you were

22   out at the home investigating the allegations; right?

23               MS. RHODES:  Clarification.  I think you

24   just said "February."  I think you meant to say

25   "December."

Deposition of: Meagan Tafoya                                    May 30, 2025

83

```
 1                    MR. CONNELLY:  I did mean to say
 2      "December."
 3                    THE WITNESS:  Correct.
 4      BY MR. CONNELLY:
 5         Q.    So this allegation about the home is
 6      unsubstantiated based on your investigation; right?
 7         A.    Correct.
 8         Q.    And, in fact, there was nothing at all that was
 9      unsafe about the home when you were out there; right?
10         A.    Not that I recall.
11         Q.    There was nothing about the condition of the
12      home that you would describe it as substandard; right?
13         A.    Correct.
14         Q.    There was nothing about the condition of the
15      home that you would describe as deplorable; fair?
16         A.    Correct.
17         Q.    And I may have already asked it this way, but
18      there was nothing about the condition of the home that
19      you would describe as unsafe; right?
20         A.    Correct.
21         Q.    When you were out there investigating both
22      times, particularly, I guess, in relation to the first
23      hotline call, you were not able to substantiate that
24      Jessica had left ██████ home alone ever; is that right?
25         A.    Correct.
```

Deposition of: Meagan Tafoya                                    May 30, 2025

104

1   that is put into this assessment.

2        Q.    Okay.  So in and of itself it's really not a

3   risk factor, it's just an observation of yours?

4        A.    Not per se, yeah.

5        Q.    It's just an observation of yours that went into

6   your calculus and determination to put a safety plan in

7   place?

8        A.    I put the safety plan in place due to the

9   concerns for substance use.

10       Q.    Regarding Jessica?

11       A.    Correct.

12       Q.    So what's the purpose of saying here that there

13  is a concern that the maternal grandmother is parenting

14  █████   and not Jessica?

15       A.    It just would have been my observation, which is

16  normally what goes in that section.

17       Q.    You say in here that "█████ is receiving speech

18  therapy at FPC church."

19            And that's something that Brendi had told you

20  on -- when you investigated on the 21st of December;

21  right?

22       A.    Yes.  That she told the worker Baggin.

23       Q.    Okay.  And but you didn't follow up -- as part

24  of your investigation you didn't follow up with FPC

25  church to talk to them about that or get any records that

Deposition of: Meagan Tafoya                                    May 30, 2025

105

1  they might have or anything like that; right?

2      A.    No.

3      Q.    And you also say that he gets therapy for low

4  muscle tone.

5            Again, that was something that Brendi told you;

6  right?

7      A.    Correct.

8      Q.    And you didn't do anything to follow up on that

9  statement; right?

10     A.    Correct.

11     Q.    In the "Assessment of Impending Dangers" section

12 there, you talk about Jessica -- you say here, "█████ is

13 unable to protect himself or seek protection from others.

14 Jessica is under the influence of alcohol when she is

15 caring for █████."

16           You put that in there because you smelled

17 alcohol on her breath that day, and she told you that she

18 had drank some alcohol that was in the refrigerator;

19 right?

20     A.    Correct.  And she had a positive UA for alcohol

21 as well.

22     Q.    Well, the fact that she had a positive UA

23 doesn't tell you anything about when she was imbibing in

24 the alcohol; right?

25     A.    Well, based off of drug testing, it's very rare

Deposition of: Meagan Tafoya                                    May 30, 2025

147

1    Let me show you Exhibit 15.  If you'll look at the second

2    page of Exhibit 15, there's background information.

3           Do you see that?

4       A.    Uh-huh.

5       Q.    That's a "yes;" right?

6       A.    Yes.  Sorry.

7       Q.    The second paragraph the first sentence says,

8    "The condition of the home where ████████ was residing was

9    depicted as substandard."

10          Do you see that?

11      A.    Yes.

12      Q.    You never observed the condition of the home to

13   be substandard; right?

14      A.    No.

15      Q.    And you never documented anywhere that the

16   condition of the home was substandard; right?

