Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**Mills + Woods Law, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**Gillespie, Shields &Taylor**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Jesscia Ploof, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>State of Arizona, *et al.*,<br><br>　　　　　　Defendants. | Case No.: 2:21-cv-00853-JJT-PHX<br><br>**PLAINTIFF'S CONTROVERTING STATEMENT OF FACTS IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANT JAMES THAL'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Hon. John J. Tuchi) |

Pursuant to Ariz.R.Fed.P. 56(c) and LRCiv. 56.1(B), and through counsel undersigned, Plaintiff Jessica Ploof hereby responds to *Defendant James Thal's Statement of Facts in Support of His Motion for Summary Judgment* (Doc. 114). This response is compromised of Plaintiff's Controverting Statement of Facts in Support of her Response

in Opposition to Defendant James Thal's Motion For Summary Judgment ("PCSOF")[1], Plaintiff's Motion for Summary Judgment (Doc. 121) and Plaintiff's Statement of Facts in Support of her Motion for Summary Judgment ("PSOF")(Doc. 122).  Items noted below as "[a]dmitted" are undisputed solely for purposes of this response only.

1.     Disputed.  Plaintiff has alleged that Defendant Thal, a willful participant with Defendants Szymkowski and Hoff, conspired, jointly acted and shared a common objective to move the case from reunification to severance.   See **PSOF ¶¶ 20-22, and 26-46**.

2.     Admitted that Plaintiff has a intellectual disability that she struggled with her entire life. **PSOF ¶ 1**.

3.     Admitted.

4.     Admitted.

5.     Disputed in part.  Plaintiff and H.P. resided with Brendi Ploof at the time the two anonymous reports were made against Jessica on 20 December 2016.   **PSOF ¶ 5, Ex. 4**.

6.     Disputed in part.  Admitted that the removal occurred.  Plaintiff disputes the implication that the removal was justified.  H.P. remained at home in the care of Jessica and Brendi for 22 days, until removal on 12 January 2017, when, despite there being no significant change in circumstances and H.P. not being in imminent danger, DCS through Defendant Tafoya decided to remove H.P. from his mother with a temporary custody notice (TCN) instead of a court order.  **PSOF ¶ 14, Exs. 5 and 7**.

7.     Admitted.

---

[1] To the fullest extent possible, exhibit citations herein will be to exhibits already in the docket as part of Plaintiff's Motion for Summary Judgment (Doc. 121) and Plaintiff's Statement of Facts in Support of her Motion for Summary Judgment ("PSOF") (Doc. 122) and the exhibits attached thereto.  If a citation to an exhibit that is not an exhibit to Doc. 122 or Doc. 114, if necessary that exhibit will be attached to this motion utilizing the ____ for numbering.

8. Disputed in part. After the removal, on 17 January 2017, DCS filed the Dependency Petition and then later filed an Amended Dependency Petition. **PSOF ¶ 16, Exs. 9 and 10.**

9. Disputed in part. The Dependency proceeded before the Juvenile Court of Maricopa County Superior Court. **PSOF ¶ 16, Exs. 10 and 11**.

10. Disputed in part. Admitted that a Severance Petition was filed. Plaintiff disputes that the filing was untainted by the altered report of Dr. Thal. **PSOF ¶ 46, Ex. 40**. DCS anchored its position for termination of parental rights on Dr. Thal's altered assessment of Brendi Ploof. *Id.*

11. Admitted.

12 & 13. Admitted.

14. Admitted that Dr. Thal determined that Plaintiff's IQ is 65, placing her in the intellectually disabled range. Disputed that his determinations are valid.

15. Admitted that Dr. Thal made the statement. Disputed that his opinions are valid and not biased. **PSOF ¶¶**

16. Admitted that Dr Thal had those beliefs. Disputed that Jessica would be unlikely to achieve a minimally adequate parenting level and had done so prior to DCS involvement with the help of her mother, Brendi Ploof. **PSOF ¶¶ 1-3, 35, 48, and 49**.

17. Admitted that is what Thal's report opined. However, he also opined that Jessica could be an effective co-parent and suggested that Brendi take the role as primary parent. **PSOF ¶ 24**, Ex. 22 at 11; Ex. 19 at 169:10-19.

18. Disputed that the prognosis for demonstrating minimally adequate parenting skills in foreseeable future was poor. **PSOF ¶¶ 35, 48 and 49**. Dr. Thal never saw Jessica or Brendi Ploof with H.P. and had no eyes on their dynamics or relationship with H.P., his opinions are based upon what was provided by DCS and his ex-parte call with Defendant Szymkowski. Ex. ___ (deposition testimony add here).

19. Admitted. See also **PSOF ¶¶ 24, 35, 48, and 49**.

20. Disputed. Thal's recommendations changed from reunification to adoption by the foster parent. Now relying partly on Dr. Bennet's report, Thal opined that "[p]lacing [H.P.] in Ms. Ploof's sole and independent care would likely place the child at risk for inadvertent neglect, impaired decision-making, and significant under-stimulation of the child's already reportedly compromised learning abilities. **PSOF ¶ 47, Ex. 41**.

