# EXHIBIT E

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


Jessica Ploof, an individual,   )
                                     )
        Plaintiff,        )
                                     )  No.
    vs.                     )  CV-21-00853-PHX-JJT
                                     )
State of Arizona, a government  )
entity; et al.,                 )
                                   )
        Defendants.      )
_____)


DEPOSITION OF BRENDI PLOOF


Phoenix, Arizona
October 31, 2024


Prepared by:

Jody L. Lenschow, RMR, CRR
Certified Court Reporter
Certification No. 50192



Page 3

```
 1                  DEPOSITION OF BRENDI PLOOF

 2   was taken on October 31, 2024, commencing at 9:46 a.m.,

 3   at the offices of Gillespie, Shields & Taylor, 7319 N.

 4   16th Street, Phoenix, Arizona, before Jody L. Lenschow,

 5   RMR, CRR, Certified Reporter No. 50192 for the State of

 6   Arizona.

 7

 8                       *    *    *

 9   APPEARANCES:

10        For the Plaintiff:
               MILLS + WOODS LAW, P.L.L.C.
11             By:  Mr. Thomas A. Connelly
                    5055 N. 12th Street
12                  Suite 101
                    Phoenix, Arizona  85014
13                  480-999-4556
                    tconnelly@millsandwoods.com
14

15        For the Defendant Thal:
               WEINBERG WHEELER HUDGINS GUNN & DIAL, LLC
16             By:  Mr. Jeffrey S. Hunter
                    One N. Central Avenue
17                  Suite 900
                    Phoenix, Arizona  85004-4417
18                  602-307-9900
                    jhunter@wwhgd.com
19

20        For the State Defendants:
               OFFICE OF THE ARIZONA ATTORNEY GENERAL
21             By:  Ms. Julie Rhodes
                    2005 N. Central Avenue
22                  Phoenix, Arizona  85004
                    602-542-5025
23                  julie.rhodes@azag.gov

24

25
```



Page 55

1    Q.    And then any of the handwriting under Early

2  Intervention Service where it says Speech, Physical

3  Therapy, Number of Sessions, and Dates, is that any of

4  your handwriting in those boxes?

5    A.    This is not.  Just this at the bottom.

6    Q.    Okay.  The "I had ████ originally enrolled in

7  DDD services in my home," is that in your handwriting?

8    A.    Yes, and then this.

9    Q.    Underneath that it says, "He was receiving

10  speech, OT and physical therapy."  Is that your

11  handwriting?

12    A.    Yes.  This is all my handwriting.

13    Q.    And then underneath that it says, "Also I

14  enrolled him into a special needs Dev 1 school."

15    A.    It's a Head Start special needs developmental

16  preschool.

17    Q.    Is that in your handwriting?

18    A.    Yes, that's in my handwriting.

19    Q.    We'll mark this as Exhibit 2.

20          (Deposition Exhibit 2 was marked for

21  identification.)

22  BY MR. HUNTER:

23    Q.    Staying with Exhibit 2, which is -- you got

24  that document in front of you, right?

25    A.    Yes, sir.



Page 56

1    Q.    Okay.  You wrote in your handwriting "I had

2    ███████ originally enrolled in DDD services in my home,"

3    correct?

4    A.    Uh-huh.

5    Q.    Yes?

6    A.    Uh-huh.  Yes.

7    Q.    Okay.  You are the one that got ███████ enrolled

8    in DDD services, correct?

9    A.    Jessica and I, yeah.  Yeah.

10    Q.    Well, who did it?  Did you do it or did Jessica

11    do it?

12              MR. CONNELLY:  Form and foundation.

13              Go ahead.

14              THE WITNESS:  I did the initial call to

15    get him services.

16    BY MR. HUNTER:

17    Q.    Okay.  And are you the one that determined that

18    ████████ needed DDD services?

19              MR. CONNELLY:  Form and foundation.

20              THE WITNESS:  No, that was his pediatric,

21    Jere O'Brien, determined that because of the low muscle

22    tone and floppy...

23    BY MR. HUNTER:

24    Q.    Okay.  So Dr. O'Brien told you --

25    A.    Jere O'Brien, yes.



Page 57

```
 1      Q.    Dr. O'Brien told you.  Then you called DDD

 2   to --

 3      A.    Set it up.

 4      Q.    -- initiate the services?

 5      A.    Yes.

 6      Q.    Okay.  You wrote "He was receiving speech, OT

 7   and physical therapy."  Was the speech therapy part of

 8   the DDD services or separate?

 9      A.    They were part of the services.  He had

10   occupational and physical therapy.  Then his speech was

11   added later because of excessive drooling and him not

12   articulating his words.

13      Q.    But that was through DDD?

14      A.    That was through DDD, yes, sir.

15      Q.    Okay.  Thank you.

16            And then you wrote "I enrolled him into a

17   special needs --"

18      A.    It's a Head Start special needs preschool.

19      Q.    Okay.  And are you the one that enrolled him in

20   Head Start?

21            MR. CONNELLY:  Form and foundation.

22            THE WITNESS:  Yes.

23   BY MR. HUNTER:

24      Q.    And how did you determine that special needs

25   such as Head Start would be good for him?
```



Page 58

1      A.     It was recommended to me for ███ to have

2    those services.

