Thomas A. Connelly (AZ Bar #019430)
Robert T. Mills (AZ Bar #018853)
Sean A. Woods (AZ Bar #028930)
**MILLS + WOODS LAW, PLLC**
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Telephone 480.999.4556
docket@millsandwoods.com

DeeAn Gillespie Strub (AZ Bar #009987)
Jenny D. Jansch (AZ Bar #024431)
**GILLESPIE, SHIELDS &TAYLOR**
7319 North 16th Street
Phoenix, Arizona 85020
Telephone: (602) 870-9700
Fax: (602) 870-9783
mailroom@gillaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jesscia Ploof, an individual, | Case No.: 2:21-cv-00853-JJT-PHX |
| Plaintiff, | |
| v. | **REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| State of Arizona, *et al.*, | (Hon. John J. Tuchi) |
| Defendants. | |

Plaintiff submits the following Reply in Support of Plaintiff's Motion for Summary Judgment (Doc. 121).[1] This Reply is supported by the following Memorandum of Points and Authorities explaining why Plaintiff's motion should be granted.

---

[1] To the fullest extent possible, citations herein will be to citations already in the docket as part of Plaintiff's Motion for Summary Judgment (Doc. 121), Plaintiff's Statement of Facts (Doc. 122), Plaintiff's Response in Opposition to Defendant James Thal's Motion for Summary Judgment (Doc. 138), Plaintiff's Controverting Statement of Facts in Support of her Response in Opposition to Defendant James Thal's Motion for Summary Judgment (Doc. 145), Plaintiff's Response in Opposition to DCS Defendant's Motion for Summary Judgment (Doc. 139), and Plaintiff's Controverting Statement of Facts in Support of Response to DCS Defendants Motion for Summary Judgment (Doc. 140).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014-2555
480.999.4556

**MEMORANDUM OF POINTS AND AUTHORITY**

## I.      OVERVIEW

Plaintiff set out a robust factual history in her Motion for Summary Judgment (Doc. 121), Plaintiff's Statement of Facts in Support of Motion for Summary Judgment (Doc. 122), Response in Opposition to Defendant James Thal's Motion for Summary Judgment (Doc. 138), Plaintiff's Controverting Statement of Facts in Support of Response in Opposition to Defendant James Thal's Motion for Summary Judgment (Doc. 145), Plaintiff's Response in Opposition to DCS Defendants' Motion for Summary Judgment (Doc. 139), Plaintiff's Controverting Statement of Facts in Support of Response in Opposition to DCS Defendants' Motion for Summary Judgment (Doc. 140) and, therefore, it will not be repeated here but is incorporated here by reference.  Only a few words will be said to clarify some of the misleading facts in Defendants' responses (Doc. 132 and Doc. 141).

Defendants' responses fail to identify any genuine disputes of material fact.  Instead, they rely on semantic disagreements, selective characterizations of the record, and self-serving assertions of "independent judgment." The record shows undisputed ex parte influence, material expert report alterations unsupported by any new events or facts, concealment/shredding efforts, reliance on the altered report by another expert, and a resulting shift in trajectory away from reunification despite Plaintiff's compliance with all services.

## II.      The Critical Sequence of Events That Are Undisputed

Dr. Thal was a contract provider with DCS at the relevant time and he testified that historically 90-95% of his referrals came for DCS.  **DCSOF ¶ 21**; **TCSOF ¶ 21; PSOF ¶ 21.**

On January 12, 2017, a Temporary Custody Notice (TCN) was issued and H.P. was removed from the home.  **DCSOF ¶ 14; TCSOF ¶14; PSOF ¶ 14,** Ex. 7.  The TCN indicated that the physical or mental condition of a child's caregiver endangers a child's health or safety and substance abuse as the reasons for removal. *Id*.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

2

On January 17, 2017, the Dependency Petition was filed and verified by Defendant Tafoya and alleged that Jessica was unable to parent due to substance abuse, mental health issues, unable to make sound decisions, and she is in constant need of instruction from Brendi, her mother. **DCSOF ¶ 16; TCSOF ¶ 16; PSOF ¶ 16,** Ex. 9.

