Jeffrey S. Hunter, Esq.
Arizona Bar No. 024426
WEINBERG, WHEELER, HUDGINS,
    GUNN & DIAL, LLC
1 North Central Avenue, Suite 900
Phoenix, Arizona 85004
Telephone: (602) 256-3015
Facsimile: (602) 307-5853
*Counsel for Defendant James Thal*

jhunter@wwhgd.com
docketing-PHX@wwhgd.com

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**



| | |
|---|---|
| Jessica Ploof, an individual,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>State of Arizona, a government entity; Arizona Department of Child Safety, governmental entity; Meagan Tafoya, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Tafoya, her spouse; Sarah Greenway, individually and as an employee with the State of Arizona Department of Child Safety and John Doe Greenway, her spouse; Paige Szymkowski, individually and as an employee with the State of Arizona Department of Child Safety, and John Doe Szymkowski, her spouse; Claudia Hoff, individually and as an employee with the State of Arizona Department of Child Safety, and John Doe Hoff, her spouse; Nick Breeding, individually and as an employee with the State of Arizona Department of Child Safety, and Jane Doe Breeding, his spouse; Gregory Mckay, as former Director, Arizona Department of Child Safety; Michael Faust, as Director, Arizona Department of Child Safety; James Thal, individually and as a services provider for the State of Arizona Department of Child Safety and Jane Doe Thal, his spouse, John and Jane Does 1-5; and Black Entities 1-5,<br><br>　　　　　　Defendants. | Case No.: 2:21-cv-00853-JJT<br><br><br>**DEFENDANT JAMES THAL'S REPLY TO PLAINTIFF'S RESPONSE TO JAMES THAL'S MOTION FOR SUMMARY JUDGMENT** |

Defendant James Thal ("Dr. Thal") hereby files this Reply to Plaintiff's Response to Dr. Thal's Motion for Summary Judgment pursuant to Rule 56(a), Fed. R. Civ. P. concerning claim five under 42 U.S.C. § 1983 against Paige Szymkowski [now known as Paige Wooldridge] ("Ms. Wooldridge"), Claudia Hoff ("Ms. Hoff"), and Dr. Thal for conspiring to violate Plaintiff's right to Due Process under the Fourth and Fourteenth Amendments to be free from misrepresentations and/or omissions to the Court which were deliberate falsehoods and/or which demonstrated a reckless disregard for the truth.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    BACKGROUND

Plaintiff in her Response to the Motion for Summary Judgment [Dkt. 138] and Plaintiff's Controverting Statement of Facts [Dkt. 145], admits or does not contest the following:

1. Jessica Ploof did not have the minimal parenting skills to care for H.P.;

2. Jessica Ploof does not via this action contest the holding severing parental rights by the Maricopa County Juvenile Court and affirmed by the Appellate Court as she admits and waives re-litigating those holdings;

3. Jessica Ploof does not contest her admission that she did not possess minimal parenting skills as admitted in her Amended Motion for Appointment of a Permanent Guardian of Minor Child;

4. Jessica Ploof does not contest the holding of the Maricopa Count Juvenile Court that it was not in the best interest of H.P. that Jessica Ploof retain parental rights or that Brendi Ploof not be appointed guardian of H.P.;

5. Jessica Ploof does not contest that the severance of her parental rights and denial of Brendi Ploof as guardian were an erroneous holdings;

---

[1] This Reply is compromised of Defendant Thal's Motion for Summary Judgment [Dkt. 113], Defendant Thal's Statement of Facts in Support of Motion for Summary Judgment with exhibits attached thereto (SOF) [Dkt. 114], Plaintiff's Statement of Facts in Support of Motion for Summary Judgment (PSOF) [Dkt. 122], Plaintiff's Response to Defendant Thal's Motion for Summary Judgment [Dkt. 138], and Plaintiff's Controverting Statement of Facts in Support of Response in Opposition to Defendant Thal's Motions for Summary Judgement (PCSOF) [Dkt. 145].

