**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jessica Ploof, | No. CV-21-00853-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| State of Arizona, *et al.*, | |
| Defendants. | |

Before the Court are summary judgment motions from Plaintiff Jessica Ploof (Doc. 121–22), Defendants Paige Szymkowski,[1] Claudia Hoff, Meagan Tafoya, Sarah Greenway and Nick Breeding (collectively "DCS Defendants") (Doc. 106–07), and Dr. James Thal (Doc. 113–14), and a separate motion to exclude the report and testimony of Plaintiff's standard-of-care expert Timothy Turner (Doc. 109). No party has requested oral argument under LRCiv 7.2(g).

## I.    BACKGROUND

The following facts are undisputed. ████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

---

[1] This defendant is also referred to in some records as Paige Wooldridge. For clarity, the Court will refer to this defendant by her former surname, Szymkowski, consistent with most of the parties' briefing and other papers before the Court.



---

[2] Plaintiff and her mother would later testify in their respective depositions that prior to DCS's involvement, the child continuously received state-provided physical and speech therapies and Head Start preschool that began sometime after the child turned five months old, and those services were never stopped. (*See* Doc. 122-2 at 8–9; Doc. 122-4 at 5–9.)



Ms. Szymkowski referred Plaintiff to a psychological evaluation with forensic examiner Dr. Thal, a psychologist with a service contract with DCS. (Doc. 122 ¶¶ 20–21; Doc. 122-17; Doc. 124-10.) Dr. Thal evaluated Plaintiff

On October 2, 2017, Ms. Szymkowski completed a case note indicating that

Later in her deposition, Ms. Szymkowski admitted that Ms. Tafoya's initial

investigation of the home revealed that it was "free from any safety hazards." (Doc. 122-43 at 5–8.)

On November 24, 2017, Ms. Szymkowski reported to the juvenile court that Plaintiff had participated in ███████████████████████████████ ███████████████████████████████████ (Doc. 124-9 at 8.) Ms. Szymkowski reported that ████████████████ ███████████████████████████████ ██████████████████████ ████████████ ███████████████████████████████ ████████████████████████████ Sometime in December 2017, Ms. Szymkowski ended her role in the case and Ms. Hoff began acting as the case manager on January 3, 2018. (Doc. 122 ¶ 23; Doc. 133 ¶ 23; Doc. 124-5 at 4.)

On January 4, 2018, Dr. Thal performed his psychological evaluation of Plaintiff's mother. (Doc. 122 ¶ 25; Doc. 124-13.) Dr. Thal determined that the ████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ███████████████████████████████ ████████████

Dr. Thal completed his report and emailed it to Ms. Szymkowski on January 18, 2018. (Doc. 122-22 at 2.) Ms. Szymkowski responded to Dr. Thal on January 24, 2018, "[d]o you have time to discuss the below client?" and scheduled a phone meeting for January 30, 2018. (Doc. 122-22 at 3–4.) As planned, Ms. Szymkowski spoke with Dr. Thal. (Doc. 122 ¶ 28; Doc. 133 ¶ 28.)

On February 1, 2018, Ms. Hoff emailed Dr. Thal that she knew he spoke with Ms. Szymkowski and recommended that he update the report with any changes and scan it

directly to Ms. Hoff for disclosure because the first report was not yet circulated. (Doc. 122 ¶ 31; Doc. 122-27 at 2.) Dr. Thal responded to Ms. Hoff that he "didn't realize the [first] report had not been distributed as yet" and "will re-work the recommendations . . ." (Doc. 122 ¶ 33; Doc. 122-27 at 2.) He asked Ms. Hoff to shred copies of the first report while he prepares the second report, and Ms. Hoff agreed. (Doc. 122-27 at 2; Doc. 122 ¶ 32.) Nonetheless, the first report was distributed to the parties. (Doc. 122 ¶ 34.)

On February 7, 2018, Dr. Thal issued a second report of his psychological evaluation of Plaintiff's mother. (Doc. 122 ¶ 29.) While he continued to recommend that ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Dr. Thal would later testify at this deposition that, after his conversation with Ms. Szymkowski, he reviewed the same information submitted to him for the first report and felt "compelled [] on further review and to look at those things closely to make changes to that report." (Doc. 122-18 at 29–30.)