17      A.    Just other than regurgitating what's in the

18   report, no.

19      Q.    And when you say regurgitating what's in your

20   report, you're talking about --

21      A.    The initial hotline call.

22      Q.    -- the allegations of the anonymous caller;

23   right?

24      A.    Correct.

25      Q.    And based on your investigation, those

Deposition of: Meagan Tafoya                                    May 30, 2025

148

1    allegations were unsubstantiated; right?

2        A.    Correct.

3        Q.    And are you aware of anyplace else in the DCS

4    records where the condition of the home is based on any

5    kind of DCS investigation identified as being

6    substandard?

7        A.    I wouldn't know after my end date, so no.

8        Q.    Let me show you Exhibit 30.  And I'll ask you to

9    look at, again, the second page.

10           And, again, it's the second paragraph, couple

11   sentences in, it says, "The mother's residence was

12   described as substandard."

13           Do you see that?

14       A.    Yes.

15       Q.    And just, again, your investigation of the

16   allegations about the condition of the home determined

17   that those allegations were not substantiated; right?

18       A.    Correct.

19       Q.    In your three visits to the home, you never

20   observed the condition of the home to be one that was

21   unsafe for ██████; right?

22               MS. RHODES:  Form.  Foundation.

23               THE WITNESS:  Correct.

24               MR. HUNTER:  Join.

25   //

Deposition of: Meagan Tafoya                                    May 30, 2025

149

BY MR. CONNELLY:

   Q.   It was never a condition that you would describe
as substandard; right?

             MS. RHODES:  Form.  Foundation.

             THE WITNESS:  It's -- it wouldn't have
caused a safety concern for me to remove ███████ from the
home.

BY MR. CONNELLY:

   Q.   Okay.  And so what happened in this case -- what
I've given you there, Exhibit 30, that's the second
version of a report prepared by Dr. Thal who's a
psychologist engaged to perform a psychological
evaluation of Brendi Ploof in this case in the case of
this report.

       This is the version that he submitted to Claudia
Hoff after he had already submitted a first version, the
signed version of the report, to Paige Szymkowski.

       Ms. Szymkowski then called Dr. Thal after
receiving the report and had a conversation with him
about his report.  He then changed his report.  Okay?

       He then wrote a letter about what Ms. Szymkowski
told him when they had a telephone conversation and why
he -- what information he received from her that caused
him to change his report.  Okay?

       That's Exhibit 35.  And in the first paragraph

167

1   STATE OF ARIZONA   ) SS.
                       )
2   COUNTY OF MARICOPA )

3          BE IT KNOWN that the foregoing proceedings were
    taken by me, JENNIFER HONN, a Certified Reporter, in and
4   for the County of Maricopa, State of Arizona; that the
    witness before testifying was duly sworn to testify to
5   the whole truth; that the question propounded to the
    witness and the answers of the witness thereto were taken
6   down by me in shorthand and thereafter reduced to
    typewriting under my direction; that the witness will
7   read and sign said deposition; that the foregoing pages
    are a true and correct transcript of all proceedings had,
8   all done to the best of my skill and ability.

           I FURTHER CERTIFY that I am in no way related to
9   any of the parties hereto nor am I in any way interested
    in the outcome hereof.

10         I FURTHER CERTIFY than I have complied with the
    ethical obligations set forth in ACJA 7-206(F)(3) and
11  ACJA 7-206 J(1)(g)(1) and (2).

12

    Jennifer Honn                         50885
13  _____              _____
    Certified Reporter                    AZ CR Number
14
15                                        06/11/2025
    _____              _____
16  Certified Reporter                    Date
    (Signature)

17                          * * *

18
           I CERTIFY that this Registered Reporting Firm
19  has complied with the ethical obligations set forth in
    ACJA 7-206 (J)(1)(g)(1) through (6).

20
    Carrie Reporting, LLC                 R1064
21  _____              _____
    Registered Reporting Firm             RRF Number
22

23
    _____              __6/12/25_____
24  Registered Reporting Firm             Date
    (Signature)

25