21 & 22. Disputed in part. Dr. Bennett relying on Thal's altered report on Brendi, Bennett recommended against returning H.P. to Brendi and Jessica's care. **PSOF ¶ 44**. Thal's profoundly altered report improperly influenced Dr. Bennett into believing that Brendi was not a viable co-parent. *Id.*

23. Disputed. Dr. Bennett relied upon the false information provided by Defendant Szymkowski and Tafoya that Jessica and Brendi stopped DDD services. PSOF¶¶

24. Admitted.

25. Disputed. Dr. Underwood opined that DCS reinitiate the plan for Jessica to have custody of her son with a co-parenting model. **PSOF ¶49, Ex. 43**.

26. Admitted.

27. Admitted.

28. Disputed in part. The Juvenile Court served Plaintiff's parental rights on 30 July 2019, which was appealed. *Jessica P. v. Dep't of Child Safety, H.P.*, 249 Ariz. 461, 467–68, ¶¶ 17-22 (App. 2020), opinion vacated in part *Jessica P. v. DCS/H.P.*, CV-20-0241-PR, 2020 WL 8766053 (Ariz. Dec. 15, 2020).

29. Admitted.

30. Admitted.

31. Admitted.

32. Admitted. **PSOF ¶ 25**. He also recommended that Brendi file for permanent guardianship of H.P. *Id.*

33. Admitted in part. Dr. Thal sent his signed report to Szymkowski on 18 January 2018. **PSOF ¶ 25, Ex. 24**. However, Szymkowski was no longer the ongoing case manager. **PSOF ¶ 23**.

34. Disputed. Szymkowski was no longer assigned as the case manager and her involvement on the case ended at the end of December 2017. **PSOF ¶ 23**. Szymkowski had an ex-parte phone call with Dr. Thal on 30 January 2018 expressing her lay opinion that H.P. is now bonded with his foster parents, stressed concerns of the substandard conditions of the home, knowing that these issues did not exist and were unsubstantiated, and no new factual information was given to Dr. Thal. **PSOF ¶¶ 26-34, 37, and 39-43.**

35. Disputed. No new information was provided to Dr. Thal and Szymkowski only provided her position and false allegations about the home so that Thal would change his report. **PSOF ¶¶ 23**, **26-34, and 37-43.** Szymkowski testified on 14 January 2019, Day 1 of the Severance Trial and when she asked about data prior to be in placement if she provided it to Dr. Thal, Szymkowski testified "[s]o when I had that phone conversation with him [Thal], I wasn't overseeing the case anymore. So I didn't have the file. So wouldn't have been able to send those files to him anymore if they were in there." **Ex. 1**, Reporter's Transcript of Proceedings, Severance Trial Day 1 at 72:3-22.

36. Disputed. In the Severance Trial, Defendant Szymkowski testified when asked if her intent was for him to write a new report she responded "[i]n the conversation that I had with him, *I know I had mentioned that*. . ." *Id*. at 88:7-11(emphasis added). She then catches herself and states "you know, he could probably just do an updated addendum." *Id*.

37. Disputed in part. Admitted She only had one conversation with Thal but disputed that they did not enter an agreement to deprive Plaintiff of her constitutional rights. *Id*., **PSOF ¶¶ 26-34, 37, and 39-43**

38. Disputed. *Id.* **Ex. 1** at 88:7-11.

5

39. Disputed. No new information was provided to Dr. Thal and Szymkowski only provided her position and false allegations about the home so that Thal would change his report in favor of placement and against Brendi. **PSOF ¶¶ 23**, **26-34, and 37-43.**

40. Disputed. The information that Dr. Thal needed was provided by Szymkowski prior his evaluation and then Szymkowski's unsolicited biased opinions in the ex-parte call. **PSOF ¶¶ 20, 23, 26-34, and 37-43.**

41. Disputed. *Id.*

42. Disputed. **PSOF ¶¶ 26, 29-34, 36, and 38-46.**

43. Disputed. PSOF ¶¶ 36-46. Thal informed Dr. Bennett that the intent was to terminate Jessica's parental rights. **PSOF ¶ 45**.

44. Admitted.

45. Disputed. He now opined that Brendi would not be able to provide minimally adequate parenting and added a new recommendation for bonding assessments. **PSOF ¶¶ 25-34**.

46. Disputed in part. He made this recommendation after the ex-parte call with Defendant Szymkowski. *Id*.

47. Disputed. He now opined that Brendi would not be able to provide minimally adequate parenting and added a new recommendation for bonding assessments. **PSOF ¶¶ 25-34**.

48. Disputed. Thal altered his report after ex-parte communication. **PSOF ¶¶ 26-34, 37-43**. There is conflicting testimony as to why he issued a new report. In the Severance Trial, Defendant Szymkowski testified when asked if her intent was for him to write a new report she responded "[i]n the conversation that I had with him, ***I know I had mentioned that***. . ." **Ex. 1** at 88:7-11(emphasis added). She then catches herself and states "you know, he could probably just do an updated addendum." *Id*.