3      Q.     And who made that recommendation?

4      A.     Well, his pediatrician is the one that

5    originally said to get him in there because of him being

6    floppy and, you know, that that would give him a head

7    start, you know, and give him skills for like

8    kindergarten and getting him ready and helping him reach

9    his potential.

10     Q.     By pediatrician, you mean O'Brien?

11     A.     Jere O'Brien.

12     Q.     Okay.  Thank you.

13            Ma'am, let's go to the next document, which at

14   the top it says Individualized Family Service Plan,

15   dated October 1, 2015.  It's got some handwriting on the

16   top right that says "Proof he was receiving DDD

17   services."

18            Okay, do you have that document in front of

19   you?

20     A.     Yes.

21     Q.     Okay.  And the whole thing is handwritten, but

22   let me ask you this.  The handwriting that says, quote,

23   Proof was receiving DDD services --

24     A.     In home.

25     Q.     -- in home, is that your handwriting?



Page 59

1     A.     Yes.

2     Q.     Okay.  And then there's some handwriting that

3  says "Also --"

4     A.     "Refers to Jessica learning sign language for

5  communication with ▇▇▇▇▇▇▇▇."

6     Q.     Is that your handwriting?

7     A.     Yes, and then the one at the bottom.

8     Q.     Read it.

9     A.     Because of the divorce and moving around these

10  services were originally in the home, but then changed

11  to his school.  They gave him services at his school.

12     Q.     Okay.  And that's your handwriting, correct?

13     A.     Yes.

14     Q.     The rest of the handwriting on this document is

15  someone else's handwriting?

16     A.     Correct.

17     Q.     Thank you.  And that will be Exhibit 3.

18             (Deposition Exhibit 3 was marked for

19  identification.)

20             THE WITNESS:  These are just one of many

21  services that, you know, of meetings that we were

22  working on with him.

23  BY MR. HUNTER:

24     Q.     The next document I have, at the top on the

25  left it says "Member's Name, ▇▇▇▇▇▇▇," and then the



Page 159

```
 1   further.  Thank you.

 2               MR. CONNELLY:  All right.  Thank you.

 3   She'll read and sign.

 4               THE COURT REPORTER:  Anybody need a copy,

 5   Mr. Connelly or Ms. Rhodes?

 6               MR. CONNELLY:  Yes, please.

 7               MS. RHODES:  Yes, please.

 8               (The deposition concluded at 12:46 p.m.)

 9

10

11

                    _____
12
                              BRENDI PLOOF
13

14

15

16

17

18

19

20

21

22

23

24

25
```



160

```
 1   STATE OF ARIZONA     )

 2   COUNTY OF MARICOPA   )

 3

 4             BE IT KNOWN that the foregoing proceedings

 5   were taken before me; that the witness before testifying

 6   was duly sworn by me to testify to the whole truth; that

 7   the foregoing pages are a full, true, and accurate

 8   record of the proceedings, all done to the best of my

 9   skill and ability; that the proceedings were taken down

10   by me in shorthand and thereafter reduced to print under

11   my direction.

12             I CERTIFY that I am in no way related to

13   any of the parties hereto, nor am I in any way

14   interested in the outcome hereof.

15             [X] Review and signature was requested.

16             [ ] Review and signature was waived.

17             [ ] Review and signature was not requested.

18             I CERTIFY that I have complied with the

19   ethical obligations set forth in ACJA 7-206(F)(3) and

20   ACJA 7-206 (J)(1)(g)(1) and (2).  Dated at Phoenix,

21   Arizona, this 12th day of November, 2024.

22   _____

23             JODY L. LENSCHOW, RMR, CRR

24                  Certified Reporter

25                Arizona CR No. 50192
```

1          I CERTIFY that MAGNA LEGAL SERVICES, LLC has

2    complied with the ethical obligations set forth in ACJA

3    7-206 (J)(1)(g)(1) through (6).

4

5

6          _____

7                  MAGNA LEGAL SERVICES, LLC

8                  Registered Reporting Firm

9                   Arizona RRF No. R1102

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25