October 2, 2017, Defendant Szymkowski completed an Assessment and Plan in which she stated that "[t]here are no known protective behaviors present with Jessica, a lack of ability to recognize safety threats, as the home was observed to be dirty, with food, dirty clothing, unused tampons as well as spiders all over the ground." **DCSOF ¶ 22; TCSOF ¶22; PSOF ¶ 22**, Ex. 22. The substandard conditions of the home were unsubstantiated when investigators went to the home twice. **DCSOF ¶ 8; TCSOF ¶ 8; PSOF ¶ 8.**

Szymkowski transitioned off the case at the end of December 2017, when she was promoted to Program Manager in another office and Claudia Hoff assumed the ongoing case manager role. **DCSOF ¶ 25**; **TCSOF ¶ 25; PSOF ¶25.**

Dr. Thal conducted a psychological evaluation of Jessica on July 18, 2017, and he opined that Jessica could be an effective co-parent. **DCSOF ¶ 24; TCSOF ¶ 24; PSOF ¶ 24**, Ex. 22.

On January 4, 2018, Thal signed and issued a psychological evaluation of Brendi Ploof concluding that she was a suitable caregiver, could meet H.P.'s needs, and that H.P. would not be at risk in her care. **DCSOF ¶ 25; TCSOF ¶25; PSOF ¶ 25**, Ex. 23. Thal recommended that permanent guardianship with Brendi be considered as an appropriate placement option. *Id*. He sent the psychological evaluation report of Brendi to Paige Szymkowski. *Id*. Shortly thereafter, Dr. Thal was contacted by former DCS caseworker Szymkowski. **DCSOF ¶ 26; TCSOF ¶ 26; PSOF ¶ 26.**

**Prior to the call with Szymkowski on January 30, 2018, Thal prepared a letter to Hoff** on January 29, 2018, explaining that "[i]n discussing this case further with your predecessor, Paige Szymkowski, I would recommend further assessment regarding what is the best placement for H.P. . . . Therefore, I would recommend you seek a bonding/best

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

interest evaluation of the child and parties involved." *Id*. Shortly thereafter, Dr. Thal was contacted by former DCS caseworker Paige Szymkowski. **DCSOF ¶ 27, TCSOF ¶ 27, and PSOF ¶ 27,** Ex. 25. This evidence suggests that there were two calls instead of only one, as testified to by Defendants Szymkowski and Thal, pointing to even greater concerted conduct.

On January 30, 2018, despite no longer being the assigned case worker, Szymkowski had an ex parte phone call with Dr. Thal. **DCSOF ¶ 28; TCSOF ¶ 28; PSOF ¶ 28.** During their conversation, Szymkowski conveyed concerns regarding the condition of the home and her personal opinion about H.P.'s bond with his foster placement. *Id*. After that conversation, Dr. Thal altered his January 4 report regarding Brendi and now recommended a bonding assessment. **DCSOF ¶ 29; TCSOF ¶ 29; PSOF ¶ 29.** Neither Szymkowski nor DCS provided any new information to Thal and no new events occurred in the case. **DCSOF ¶ 30; TCSOF ¶ 30; PSOF ¶ 30.**

On February 1, 2018, Hoff emailed Dr. Thal and "suggested in lieu of a follow-up letter, that [Thal] could simply make [his] changes to Ms. [Brendi] Ploof's evaluation report" because [Hoff] had not yet disclosed the report to the other parties. **DCSOF ¶ 31; TCSOF ¶ 31; PSOF ¶ 31**, Ex. 27 at 3, Ex. 29 at 1.

On February 2, 2018, Hoff emailed Dr. Thal and expressed her personal lay opinion about Jessica's ability to parent. **DCSOF ¶ 32; TCSOF ¶ 32; PSOF ¶ 32.** Hoff stated, "[w]hile Jessica completed most of the services, she is so low functioning, I don't know that she could parent a child with special needs. Her mother. . . something was off there. I couldn't exactly put my finger on it." She further stated that the home was clean and safe. She also indicated that she would shred Dr. Thal's original report. *Id*. Dr. Thal responded to Hoff's email stating that "I didn't realize that the report had not been distributed as yet. That being the case, I will re-work the recommendations to include the bonding assessment." **DCSOF ¶ 33; TCSOF ¶ 33; PSOF ¶ 33.**

On February 7, 2018, Dr. Thal sent an altered report to Hoff and instructed her to shred the original report. **DCSOF ¶ 34; TCSOF ¶ 34; PSOF ¶ 34.**

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

On February 28, 2018, Jessica completed parent-aide services and the discharge summary states she demonstrated an ability to meet H.P.'s basic needs and recommended the assignment of a family reunification team to facilitate H.P.'s return home. **DCSOF ¶ 35; TCSOF ¶ 35; PSOF ¶ 35.**