WEINBERG WHEELER HUDGINS GUNN & DIAL

6.    Jessica Ploof does not contest that Dr. Thal's two evaluation reports regarding her are incorrect in any nature or contain falsehoods or deliberate misrepresentations;

7.    Jessica Ploof does not contest via expert report/opinion the accuracy and correctness of Dr. Thal's two evaluations of Jessica Ploof;

8.    Jessica Ploof does not contest via expert report/opinion that Dr. Thal's recommendations in his two evaluations of Brendi Ploof (inclusive of all three reports) were inaccurate in any nature;

9.    Jessica Ploof presents no evidence that Dr. Bennett's bonding assessment was influenced by DCS representatives or Dr. Thal's report(s);

10.    Jessica Ploof fails to identify a single false statement or deliberate misrepresentation of fact or opinion by Dr. Thal;

11.    Jessica Ploof admits her sole basis for a conspiracy is 1) ex parte contact between Szymkowski and Thal discussing Szymkowski's view of the case and 2) Dr. Thal issuing a modified report regarding Brendi Ploof recommending a bonding assessment.

12.    Jessica Ploof presents no evidence that Dr. Thal's (individually or in a conspiracy) intent was to ensure severance of the parental relationship;

13.    Jessica Ploof does not contest the substance and recommendations of Dr. Bennett evaluations.

Further, Jessica Ploof does not contest the following facts. DCS removed H.P. from Plaintiff's custody on January 12, 2017, and H.P. was placed in foster care. [Dkt. 114, SOF at ¶ 6]. At the time of removal, DCS's goal was reunification of H.P. with Plaintiff. [Dkt. 114, SOF at ¶ 7]. Upon removal, the State of Arizona filed the appropriate Dependency Petition with the Maricopa County Juvenile Court. [Dkt. 114, SOF at ¶ 8]. At all times thereafter, the Dependency action proceeded under the jurisdiction of the Maricopa County Juvenile Court. [Dkt. 114, SOF at ¶ 9].  On August 14, 2018, DCS determined dependency was not a goal and filed a Petition for Severance of Plaintiff's parental rights. [Dkt. 114,

WEINBERG WHEELER
HUDGINS GUNN & DIAL

SOF at ¶ 10]. The Juvenile Court, after trial, severed Plaintiff's parental rights to H.P. [Dkt. 114, SOF at ¶ 11].

Jessica Ploof does not dispute that at the request of DCS, Dr. Thal performed an evaluation of Jessica Ploof on July 18, 2017 [Dkt. 114, SOF at ¶ 12] and a second evaluation was on October 10, 2018. [Dkt. 114, SOF at ¶ 13]. Jessica Ploof does not contest the findings and opinions of Dr. Thal in these two evaluations including 1) Plaintiff's IQ is 65, placing her in the intellectually disabled range. [Dkt. 114, SOF at ¶ 14], 2) it would be "exceedingly difficult for [her] to acquire, understand, retain, and implement basic parenting knowledge and skills." [Dkt. 114, SOF at ¶ 15]; 3) H.P. could not be safely returned to Plaintiff's sole custody, then or in the foreseeable future, because he would be at risk in her care. [Dkt. 114, SOF at ¶ 17], 4) stated the goal of reunification of the family and identified the possibility that despite Plaintiff's challenges, she could serve in the capacity of a co-parent or assistant to a fully qualified caregiver. [Dkt. 114, SOF at ¶ 19]. Dr. Thal's opinions remained the same after his second evaluation. [Dkt. 114, SOF at ¶ 20].

Jessica Ploof does contest Dr. Bryce Bennett ("Dr. Bennett") conducted a bonding assessment of Plaintiff, Brendi, H.P., and his foster family on April 13, 2018, May 14, 2018, and May 18, 2018. [Dkt. 114, SOF at ¶ 21] and [Dkt. 114, SOF at ¶ 22] and concluded Jessica Ploof did not have the ability to meet his special needs. [Dkt. 114, SOF at ¶ 23]. In fact, Plaintiff presents no expert opinion or other facts supporting that Dr. Bennett's opinions were inaccurate.

Jessica Ploof does not contest her statement, as made in her Amended Motion for Appointment of a Permanent Guardian of Minor Child on January 11, 2019, wherein she admits that she is unable to parent H.P. alone, and requests that the Juvenile Court appoint Brendi as the guardian. [Dkt. 114, SOF at ¶ 26], that "Reunification of the minor child and Mother is not in the minor child's best interest." [Dkt. 114, SOF at ¶ 27].