The juvenile court inquired about the two versions of Dr. Thal's report of Plaintiff's mother's psychological evaluation. Dr. Thal prepared a letter to Ms. Hoff that explained:

> [Ms. Szymkowski] has had significant concerns about the maternal grandmother's ability to meet [the child's] needs. Ms. Szymkowski, who did not ask me to change anything in my report, expressed her concerns about the substandard condition of the grandmother's residence and the child's very poor overall condition when he came into care. [The child],

- 5 -

according to Ms. Szymkowski, was grossly neglected and under-developed while in the grandmother's home and, presumably, while in the grandmother's care, at least part of the time . . .

A second major point raised by Ms. Szymkowski in our 1/30/18 telephone conversation, had to do with the critically important relationship she believed [the child] had established with his foster parents. [Ms. Szymkowski] was clearly concerned about the traumatic impact of removing [the child] from a secure placement where he was (A) bonded and (B) had made significant progress. I advised Ms. Szymkowski that I would review my findings and consider drafting a follow-up letter suggesting ways to address her concerns regarding the grandmother and the question of [the child's] best interest.

. . . You [Ms. Hoff] emailed me on 2/1/18 and suggested, in lieu of a follow-up letter, that I could simply make my changes to [Plaintiff's mother's] evaluation report because you had not yet disclosed the report. I responded via email on 2/2/18 advising you that I would make any revisions directly to [Plaintiff's mother's] report and re-issue the report to you. I also asked you to shred the original report so as to avoid any confusion. In any case, the revised [] report, which I released to you on 2/7/18, represents my final and complete psychological evaluation of [Plaintiff's mother].

(Doc. 122 ¶¶ 39–40; Doc. 133 at ¶¶ 39–40; Doc. 122-25.)

On February 28, 2018, Plaintiff ███████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ █████████████████████████████ Ms. Hoff did not assign a family reunification team. (Doc. 122 ¶ 36; Doc. 133 at ¶ 36.)

On March 7, 2018, Ms. Hoff referred Plaintiff, her mother, and the child to Dr. Bryce Bennett for a bonding evaluation pursuant to Dr. Thal's second report. (Doc. 122 ¶ 44; Doc. 124-16 at 2.) Dr. Bennett noted that ████████████ █████████████████████████████████████████████████



On June 21, 2018, Ms. Hoff received Dr. Bennett's report and notified him that DCS is "going to attempt to terminate parental rights." (Doc. 122-34 at 2.) On August 14, 2018, DCS moved the juvenile court to terminate Plaintiff's parental rights of the child, ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████████████████ As additional grounds for

termination, DCS alleged ███████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████

On October 18, 2018, Dr. Thal conducted a second psychological evaluation of Plaintiff. At the time of the evaluation, Plaintiff was living independently in a two-bedroom apartment and had started her first job as a caretaker for a disabled adult. (Doc. 122-37 at 4, 6; *see also* Doc. 122 ¶ 48.) According to Dr. Thal, Plaintiff still lacked an understanding of the reasons for DCS involvement that included "deplorable living conditions and reports that [the child] was alarmingly under-developed." (Doc. 122-37 at 9.) Dr. Thal found that Plaintiff was "best suited to assist a fully capable and competent caregiver" and that the child, if left in Plaintiff's sole care, "would likely be at risk for inadequate intellectual stimulation" and "routine care and attention." (Doc. 122-37 at 9.)

In light of the adverse psychological and bonding evaluations mounting against Plaintiff, she retained Dr. Lee Underwood to conduct a rebuttal psychological evaluation of her. (Doc. 121 at 11.) That evaluation took place on March 30 and April 1, 2019. (Doc. 124-19 at 2.) In a report issued April 19, 2019, Dr. Underwood recommended that ████████ ████████████████████████████████████████████████████████████████████ ███████

The juvenile court held a severance trial ████████████████████████ ██████████████████████████████████ On July 30, 2019, the juvenile court ordered that Plaintiff's parental rights be terminated and denied Plaintiff's competing motion requesting the juvenile court to appoint her mother as the child's guardian. (Doc. 117-1 at 14–28.)