49. Admitted.

50. Admitted.

51. Admitted.

6

52. Admitted.

53. Disputed. Thal submitted the letter after the Juvenile Court found out about the altered report. **PSOF ¶¶ 26-34**. The statement is self-serving to avoid the request to change his report and is ultimately a jury question. *Id*.

54. Admitted.

55. Disputed. Thal asked that his original report be shredded since he was told it was disclosed and to cover up the fact that it existed. **PSOF ¶¶ 27-34, 37-43**.

56. Disputed in part. Fails to identify pertinent testimony.

57. Admitted.

58. Admitted.

59. Disputed in part. Hoff provided Dr. Bennett with Dr. Thal's altered report on Brendi as collateral information. **PSOF ¶ 44, Ex. 35**. Dr. Thal's profoundly altered report improperly influenced Dr. Bennett into believing that Brendi was not a viable co-parent. *Id*.

60. Admitted.

61. Disputed. Plaintiff's expert psychiatrist, Dr. Andrew Clark, disagrees and stated Dr. Thal's methodology was substantially below the standard of care" "quite deficient" for one acting in the role of a forensic evaluator . **PSOF ¶ 50, Ex. 44 and 45**.

62. Disputed. Szymkowski's and Hoff severance testimony and deposition testimony are inconsistent and changes. For example, *See* testimony of Szymkowski in the severance trial. **Ex. 1**-at 88:7-11.

- She testified "[w]hen the investigator went out to observe the home, it was observed to be in a very unkempt condition, unsafe for a child as young as [H.P.]. There was food to be observed all over. There was clothes piles everywhere. There was spiders all over and even unused tampons that were all over. *Id.* at 25:21-26:2.

- The maternal grandmother had indicated that [H.P.] was receiving DDD services but they had discontinued that because he was doing well. *Id*. at 33:13-17.
- "While I had the case, we referred the maternal grandmother for a psychological evaluation but I wanted to have a conversation with Dr. Thal. And he sent the evaluation to me since I was the one who submitted the referral." *Id*. at 46: 8:18.
- when asked if her intent was for him to write a new report she responded "[i]n the conversation that I had with him, ***I know I had mentioned that*.** . ." *Id.* at 88:7-11(emphasis added).   She then catches herself and states "you know, he could probably just do an updated addendum." *Id.*
- DDD records she believes she requested them but was never provided them. *Id*. at 55:4-56:1, 56:24-57:19, 58:2-60:2.
- She is claiming that H.P. was severely neglected when he came into care. *Id*. at 60:11-13.
- Did not request Banner Records from H.P.'s pediatrician. *Id*. at 61:1-13.
- After her call with Dr. Thal, he did issue a different report. *Id*. at 62:6-8.
- Did not provide Dr. Thal with the DDD records. *Id*. at 72:3-14.
  - when she asked about data prior to be in placement if she provided it to Dr. Thal, Szymkowski testified "[s]o when I had that phone conversation with him [Thal], I wasn't overseeing the case anymore. So I didn't have the file.  So wouldn't have been able to send those files to him anymore if they were in there." *Id.* at 72:3-22.

Examples of Claudia Hoff testimony on 16 January 2019, Day 3 of the Severance Trial:

- that she called Dr. Thal and "I said to him I think that the previous worker doesn't necessarily agree and can you look at your report again, have some

more contact with Paige [Szymkowski] because she doesn't believe its accurate.  **Ex. 2** at 48:24-4919.

- "H.P. was being medically neglected and his needs were not being met. . . . no one was taking him to his medical appointments." *Id*. at 39:1-41:9.

- She also admits that the department did not request DDD or AzEIP information. *Id*. at 59:3-12.

- When asked why the Department did not allow visitations with her mother as a safety monitor she testified. . . when we came into the case and we took custody of [H.P.], [Brendi] was living there. She didn't follow through with [H.P.]'s medical needs either. So I don't think the Department would ever be approving of a person who didn't follow through with the medical needs of placement. *Id*. at 62:5-13.

63. Disputed. The case plan was reunification but they were maneuvering to sever Jessica's parental rights. **PSOF ¶¶ 27-34, 36-43.**

64. Admitted.

**DATED** this 16th day of March 2026.

>                                **GILLESPIE, SHIELDS & TAYLOR**
>
> By   */s/ DeeAn Gillespie Strub*
>        DeeAn Gillespie Strub
>        Jenny D. Jansch
>        7319 North 16th Street
>        Phoenix, AZ 85020
>
>        **MILLS + WOODS LAW PLLC**
>        Thomas A. Connelly
>        Robert T. Mills
>        Sean A. Woods
>        5055 North 12th Street, Suite 101
>        Phoenix, AZ 85014
>
>        *Attorneys for Plaintiffs*

9

**CERTIFICATE OF SERVICE**

I hereby certify that on March 16, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record

　　　*/s/ DeeAn Gillespie Strub*