Hoff and her supervisor, Defendant Breeding, did not assign the family reunification team but instead requested a bonding assessment. **DCSOF ¶ 36; TCSOF ¶ 36; PSOF ¶ 36.**

On March 6, 2018, Hoff called Dr. Thal's to let him know that contrary to the plan to shred his original report on Brendi, Szymkowski had, in fact, disclosed it to all parties. Hoff went on to explain that "Paige [Szymkowski] asked you [Thal] to consider additional information and that you revised your report." **DCSOF ¶ 37; TCSOF ¶ 37; PSOF ¶ 37,** Ex. 33. However, no new information and no new events were provided in the phone call. **DCSOF ¶ 30; TCSOF ¶ 30; PSOF ¶ 30.** The records reviewed by Thal for both reports—the original and altered reports on Brendi—are identical. **DCSOF ¶ 43; TCSOF ¶ 43; PSOF ¶ 43,** Exs. 23, 28.

As a result, on March 14, 2018, Thal issued a letter where he stated that during the call with Szymkowski, she "expressed" "her concerns" over the alleged "substandard condition of grandmother's residence," and about H.P.'s alleged ***"very poor overall condition when he came into care."*** (Emphasis added.) **DCSOF ¶ 39; TCSOF ¶ 39; PSOF ¶ 39,** Ex. 27. Dr. Thal also stated Szymkowski had expressed her personal view that H.P. was "bonded" with his foster family and this bond was a "critically important relationship." **DCSOF ¶ 40; TCSOF ¶ 40; PSOF ¶ 40.** Thal also reported to Hoff that Szymkowski was "clearly concerned about the traumatic impact of removing [H.P.] from foster care." *Id*.

On March 7, 2018, Hoff referred H.P. and his foster parents to S. Bryce Bennett, PsyD, for a bonding/best interest assessment and provided him Dr. Thal's altered report as collateral information. **DCSOF ¶ 44; TCSOF ¶ 44; PSOF ¶ 44.**

On June 12, 2018, Hoff emailed Dr. Bennett offer her personal, lay opinion that both Jessica and Brendi were barely minimal parents. **DCSOF ¶ 45; TCSOF ¶ 45; PSOF ¶ 45.** Hoff thanked Dr. Bennett for his detailed report and then told him he may be called to testify as DCS may attempt to terminate Jessica's parental rights. *Id.*

On August 14, 2018, DCS filed a Motion for Termination of Parent-Child Relationship. **DCSOF ¶ 46; TCSOF ¶ 46; PSOF ¶ 46,** Ex. 40. DCS alleged that foster care was the least-restrictive placement and "[t]he child is not placed with a grandparent. . . *because DCS is unaware of any such person who is willing, able and appropriate to care for the child*. (Emphasis added) *Id.*

October 18, 2018, Thal conducted a second psychological evaluation of Jessica. **DCSOF ¶ 47; TCSOF ¶ 47; PSOF ¶ 47,** Ex. 41. Thal's recommendation changed from reunification of H.P. with his mother and grandmother in favor of adoption by the foster parents. *Id.*

## III.  **ARGUMENT**

### A. **Plaintiff Has Established Judicial Deception**

DCS Defendants violated Plaintiff's constitutional rights to familial association by deliberately or recklessly submitting or approving the submission of materially false and misleading information to a forensic evaluator and ultimately to the juvenile court. DCS Defendants argue Plaintiff cites no false statement to the juvenile court. The record shows material falsehoods and omissions attributed to DCS's presentation of the case, including reliance on a materially altered evaluation procured through ex parte advocacy, while omitting the lack of any new factual bases for the alterations. In this case, DCS Defendants injected false information into the evaluative process; the evaluator leaned into the conspiracy with no new evidence and produced a materially altered forensic expert report; DCS presented that report as independent, objective evidence; and omitted crucial information. This is quintessential judicial deception.

"To state a violation of the constitutional right to familial association through judicial deception, a plaintiff must allege '(1) a misrepresentation or omission (2) made

Mills + Woods Law, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

deliberately or with reckless disregard for the truth, that was (3) material to the judicial decision.'" *Kelly v. Winter*, No. CV-25-01208-PHX-ROS, 2026 WL 679125 *12 (D. Ariz., March 10, 2026) citing *David v Kalukukui*, 38 F.4th 792, 801 (9th Cir. 2022); *Benavidez v. Cnty of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021). "A misrepresentation or omission is 'material' if a court 'would have declined to issue the order had [defendants] been truthful." *Id. quoting Green v. Camerta*, 588 F.3d 1011, 1035 (9th Cir. 2009) vacated in part on other grounds, 563 U.S. 692 (2011). Materiality can be determined by removing the allegedly false statements or omissions and determining what remains was a substantial basis to sever Plaintiff's parental rights. *Id.* (citations omitted).