Jessica Ploof does not contest that on July 30, 2019, the Maricopa County Juvenile Court held by a preponderance of the evidence that it would be in H.P.'s best interest to terminate Plaintiff's parental rights. [Dkt. 114, SOF at ¶ 28]. The Court reasoned that

WEINBERG WHEELER
HUDGINS GUNN & DIAL

WEINBERG WHEELER
HUDGINS GUNN & DIAL

"every professional who examined [Plaintiff] concluded that she is not capable of parenting [H.P.] on her own." [Dkt. 114, SOF at ¶ 29].

Hence, Plaintiff cannot seek damages for termination of her parental rights.  In fact, Plaintiff is seeking soley damages for cessation of her relationship with H.P. only because Brendi Ploof was not appointed Guardian by the Juvenile Court as a result of an alleged conspiracy among Dr. Thal and certain DCS staff.

Jessica Ploof asserts the following events support a conspiracy that were allegedly not discoverable until after initiation of this lawsuit:

1)    Symkowski, Hoff, and Dr. Thal had a conference to discuss his first report regarding the evaluation of Brendi Ploof at which time Szymkowski expressed her concerns of H.P. being removed from foster care, and

2)    Dr. Thal subsequently modified this report;

3)    These actions were concealed from the Juvenile Court.

However, the actual facts are as follows which conclusively establishes each was known by Plaintiff during the pendency of the dependency and severance proceedings:

1)    DCS requested that Dr. Thal perform psychological evaluations of Brendi. Dr. Thal's first evaluation report from the evaluation conducted on January 4, 2018, concluded that "[t]he prognosis that [Brendi] will be able to demonstrate minimally adequate caregiving skills to [Hunter] in the foreseeable future is seen as favorable." [Dkt. 114, SOF at ¶ 32.]

2)    This report was forwarded to Paige Szymkowski (now known as "Ms. Wooldridge"), a DCS caseworker. [Dkt. 114, SOF at ¶ 33].

3)    Subsequently, on approximately January 30, 2018, there was a conference call between Dr. Thal, Ms. Wooldridge, and based upon deposition testimony, potentially Ms. Hoff, a DCS caseworker, to discuss his report and recommendations at which that time Ms. Wooldridge conveyed information she believed was important that Dr. Thal consider in his assessment of his evaluation of Brendi. [Dkt. 114, SOF at ¶ 34].  Ms. Wooldridge wanted to ensure that Dr. Thal had all the information about the case in order to make

a fully informed recommendation. [Dkt. 114, SOF at ¶ 35]. She did not ask Dr. Thal to change his report. [Dkt. 114, SOF at ¶ 36]. Ms. Wooldridge testified that she only had one conversation with Dr. Thal, and at no time did she and Dr. Thal enter into an agreement to deprive Plaintiff of her parental rights. [Dkt. 114, SOF at ¶ 37]. She also testified that she did not request that Dr. Thal come to any conclusion and she did not request that he change his report or opinions. [Dkt. 114, SOF at ¶ 38]. She further testified that they did not take any acts to prevent Brendi from obtaining guardianship. [Dkt. 114, SOF at ¶ 39]. Ms. Hoff testified in her deposition that she believed since Dr. Thal did not have contact with Plaintiff and Brendi like case workers do, he would not know of any particular detail unless it was noted to him. [Dkt. 114, SOF at ¶ 40] She also believed that Dr. Thal did not understand that when Plaintiff lived with Brendi, the child was not getting the services he needed, that he potentially had epilepsy, and that Brendi had somewhat of an anger problem. [Dkt. 114, SOF at ¶ 41]. She testified that she did not direct Dr. Thal to change his report and that her only expectation was that he consider the information and decide for himself what he does with it, if anything at all. [Dkt. 114, SOF at ¶ 42]. She also testified that the conversation did not involve severing Plaintiff's parental rights, as the plan was still reunification. [Dkt. 114, SOF at ¶ 43].