Plaintiff appealed and the Arizona Court of Appeals affirmed the juvenile court's order. Plaintiff appealed again, and the Arizona Supreme Court vacated a portion of the appellate court's decision that is not relevant here, and upon remand the appellate court

again affirmed the juvenile court's order. *See Jessica P. v. Dep't of Child Safety, H.P.*, 471 P.3d 672 (Ariz. App. 2020), *opinion vacated in part and remanding*, CV-20-0241-PR, 2020 WL 8766053 (Ariz. Dec. 15, 2020), *aff'd upon remand*, 484 P.3d 148 (Ariz. App. 2021).

The instant action ensued. Plaintiff asserts that her Fourteenth Amendment right to due process was violated and brings three claims under the Civil Rights Act of 1964, 42 U.S.C. § 1983, for judicial deception against Ms. Szymkowski (Count Four), civil conspiracy to commit judicial deception against Ms. Szymkowski, Ms. Hoff, and Dr. Thal (Count Five), and failure to make reasonable efforts to preserve the family relationship against the DCS Defendants (Count Six). (Doc. 54, FAC, ¶¶ 243–79.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate when the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When, as here, "parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citation modified).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 232. When the moving party does not bear the ultimate burden of proof, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.*,

210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party carries this initial burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id*. at 1103. Summary judgment is appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in the nonmoving party's favor, and regard as true the nonmoving party's evidence as long as it is supported by affidavits or other evidentiary material. *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011); *Anderson*, 477 U.S. at 255. However, the nonmoving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.") (citation omitted).

## III. ANALYSIS

### A. Count Four: Judicial Deception

There is "a constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1146 (9th Cir. 2021). A § 1983 claim of judicial deception requires a plaintiff to show (1) the defendant made false statements or omissions (2) deliberately or recklessly (3) that were material to a judicial decision. *Id*. at 1147. Whether a false statement or omission was "material" to a judicial decision is a "threshold issue" and a question of law. *Liston v. Cnty. of Riverside*, 120 F.3d 965, 974 (9th Cir. 1997), *as amended* (Oct. 9, 1997), *overruled on other grounds*, *Saucier v. Katz*, 533 U.S. 194 (2001). The alleged misrepresentation is material to a judicial decision if the court would have declined to reach that decision or

would have had no substantial basis to reach that decision had the misrepresentation not been made. *See Greene v. Camreta*, 588 F.3d 1011, 1035 (9th Cir. 2009), *vacated in part on other grounds*, 563 U.S. 692 (2011); *Benavidez*, 993 F.3d at 1148.

As a preliminary matter, Plaintiff's fourth claim is asserted against Ms. Szymkowski only. In her papers submitted to the Court, though, Plaintiff identifies several statements and conduct that are not only attributable to Ms. Szymkowski, but to Ms. Hoff and Dr. Thal. (Doc. 121 at 19; Doc. 158 at 6–7.) In responding to Plaintiff's summary judgment motion, DCS argues that Plaintiff must "identify any false statement that Szymkowski made to the juvenile court," but she instead focuses primarily on Dr. Thal's conduct. (*See* Doc. 132 at 3.) DCS similarly points out this discrepancy in its own summary judgment motion, noting that it is "problematic because judicial deception is only plead against Szymkowski and not any other DCS Defendant." (Doc. 106 at 12 n.7.) Plaintiff provides no response to explain or justify this discrepancy.

DCS's point that the judicial deception claim is pled only as to Ms. Szymkowski is well-taken and evokes the principle that "issues on summary judgment are framed by the complaint." *Rodriguez v. Countrywide Homes*, 668 F. Supp. 2d 1239, 1246 (E.D. Cal. 2009). By design, the general rules of pleading set forth in Federal Rule of Civil Procedure 8 mandate a pleading that "guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000). "Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) (citation omitted).

Here, Plaintiff pleads her fourth claim only against Ms. Szymkowski and alleges that Ms. Szymkowski testified falsely before the juvenile court and falsely represented that Plaintiff medically neglected her child. (FAC ¶¶ 243–50.) In her fifth claim, Plaintiff alleges a conspiracy between Ms. Szymkowski, Ms. Hoff, and Dr. Thal to alter and shred the psychological evaluation of Plaintiff's mother. (FAC ¶¶ 251–58.) As pled, these two claims are legally distinct and must be treated as such. Accordingly, the Court will limit its

review of the arguments and evidence regarding Plaintiff's fourth claim to whatever statements are attributable only to Ms. Szymkowski.