Here, DCS Defendants misled the juvenile court with the assertion that H.P.'s medical needs were not being met in the home, the home itself was in substandard condition, and H.P. was severally delayed and not receiving services. This was the false narrative provided to the juvenile court by Szymkowski and Hoff. Szymkowski and Hoff also provided false testimony in the severance trial. Doc. 140**; PCSOF ¶¶ 31, 32, 40**. Szymkowski testified under oath regarding the substandard conditions of the home (which did not exist), and that DDD services provided to H.P. were discontinued because he was doing well. *Id*. She also indicated her intention for Dr. Thal to write a new report. *Id*. Hoff testified under oath that "H.P. was being medically neglected and his needs were not being met. . . no one was taking him to his medical appointments." *Id.* at **PCSOF ¶ 32**, Ex. D. Szymkowski's referral package submitted to Dr. Thal contained false allegations that there was severe domestic violence within the home, H.P. was severely speech delayed, and H.P.'s needs were not met. *Id.* at ¶ 40. Ironically, Hoff and Szymkowski failed to request DDD records or H.P.'s medical records so that they could be provided to the juvenile court. *Id*. Even with this false information initially Dr. Thal exercised his independent professional judgment and, after meeting with and evaluating Jessica and her mother Brendi, unequivocally recommended H.P. could be effectively parented by Jessica with her mother's help as guardian.

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

DCS did not support the lawful plan of reunification which appeared inevitable. To solidify their ability to sever Jessica's parental rights, Szymkowski had ex parte communications with Dr. Thal providing him false information about the substandard condition of the home and her lay opinion that H.P. had bonded with his foster family. Dr. Thal, who initially got it right acting with professional integrity in his initial recommendations, leaned into the conspiracy at the behest of DCS Defendants and altered his original report on Brendi. Defendants admitted that no new information or events were provided to Dr. Thal, yet he lost his way and radically altered his recommendations based solely upon the ex parte phone call with Szymkowski. To conceal the troubling sequence of events, Dr. Thal and Hoff agreed to shred his original report.

Those facts establish that material falsehoods and omissions—both in written assessments, testimony, and in the presentation and use of a sketchily procured, materially altered expert report by Dr. Thal—were injected into the juvenile proceedings. DCS Defendants utilized the altered report to justify obtaining a bonding/best-interest assessment, provided the altered report as supporting collateral information to Dr. Bennett, and later anchored the termination motion on Thal's altered opinions and the best interest assessment while falsely asserting lack of an appropriate grandparent to assume guardianship of H.P. Defendants' contention that testimony at the severance trial "cured" the deception fails where the deception itself shaped the evidence and trajectory through undisclosed ex parte influence and attempted destruction of the original report. That later testimony itself was fruit of a poisonous tree. Thal's altered report changed the trajectory of the case from reunification to severance of parental rights. Thal's altered report was provided to and relied upon by Dr. Bennett who performed the bonding assessment which recommended against returning H.P. to Jessica and Brendi. With Thal's altered report and Bennett's compromised report, DCS moved to sever Jessica's parental rights.

DCS Defendants then shift their argument that no deception occurred because the juvenile court heard testimony regarding the evolution of Thal's report. The mere fact that a court later hears testimony does not cure judicial deception where the decision-making

process itself was tainted by materially misleading information. *See Benavidez*, 993 F.3d at 114748; *Liston v. Cnty of Riverside*, 120 F.3d 965, 973-75 (9th Cir. 1997), overruled on other grounds, *Saucier v. Katz* 533 U.S. 194 (2001).

## B. There is No Genuine Dispute that Plaintiff has Established Conspiracy

Defendants assert there was no "meeting of the minds" among the alleged conspirators and characterize the troublesome communications as benign. The undisputed sequence of events described herein above shows coordinated knowing action by and among Defendants to procure a change in expert conclusions without any new facts, concealment of the original report, and a drive to change the case plan from reunification to severance of parental rights.