4)      Dr. Thal revised his report on February 7, 2018. [Dkt. 114, SOF at ¶ 44]. Dr. Thal's revised report still concluded that "the prognosis that [Brendi] will be able to demonstrate minimally adequate caregiving skills to [H.P.] in the foreseeable future is seen as favorable…" however, he added that precaution: "…provided that she can maintain a clean and hygienic home environment." [Dkt. 114, SOF at ¶ 45]. He recommended that a bonding/best interest evaluation be performed that includes Plaintiff, Brendi, H.P., and his foster parents. [Dkt. 114, SOF at ¶ 46]. To emphasize, in neither of Dr. Thal's reports of Brendi's first evaluation did he ever conclude that Brendi would

WEINBERG WHEELER
HUDGINS GUNN & DIAL

not be an appropriate guardian. [Dkt. 114, SOF at ¶ 47]. He did not change his report at the request of Ms. Wooldridge or Ms. Hoff. Dr. Thal testified that he made the changes in his first report of Brendi's evaluation after the call because he began to look at early reports and findings again, not because there was anything persuasive that the case manager said. [Dkt. 114, SOF at ¶ 48].

5) When Dr. Thal submitted this revised report on February 7, 2018, he asked Ms. Hoff by email to "shred" the first report, to which she agreed. [Dkt. 114, SOF at ¶ 49].

6) However, that first report, along with the revised report, was not shredded and was in fact disclosed to Plaintiff's attorney, the court appointed attorney for H.P., the attorney representing the State of Arizona, as well as the Maricopa County Juvenile Court which was overseeing the Dependency Action. [Dkt. 114, SOF at ¶ 50].

7) In the Dependency Action in the Juvenile Court, the Court requested that Dr. Thal provide an explanation for the revision of his report regarding his evaluation of Brendi wherein he added a recommendation of a bonding evaluation. [Dkt. 114, SOF at ¶ 51].

8) In response to the Juvenile Court's request, Dr. Thal authored a letter dated March 14, 2018, which was provided to the Juvenile Court. [Dkt. 114, SOF at ¶ 52]. In this letter, Dr. Thal explained that Ms. Wooldridge did not ask him to change anything in his report but expressed her concerns regarding the substandard condition of Brendi's home, the child's poor overall health, and neglect that occurred at least part of the time under Brendi's care. [Dkt. 114, SOF at ¶ 53]. Dr. Thal further explained that Ms. Wooldridge expressed concern regarding the impact of removing H.P. from his foster placement after H.P. had bonded with his foster parents and made significant progress. [Dkt. 114, SOF at ¶ 54]. Dr. Thal explained that he asked his original report be shredded so as to avoid any confusion. [Dkt. 114, SOF at ¶ 55].

WEINBERG WHEELER HUDGINS GUNN & DIAL

9)    Dr. Thal further testified at a hearing and the Severance Trial in Maricopa County Juvenile Court regarding this issue, his evaluations, opinions and recommendations. [Dkt. 114, SOF at ¶ 56].

10)    On January 4, 2019, Dr. Thal performed a second evaluation of Brendi. [Dkt. 114, SOF at ¶ 57]. In his report for this second evaluation, he did not recommend that H.P. be placed with Brendi. [Dkt. 114, SOF at ¶ 57].

11)    Dr. Thal testified in the severance trial regarding these issues, his evaluations, his opinions, and his recommendations. [Dkt. 114, SOF at ¶ 56].

III.    **ARGUMENT**

A.    **No Reasonable Jury Could Find And No Evidence Exists That Dr. Thal Deprived Plaintiff of Her Civil Rights And Conspired To Do So**

To prevail on a 42 U.S.C. § 1983 claim, "a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused her damage*." McCleland v. City of Tempe,* No. CV-24-00926-PHX-KML, 2025 LX 83323, at *12 (D. Ariz. Apr. 28, 2025). "A plaintiff must also allege that he suffered a specific injury because of the conduct of a particular defendant and allege an affirmative link between the injury and the conduct of that defendant." Id.

1.    There is no evidence of Judicial Deception

To allege a violation of the constitutional right under Due Process to be free from judicial deception and fabrication of evidence in the context of child custody cases, the plaintiff must plead "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Macias v. Kaplan-Seikmann,* No. CV-22-00280-PHX-SPL, 2022 LX 83967, at *12 (D. Ariz. Dec. 2, 2022).

Plaintiff cannot meritoriously dispute that all parties received all of Dr. Thal's evaluation reports regarding Jessica and Brendi Ploof. Plaintiff does not dispute that these reports were received during the pendency of the Dependency and Severance proceedings. Plaintiff does not dispute receiving Dr. Thal's letter to the Court explaining the modification to his first evaluation report regarding the first evaluation of Brendi Ploof.