### i.    *Plaintiff's Summary Judgment Motion*

Plaintiff argues that Ms. Szymkowski peddled a false narrative to Dr. Thal, in DCS records, and in her testimony at the severance trial that "[the child's] medical needs were not being met in the home, the home itself was in substandard condition, and [the child] was severally [sic] delayed and not receiving services." (Doc. 158 at 7.) According to Plaintiff, these statements were not supported by DCS's own investigation but nonetheless guided Dr. Thal to alter his first report of Plaintiff's mother's evaluation and recommend a bonding evaluation that ended up being averse to reunification. (Doc. 158 at 8.)

DCS responds that the record shows only that Ms. Szymkowsi made statements to Dr. Thal but not to the juvenile court. While the juvenile court later became aware of Ms. Szymkowski's statements to Dr. Thal, it also heard the testimony of Ms. Szymkowski and Dr. Thal during the severance trial—which included cross-examination by Plaintiff's counsel—regarding their communications and the circumstances surrounding the second report. (Doc. 132 at 3.) According to DCS, the juvenile court could not have been deceived when Ms. Szymkowski's purportedly false statements were tested through cross-examination afforded by the judicial process. (Doc. 132 at 3.)

In reply, Plaintiff does not dispute that she had the opportunity, and did, cross-examine Ms. Szymkowski and Dr. Thal, or that the juvenile court was made aware of the circumstances surrounding the second report. Instead, Plaintiff argues that the testimony offered at the severance trial could not cure the deception of Ms. Szymkowski's statements when "the deception itself shaped the evidence and trajectory [of the case] through undisclosed ex parte influence and attempted destruction of the original report," so "the decision-making process itself was tainted." (Doc. 158 at 8–9.)

Even so, it is Plaintiff's initial burden as the moving party to establish an absence of a genuine issue as to whether such statements were *material* to the juvenile court's severance determination. *Celotex*, 477 U.S. at 232. Materiality, while a threshold issue, is

referenced by Plaintiff only in conclusory terms in her motion and reply brief. For example, Plaintiff describes the "falsehoods and omissions" submitted by DCS as "material," and Dr. Thal's second report as "materially altered," but does not explain how the juvenile court's severance determination turned on those statements. In fact, Plaintiff does not explain, refer to, or cite the juvenile court's severance order at all in her moving papers. Based on the record and arguments presented by Plaintiff in support of her summary judgment motion, the Court cannot find that the statements she identified were material to the juvenile court's decision. Accordingly, the Court denies summary judgment in favor of Plaintiff as to Count Four.

### ii.    DCS's Summary Judgment Motion

DCS argues that the fourth claim fails because Plaintiff lacks evidence that the statements made by Ms. Szymkowski were false, made to the juvenile court, or were material to the juvenile court's decision. (Doc. 106 at 8–9.)

Plaintiff responds that Ms. Szymkowski falsely testified before the juvenile court that the home was in a substandard condition, the child's DDD services had been discontinued when DCS became involved, the child was severely neglected, and Plaintiff's mother used a tampering device the second time she submitted to a drug test. (Doc. 139 at 18; Doc. 140 ¶¶ 31, 40.)

DCS argues that any statements made during in-court testimony are protected by absolute witness immunity[3] as established by *Briscoe v. LaHue*, 460 U.S. 325 (1983). (Doc. 106 at 8.) *See also Darragh v. Superior Ct. In & For Cnty. of Maricopa*, 900 P.2d 1215, 1217 (Ariz. App. 1995) (recognizing absolute witness immunity regarding testimony in judicial proceedings). Plaintiff offers no argument to this point and thereby concedes that Ms. Szymkowsi is immune from liability for her statements made while testifying in the severance trial. *See Versluys v. Weizenbaum*, No. 3:21-CV-01694-MO, 2023 WL 6880412, at *2 (D. Or. Oct. 18, 2023), *aff'd sub nom. Versluys v. White Pine Circle LLC*, No. 23-

---

[3] Because no party raises it in the summary judgment briefing, the Court does not consider whether other forms of absolute immunity—including the quasi-prosecutorial and quasi-judicial varieties—apply to the in-court testimony of Ms. Szymkowski.