There is no genuine dispute that Thal's actions in materially altering his report at DCS's request is so intertwined with DCS Defendants' actions that he became a state actor. His efforts to conceal the inconvenient fact and manner of his alterations clearly demonstrates an agreement to achieve the State's goal of violating Jessica's constitutional rights by ensuring the severing her parental rights to H.P. Defendants worked in concert to prevent Jessica from reuniting with her son and parenting H.P. as co-parent with Brendi's assistance as his legal guardian in the primary parenting role. Thal's altered report was a necessary, vital element to achieving severance and preventing reunification of H.P. with his mother and family.

While Thal is facially a private, non-state actor, there are several circumstances that apply here under which a private party becomes a state actor for purposes of § 1983, including being a "'willful participant' with the State or its agents in an activity which deprives others of constitutional rights." *Burnette v. Humane Soc'y of Ventura Cnty*, 294 F.3d. 1205, 1211 (9th Cir. 2020). "To satisfy [this] test, the plaintiff must show that the private party's actions are 'substantially and inextricably intertwined' with those of the government, or that a conspiracy to violate his constitutional rights exists." *Solomon v. Las Vegas Metro. Police Dep't,* 441 F. Supp. 3d 1090, 1098 (D. Nev. 2020) (quotations omitted).

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

Liability for conspiracy in a § 1983 action exists when there is an agreement to achieve the goal of violating a plaintiffs' constitutional rights. *Crowe v. Cty. Of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010). "[S]substantial cooperation" between the private actor and the State must be shown. *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 503 (9th Cir. 1996). Here, Thal became a state actor "by conspiring with a state officer or by engaging in a joint activity with state officials" and "by becoming so closely related to the State that the person's actions can be said to those of the State itself." *Price v. State of Hawaii*, 939 F.2d 702, 708-09 (9th Cir. 1991), cert denied, 503 U.S. 938 (1992). Thal's activity must be, and was, "inextricably intertwined with those of the state." *Burnette,* 294 F.3d at 1211. *"*Direct evidence of improper motive or an agreement among the parties to violate a plaintiff's constitutional rights will only be rarely available. Instead, it will almost always be necessary to infer such agreements from circumstantial evidence or the existence of joint action." *Mendocino Envtl. Ctr. v. Mendocino Cnty*, 192 F.3d 1283, 1302 (9th Cir.1999) "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp*., 865 F.2d 1539, 1541 (9th Cir. 1989). To establish that the conspiracy was the cause of the plaintiff's injuries, "the requisite causal chain can occur through the 'setting in motion [of] a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.'" *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir.1997) (citing *Johnson v. Duffy*, 588 F.2d 740 (9th Cir.1978)). Here, Defendants, including Thal, by cooperating in the material alteration of Thal's January 4 report on Brendi, made sure Brendi would not be an option to co-parent with Jessica thus enabling DCS to avoid implementing the required reunification team to  transition H.P home with his Mother and family, instead insuring  DCS had a basis to seek severance of Jessica's parental rights.

Defendants incorrectly argue that Plaintiff must produce <u>direct</u> evidence of an agreement. That is not the law. Evidence from which an agreement to conspire can be inferred is sufficient and exists here, as described throughout this brief. Thal, ostensibly an

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

unbiased, disinterested third-party forensic expert, is unlikely to have made changes to his initial forensically sound report without receiving and describing in an altered report new evidence or other new information to support the material alterations in the absence of an agreement or tacit understanding with the State. Nor is Thal, obviously uncomfortable with the matter, likely to have directed the subterfuge of "shredding" the original report in the absence of an agreement with the State. Under these circumstances, the law allows the inference of an agreement to support a claim of conspiracy. *Id.*; *Kunik v Racine County*, 946 F.2d 1574, 1580-81 (7th Cir. 1991). Circumstantial evidence, including the actions of Defendants here, support the requisite meeting of the minds for conspiracy in a § 1983 matter. *Crowe*, 608 F.3d at 440. "Of course, like any element, the agreement may be proved by direct evidence or circumstantial evidence. And the agreement can be explicit or tacit. But the agreement has to be there." *United States v. Loveland*, 825 F.3d 555, 561–62 (9th Cir. 2016) (footnote omitted).