Plaintiff does not and cannot meritoriously dispute she and her counsel received Dr. Thal's letter to the Juvenile Court explaining the basis of his revisions to his report including:

1) There was a "ex parte" conference with Szymkowski;

2) Szymkowski expressed her concerns regarding Brendi Ploof;

3) Szymkowski expressed her concern with removing H.P. from foster care;

4) Reason why he requested his original report to be shredded.

Further, Dr. Thal was examined in the Severance trial regarding these issues. Hence, every fact/opinion Plaintiff relies upon to assert a conspiracy and concealment were known to all parties and the Juvenile Court before and during the Severance hearing.  There is no merit to Plaintiff's claim that the Juvenile Court was deceived.

Further, Plaintiff fails to aver what statements/opinions by Dr. Thal were 1) misrepresentations, and/or 2) omissions, and 3) made deliberately or with a reckless disregard for the truth.  Even Plaintiff's disclosed expert failed to identify any false statements made by Dr. Thal.  [Dkt. 122, PSOF at ¶ 50, Exhibits 44 & 45].  In essence, Plaintiff's allegations are simply her opinion based on disagreement with his recommendations (which Plaintiff's own expert fails to dispute as being accurate).

2.   There was no joint action/conspiracy

"A civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another which results in damage." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (citing *Vieux v. East Bay Reg'l Park Dist.,* 906 F.2d 1330, 1343 (9th Cir. 1990)). A conspiracy allegation, even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of civil rights. *Woodrum v. Woodward Cty.,* 866 F.2d 1121, 1126 (9th Cir. 1989) (emphasis added).  There is no evidence to establish a conspiracy presented by the Plaintiff. Even if any of Plaintiff's claims or evidence showed misrepresentation, omission or falsehood, which they do not, Plaintiff similarly provides

WEINBERG WHEELER
HUDGINS GUNN & DIAL

no evidence of deliberate or reckless disregard for any alleged misrepresentation, omission or falsehood.

### 3. Plaintiff has failed to demonstrate causation

The reports by Dr. Bennett and by Dr. Underwood did not recommend reunification but instead recommended that H.P. stay with his foster family with no goal of reunification or co-parenting by Plaintiff and Brendi. [Dkt. 122, PSOF at ¶¶ 49 & 50, Exhibits 43 & 44]. Most importantly, the Maricopa County Juvenile Court, with the Arizona Court of Appeals affirming, ruled against reunification as envisioned by Dr. Thal, terminating Plaintiff's parental rights and denying Plaintiff's motion for Brendi to be appointed Guardian of H.P. Any alleged chain of causation was thereby clearly and decisively broken. See *Galen v. Cty. of L.A.,* 477 F.3d 652, 663 (9th Cir. 2007) (holding that a judicial officer's exercise of independent judgment is a superseding cause that breaks the chain of causation linking law enforcement personnel to the officer's decision) (citing *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998) [holding that a sheriff could not be liable under § 1983 for violating right to be free from excessive bail, even if he recommended the bail amount, because "setting the bail bond is entirely at the discretion of the presiding judge."]).

As further proof of the lack of any conspiracy for a violation of due process, Plaintiff received a full and fair Severance trial, free from misrepresentation and/or omissions to the court, free from deliberate falsehoods, free from reckless disregard for the truth, and free from concealment of any fact to the Court.

Further, Plaintiff affirmatively states in her Response that she "is not seeking to relitigate the claims or issues decided by the Juvenile Court, nor is she seeking to overturn the severance." [Dkt. 138 at page 2.] Without relitigating the Juvenile Court's holding of severance, Plaintiff cannot ever meet her burden of proof that the alleged conspiracy caused the severance of her parental rights and denial of guardianship by Brendi Ploof. Once again, Plaintiff cannot meet her burden regarding causation for her claimed injury.

WEINBERG WHEELER
HUDGINS GUNN & DIAL

### B.      Plaintiff's Claim Is Barred By Issue Preclusion

Plaintiff admits that issue preclusion is dispositive when 1) the issue at stake was identical in both proceedings, 2) the issue was actually litigated and decided in the prior proceedings, 3) there was a full and fair opportunity to litigate the issue, and 4) the issue was necessary to decide the merits. [Dkt. 138 at page 18].  Plaintiff does not dispute that when Federal Courts consider issue preclusion, they "must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered".  Id., quoting *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cr. 2001).