3982, 2024 WL 5183201 (9th Cir. Dec. 20, 2024) ("A party waives an argument at the summary judgment stage if it provides no argument in support of its position or does not adequately develop the argument.") (collecting cases); *Bailey v. P.B. Bell Asset Mgmt. Inc.*, No. CV-19-01761-PHX-SMB, 2020 WL 6680364, at \*9 (D. Ariz. Nov. 12, 2020).

Next, Plaintiff responds that Ms. Szymkowski submitted a referral packet to Dr. Thal that contained false information and noted in an Assessment Plan that the home was kept in dirty and unsafe conditions. (*See* Doc. 140 ¶ 40.) Assuming that both documents were provided to the juvenile court—which Plaintiff fails to establish—Plaintiff presents no argument regarding the materiality of such statements to the juvenile court's decision.

Plaintiff fails to establish a genuine dispute of material fact regarding her judicial deception claim against Ms. Szymkowski. Because summary judgment is appropriate as to the fourth claim, the Court need not reach the alternative arguments raised by DCS that include collateral estoppel doctrine and qualified immunity.

**B.    Count Five: Civil Conspiracy**

"Conspiracy is not itself a constitutional tort under § 1983" and "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 935 (9th Cir. 2012) (citations omitted). To prevail on a civil conspiracy claim under § 1983, a plaintiff must show: "(1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010) (citation omitted).

*i.    Plaintiff's Summary Judgment Motion*

Plaintiff moves for summary judgment on her civil conspiracy claim against Ms. Szymkowski, Ms. Hoff, and Dr. Thal, asserting that they conspired to terminate Plaintiff's parental rights. To be precise, Plaintiff's conspiracy claim is rooted in her "constitutional right under the Due Process Clause of the Fourteenth Amendment to be free from judicial deception and fabrication of evidence in the context of civil child custody cases."

*Benavidez*, 993 F.3d at 1146. (*See* FAC at 28.) As discussed above, Plaintiff failed to carry her burden of showing the absence of genuine fact as to judicial deception asserted against Ms. Szymkowski.

To the extent Plaintiff now argues that Dr. Thal and Ms. Hoff independently deprived her of a constitutional right by way of judicial deception, she failed to properly plead that claim and cannot use her summary judgment motion as a substitute pleading. *Wasco Prods.*, 435 F.3d at 992. Even if she could, Plaintiff's summary judgment motion completely overlooks the materiality element of a judicial deception claim as to the statements made by Dr. Thal and Ms. Hoff. (*See* Doc. 121 at 12–17; Doc. 158 at 6–8.) Plaintiff's contention that the false statements made by Dr. Thal and Ms. Hoff were presented to the juvenile court, either through direct testimony or vicariously through psychological or bonding evaluations, does not inherently mean that those statements were material to the juvenile court's decision. That is for Plaintiff to argue and show this Court, and she does not. *Celotex*, 477 U.S. at 232. The Court denies summary judgment in favor of Plaintiff as to Count Five.

### ii.    DCS and Dr. Thal's Summary Judgment Motions

DCS and Dr. Thal also move for summary judgment on Plaintiff's fifth claim, both respectively arguing that Plaintiff fails to establish a genuine dispute that she was deprived of her constitutional rights through judicial deception.

The Court has already found that, in response to DCS's motion, Plaintiff failed to establish any genuine issue of fact as to her judicial deception claim against Ms. Szymkowski.

Assuming that Plaintiff's First Amended Complaint could be interpreted to assert an independent judicial deception claim against Ms. Hoff or Dr. Thal, Plaintiff still fails to establish a genuine issue as to whether that deception was material to the juvenile court's decision to terminate Plaintiff's parental rights. *Celotex*, 477 U.S. at 322. Materiality is an essential, threshold element of a judicial deception claim, *Liston*, 120 F.3d at 974, but Plaintiff's only discussion of it begins and ends with one single conclusion: without the

case managers' communications with Drs. Thal and Bennett, Dr. Thal's second report, Ms. Hoff's agreement to shred the first report, and Dr. Bennett's "reliance" on Dr. Thal's report, the juvenile court's decision to terminate Plaintiff's parental rights was not guaranteed. (Doc. 138 at 14; Doc. 139 at 18.) But this conclusion is far from obvious on this record, and Plaintiff offers no reasoning, reference to the juvenile court's order, or marshaling of the law or evidence that would have compelled the juvenile court to reach a different outcome. To reach the conclusion offered by Plaintiff here, the Court would have to review the juvenile court order and state law governing severance, consider what evidence was presented to the juvenile court, formulate its own legal reasoning, and essentially assume the role of Plaintiff's advocate. The Court cannot, and will not, take on such a task. Accordingly, the Court grants summary judgment in favor of DCS and Dr. Thal on this claim.