The undisputed facts set forth above demonstrate a conspiracy between the Defendants thus entitling Plaintiff to summary judgment. At the worst, the evidence presents a triable question of fact precluding summary judgment for Defendants. *See Mendocino Env't Ctr.*, 192 F.3d at 1301–02 ("[w]hether defendants were involved in an unlawful conspiracy is generally a *factual issue and should be resolved by the jury*, so long as there is a possibility that the jury can 'infer from the circumstances (that the alleged conspirators) had a 'meeting of the minds' and thus reached an understanding to achieve the conspiracy's objectives.") (emphasis added); *see also Hoffman v. Halden*, 268 F.2d 280, 295–96 (9th Cir. 1959), overruled on other grounds by *Cohen v. Norris*, 300 F.2d 24 (9th Cir. 1962) ("If sufficient allegations appear of the acts of one defendant among the conspirators, causing damage to plaintiff, and the act of the particular defendant was done pursuant to the conspiracy, during its course, in furtherance of the objects of the conspiracy, with the requisite purpose and intent and under color of state law, then all defendants are liable for the acts of the particular defendant under the general principle of agency on which conspiracy is based."); *Sanchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020) ("In other words,

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

a conspiracy under section 1983 permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out."). In short, conspiracy need not be formal, a tacit understanding suffices. Coordination of conduct—revisions + shredding + strategic deployment—permits a reasonable inference of agreement—a jury issue if the Court does not grant summary judgment for Plaintiff, which it should do.

Thal's remarkable assertion that his "opinions did not substantively change" is contradicted by his own written revisions and contemporaneous emails and letters acknowledging he would "re-work the recommendations" to add a bonding assessment only after DCS's ex parte advocacy. DCS's attempt to sanitize this uncomfortable fact as "independent professional judgment" does not erase the ex parte solicitation, the absence of new events and facts, the coordinated shredding directive, or DCS's reliance on the altered report (and Bennett's compromised report) to sever Jessica's parental rights. Without Thal's altered report, there would be no bonding assessment and H.P. would have been returned to Jessica as recommended by Thal in his original report and by DCS's own parent aide provider. This preventable tragedy was a coordinated effort to change the trajectory of the case from reunification to severance. Fabrication and manipulation of evidence rebuts any presumption of "independent judgment." *Caldwell v. City and Cnty of San Franciso*, 889F. 3d 1105, 1117 (9th Cir. 2018).

## C. DCS Defendants Failed to Make Reasonable Efforts

Defendants do not dispute that Jessica completed services, maintained sobriety, and was recommended for reunification by DCS's chosen parent aide service provider. Yet, DCS Defendants refused to implement the recommended reunifications services and instead pivoted the case plan from reunification to termination based on Thal's altered report. DCS argues that Jessica received services and courts later found reasonable efforts. The material facts in this record show DCS Defendants failed to reasonably advance recommended reunifjation and instead maneuvered the matter toward termination despite Jessica's compliance with and undisputed success in services. DCS Defendants moved to

terminate Jessica's parental rights on August 14, 2018, relying on Thal's opinions about Jessica's limitations (and importantly his altered report on Brendi), while falsely asserting no appropriate willing grandparent placement, notwithstanding Thal's original report on Brendi in which he identified her as an appropriate and suitable co-parent, even advocating that she be H.P's legal guardian.

Reasonable efforts require tailoring services and assisting where compliance is difficult. Here, DCS Defendants willfully disregarded the family reunification team recommendation following Jessica's successful completion of parent-aide services, and substituted a targeted bonding assessment catalyzed by a procured altered Thal report, and pressed for its aim of termination of Jessica's parental rights.

### D.  DCS's "Abuse of Process" Objection

Plaintiff's motion labeled a section "Abuse of Process," but Plaintiff's motion address judicial deception, which is properly pled and supported by evidence in the record. Any reference to abuse of process reflects the same underlying misconduct and does not alter the claims before the Court.

### III.  CONCLUSION

The undisputed documentary and testimonial record demonstrate deliberate and reckless deceptions, a concerted plan to manipulate and alter expert conclusions and suppress contrary evidence, and DCS's refusal to make reasonable efforts toward reunification. Based on the undisputed evidence discussed herein, Plaintiff respectfully requests the Court grant summary judgment on Claims Four, Five, and Six.

///

///

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

**RESPECTFULLY SUBMITTED** this 31<u>st</u> day of March 2026.

**MILLS + WOODS LAW PLLC**

       Thomas A. Connelly
       Robert T. Mills
       Sean A. Woods
       5055 North 12th Street, Suite 101
       Phoenix, AZ 85014

**GILLESPIE, SHIELDS & TAYLOR**

By  */s/ Jenny D. Jansch*

       DeeAn Gillespie Strub
       Jenny D. Jansch
       7319 North 16th Street
       Phoenix, AZ 85020

       *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

*/s/ Jenny D. Jansch*

MILLS + WOODS LAW, PLLC
5055 North 12th Street, Suite 101
Phoenix, AZ 85014
480.999.4556

14