Plaintiff voluntarily waives her right to challenge the Juvenile Court holding severing the parental relationship and denying guardianship as not in the best interests of H.P. as she avers "Plaintiff is not seeking to relitigate the claims or issues by the Juvenile Court, nor is she seeking to overturn the severance." (See Dkt. 138 at page 2).  But here, Plaintiff is nonetheless seeking money damages for severance of her parental rights and/or failure of Brendi Ploof to be appointed guardian (with resulting co-parenting situation). Every issue raised by Plaintiff in this lawsuit regarding Dr. Thal was 1) actually litigated in the severance trial, 2) Plaintiff had notice of all issues in the severance trial, 3) Plaintiff had a fair and full opportunity to examine Dr. Thal and any other witnesses regarding these issues, and 4) the Juvenile Court considered all issues in reaching his holding severing parental rights and denying guardianship.

### C.      Plaintiff's Claim is Barred by the Rooker-Feldman Doctrine.

The Rooker-Feldman doctrine precludes federal district courts from asserting subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Miroth v. Cty. of Trinity*, 136 F.4th 1141, 1144 (9th Cir. 2025). This is what Plaintiff attempts to do here, that is, a de facto appeal of the State Court judgment.  Plaintiff's § 1983 claim can succeed only if this Court effectively overturns or disregards that judgment. Rooker-Feldman does not

allow this. *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 463, 103 S. Ct. 1303, 1305 (1983).

**D.      Plaintiff Never Argued Lack Of Or Denial Of Due Process In the Termination Hearing, And Thereby Waived This Claim**

Plaintiff's sole argument in opposition to waiver is predicated on "concealment". As demonstrated above, no facts were concealed and Plaintiff was aware of all facts during the pendency of the severance trial and before.

**E.      The Claim Against Dr. Thal was Filed After the Statute of Limitations had Run.**

In this case, the Superior Court for the State of Arizona in ruling on Dr. Thal's Motion for Summary Judgment held the statute of limitations expired June 18, 2020. [Dkt. 114, SOF at ¶ 62, Exhibit C]. Plaintiff filed her complaint in this matter on December 23, 2020.  Said holding was not disturbed on appeal.  Plaintiff is now estopped from arguing otherwise.

Contrary to Plaintiff's assertion, the 9th Circuit reversed prior dismissal on this issue because a motion to dismiss must assume all complaint allegations as true.  However, this is a Motion for Summary Judgment.  Confusingly, Plaintiff's assertion regarding when the statute of limitations commenced is simply when Plaintiff "learned" of "uncovered" facts during discovery in this case.  However, these so called "uncovered" facts are the very facts Plaintiff knew during the pendency of her dependency and severance proceedings. Plaintiff's very argument to avoid the statute of limitations barring her claim is fundamentally wrong. Hence, this matter is barred by the statute of limitations.

**IV.    CONCLUSION**

For the several reasons discussed above, Dr. Thal respectfully requests that this Court enter summary judgment in his favor on the only remaining claim against him, Count 5 of Plaintiff's Complaint.

Respectfully submitted this 31st day of March, 2026.

WEINBERG, WHEELER, HUDGINS,
GUNN & DIAL, LLC

By s/ Jeffrey S. Hunter
   Jeffrey S. Hunter, Esq.
   1 North Central Avenue, Suite 900
   Phoenix, Arizona 85004
   *Counsel for Defendant James Thal*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of March, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following CM/ECF participants:

Thomas A. Connelly
Robert T. Mills
Sean A. Woods
Mills + Woods Law PLLC
5055 North 12th Street, Ste. 101
Phoenix, AZ 85014
tconnelly@millsandwoods.com
rmills@millsandwoods.com
swoods@millsandwoods.com

DeeAn Gillespie Strub
Mark Shields
Gillespie, Shields, & Taylor
7319 N. 16th Street
Phoenix, AZ 85020
dgillespie@gillaw.com
kreeves@gillaw.com

*Attorneys for Plaintiff*

Deborah Garner
Assistant Attorney General
2005 N. Central Avenue
Phoenix, AZ 85004
*Attorneys for State Defendants*
julie.rhodes@azag.gov
deborah.garner@azag.gov

By s/ Connie Traslavina

Page 13 of 13