### C.    Count Six: Failure to Make Reasonable Efforts

In Arizona, DCS has a constitutional obligation to make reasonable and diligent efforts to preserve the family. *Donald W. v. Dep't of Child Safety*, 444 P.3d 258, 271 (Ariz. App. 2019). This obligation is "defined on constitutional grounds as a necessary element of any state attempt to overcome what the United States Supreme Court has described as the 'fundamental liberty interest of the natural parents in the care, custody and management of their child.'" *Mary Ellen C. v. Arizona Dep't of Econ. Sec.*, 971 P.2d 1046, 1053 (Ariz. App. 1999) (internal citation omitted). Diligent and reasonable efforts may vary case-to-case but at minimum require "DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances as they arise throughout the time-in-care period, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Donald W.*, 444 P.3d at 272. "[T]he court must also consider the totality of the circumstances when determining whether DCS has made diligent efforts." *Id*.

#### i.    *Plaintiff's Summary Judgment Motion*

Plaintiff contends that summary judgement in her favor is warranted because:

(1) Ms. Tafoya "failed to thoroughly investigate the hotline call allegations before she sought removal via a Temporary Custody Notice"; (2) Ms. Szymkowski and Ms. Hoff each "improperly and willfully interfered with the reunification process" by communicating with Drs. Thal and Bennett; (3) and Ms. Hoff and her supervisor, Mr. Breeding, failed to refer Plaintiff to a family reunification team despite the parent aide's recommendation. (Doc. 121 at 18.)

In response, DCS argues that even assuming these facts are true the juvenile court record nonetheless demonstrates the reasonableness of efforts provided. The portions of that record it cites show that DCS offered several therapeutic services to Plaintiff to address her substance use and develop her parenting skills, referred Plaintiff and her mother to joint therapy to further co-parenting efforts, and apprised the juvenile court of Plaintiff's participation in and completion of services. (Doc. 132 at 7–8.)

In reply, Plaintiff argues that DCS still "failed to reasonably advance recommended reunification and instead maneuvered the matter toward termination despite [Plaintiff's] compliance with and undisputed success in services." (Doc. 158 at 12.) The specific failure, according to Plaintiff, is that she was not referred to a family reunification team as recommended by the parent aide. (Doc. 158 at 12–13.) She makes no further substantive argument regarding whether Ms. Tafoya's pre-removal investigation or the case managers' communication with Drs. Thal and Bennett constitute a failure to make reasonable efforts. Even if she had, the Court has difficulty understanding how either of those conditions would impact the reasonable-efforts analysis as formulated by *Donald W.*, 444 P.3d at 272.

No party explains what a family reunification team precisely does, how it differs from other services already provided, or the futility (or lack of futility) of that service. Still, the Court can infer from the name of the service alone that it would entail some kind of "team" approach to attempt reunifying Plaintiff with her child. But DCS's provision of multiple therapeutic services and efforts to explore a co-parenting structure to preserve the family creates a genuine issue as to whether assigning a family reunification team would have had a reasonable prospect of success to remedy the circumstances that existed at the

time. Accordingly, the Court denies summary judgment in favor of Plaintiff as to Count Six.

### ii.    *DCS's Summary Judgment Motion*

DCS moves for summary judgment on Plaintiff's sixth claim, arguing that the claim is precluded. The claim preclusion doctrine "bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982) (citation modified). Under the laws of Arizona, a state court action has preclusive effect if there is (1) a final judgment on the merits, (2) common identity of the parties and the capacity in which they appeared, (3) common identity of the subject matter and (4) common identity of the cause of action. *See Matusik v. Arizona Pub. Serv. Co.*, 684 P.2d 882, 884 (Ariz. App. 1984). "Arizona courts apply the 'same evidence' test, precluding a second action when 'no additional evidence is needed to prevail in the second action than that needed in the first.'" *Lawrence T. v. Dep't of Child Safety*, 438 P.3d 259, 264 (Ariz. App. 2019) (citing *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 934 P.2d 801, 804 (Ariz. App. 1997)).

DCS contends, and Plaintiff does not dispute, that the juvenile court's severance order is a final judgment on the merits and involves the same parties and subject-matter here. The parties argue whether the cause of action here is the same as the one presented before the juvenile court and, later, the state appellate courts.

On this point, it is undisputed that the juvenile court received progress reports and testimony about DCS's recommended services and Plaintiff's compliance with those recommendations. (Doc. 107 ¶ 32, Doc. 140 ¶ 32.) In its severance order dated July 30, 2019, the juvenile court explicitly reviewed the services provided to Plaintiff from DCS and determined those efforts were reasonable and diligent. (Doc. 117-1 at 17–19). The state appellate court affirmed that substantial evidence existed to support the juvenile court's conclusion. *Jessica P.*, 471 P.3d at 680.

Plaintiff argues that her instant claim is not the same cause of action tried before the

juvenile court because "the gravamen here is concealed misconduct—ex parte coordination and suppression of a forensic evaluation—that was not disclosed to the juvenile court and was not discoverable to Plaintiff during the dependency proceedings." (Doc. 139 at 16.) The Court is not persuaded. Plaintiff's instant claim asserts a constitutional right to the care, custody and management of her child, which imposes an obligation on DCS to make reasonable and diligent efforts to preserve the family. (FAC ¶¶ 259–263.) *Mary Ellen C.*, 971 P.2d at 1053 (defined DCS's obligation "on constitutional grounds"); *Donald W.*, 444 P.3d at 271. Whether DCS failed to carry out that obligation—thereby violating Plaintiff's constitutional right—was precisely the question that the juvenile court was tasked to answer. Any contention that DCS failed to fulfil its obligation to Plaintiff would have been relevant, and perhaps dispositive, to the juvenile court's order. Indeed, the state appellate court directly observed that "any claim that DCS is failing to provide appropriate reunification services must be raised in the juvenile court or the issue is waived." *Jessica P.*, 471 P.3d at 680 (citation omitted). In other words, the instant claim and the severance action both turn on whether DCS failed to provide reasonable and diligent efforts to preserve Plaintiff's family, and evidence of that failure would be the same no matter if it was presented here or to the juvenile court.

Plaintiff next argues that evidence of "ex parte coordination and suppression of a forensic evaluation" was discovered *after* the severance action, so her instant claim could not have been properly litigated before the juvenile court. (Doc. 139 at 15–16.) The Court presumes Plaintiff refers to the communications between the case managers and Dr. Thal and resulting alterations to Dr. Thal's first report or Plaintiff's mother's evaluation. Assuming that evidence of those communications and alterations would be relevant to the reasonable-efforts analysis, DCS replies—and the Court agrees—that the record clearly shows that such evidence was available to all parties in the severance action and, in fact, was presented to the juvenile court by way of testimony and cross-examination. (Doc. 152 at 3–4; *see also* Doc. 107 ¶¶ 47–48; Doc. 140 ¶¶ 47–48.) If Plaintiff meant to refer to Ms. Hoff's failure to assign a family reunification team, she likewise fails to explain how that

evidence did not exist at the time of the severance hearings. In fact, Plaintiff's own production of the parent aide's recommendation shows the report was dated February 28, 2018—almost one year before the severance trial began. (Doc. 122 ¶ 35; Doc. 124-15.)

Plaintiff identifies no other additional evidence that would be necessary to prevail on the instant claim than that needed to challenge the reasonableness of DCS's preservation efforts before the juvenile court. Accordingly, the elements of claim preclusion are met here and the Court grants summary judgment in favor of DCS as to Count Six.

**IT IS ORDERED** denying Plaintiff's Motion for Summary Judgment (Doc. 121).

**IT IS FURTHER ORDERED** granting DCS Defendants' Motion for Summary Judgment (Doc. 106)

**IT IS FURTHER ORDERED** granting Defendant James Thal's Motion for Summary Judgment (Doc. 113).

**IT IS FURTHER ORDERED** denying as moot DCS Defendants' Motion to Exclude Timothy Turner (Doc. 109).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment in favor of Defendants and close this case.

Dated this 14th day of August, 2026.

Honorable John J. Tuchi
United States District Judge

- 20 -